**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------- X

BRIAN SUGHRIM, individually and on behalf of all others
similarly situated; DAVID FELICIANO, individually and on
behalf of all others similarly situated,

                                        Plaintiffs,

       v.

STATE OF NEW YORK; NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND COMMUNITY
SUPERVISION; ANTHONY J. ANNUCCI, Acting
Commissioner (in his official capacity); JOHN A. SHIPLEY,
Director of Labor Relations (in his personal and official
capacities); NA-KIA WALTON, Assistant Director of Labor
Relations/ADA Coordinator (in her personal and official
capacities); LEROY FIELDS, Superintendent of Fishkill
Correctional Facility (in his personal and official capacities);
STEPHEN URBANSKI, Deputy Superintendent for Security
Services of Fishkill Correctional Facility (in his personal and
official capacities); JAMES JOHNSON, Deputy
Superintendent for Administrative Services of Fishkill
Correctional Facility (in his personal and official capacities);
ALAN WASHER, Corrections Captain (in his personal and
official capacities),

                                        Defendants.

-------------------------------------------------------------------------- X

No. 19-cv-7977

**CLASS ACTION**
**COMPLAINT**

       Plaintiffs Brian Sughrim and David Feliciano, individually and on behalf of all others

similarly situated, by their attorneys, Bernstein Clarke & Moskovitz PLLC, as and for their

complaint allege as follows:

## PRELIMINARY STATEMENT

       1.    The State of New York, acting through its Department of Corrections and

Community Supervision ("DOCCS"), is discriminating against and infringing on the religious

freedoms of New York Corrections Officers who wear facial hair because of their religious beliefs.

In the past three weeks, DOCCS has suspended and is moving to dismiss two Corrections Officers, Brian Sughrim and David Feliciano, because their religion requires them to keep beards. Recently, DOCCS has refuse to allow other corrections officers to wear beards for religious reasons, but it has granted accommodations for officers to wear facial hair for secular reasons. There are security staff at DOCCS facilities currently working with facial hair, some with permission and others without, and DOCCS has not disciplined them. This lawsuit seeks to halt DOCCS's illegal practice of religious intolerance when it comes to facial hair.

2.      Shortly before DOCCS suspended Mr. Sughrim and Mr. Feliciano, New York Governor Andrew Cuomo signed a law "prohibiting employment discrimination based on . . . facial hair."[1] According to Governor Cuomo, this law will "make clear that employers cannot refuse to hire, attain, promote, or take other discriminatory action against an individual for wearing . . . facial hair in accordance with tenets of their religion."  The law applies to public employers, including DOCCS. In endorsing this new law, Governor Cuomo stated:

> As New Yorkers we celebrate our diversity and we champion freedom of religious expression in all places, including the workplace. This law will protect people from discriminatory employment practices based on religious attire or facial hair and makes it crystal clear to anyone who may still have doubts that New York has zero tolerance for bigotry of any kind.

3.      The following day, DOCCS suspended Mr. Sughrim because of his facial hair, and five days later, it suspended Mr. Feliciano for the same reason.

4.      For more than two decades, Mr. Sughrim and Mr. Feliciano have served as Corrections Officers for the State of New York, putting their lives at risk on a daily basis. They are Muslim and they both wear beards as part of their religious beliefs. For years they wore facial

---

[1] *See* "Governor Cuomo Signs Legislation Prohibiting Employment Discrimination Based on Religious Attire or Facial Hair," https://www.governor.ny.gov/news/governor-cuomo-signs-legislation-prohibiting-employment-discrimination-based-religious-attire (Aug. 9, 2019).

hair with DOCCS's express approval.  Their beards never interfered with the performance of their job duties.  DOCCS informally allows many other security staff – Officers, Sergeants, Lieutenants, and Captains – to wear facial hair every day.

5.      Several months ago, DOCCS began questioning facial hair accommodations. DOCCS had long ago permitted Mr. Sughrim and Mr. Feliciano to wear facial hair for medical reasons.  But in March 2019, DOCCS demanded new documentation on their medical conditions, and even though they complied, DOCCS would not continue their medical accommodations.

6.      Knowing that Mr. Sughrim and Mr. Feliciano are Muslim, and that shaving would violate their religious beliefs, as well as present a medical problem, DOCCS demanded they each promptly "provide a photo of your clean-shaven face."  So Mr. Sughrim and Mr. Feliciano requested permission to continue wearing their beards on religious grounds.  DOCCS denied their requests, but not because it doubted Mr. Sughrim's and Mr. Feliciano's religious beliefs, which are unquestionable.  DOCCS claimed that its grooming and respirator policies required all security staff to be clean shaven, which is not true, and therefore, allowing Mr. Sughrim and Mr. Feliciano to have beards would cause "an undue hardship and burden on facility operations."  When they did not shave, DOCCS suspended Mr. Sughrim and Mr. Feliciano without pay, and is moving to dismiss them from state service completely, which would deprive them of their pension.

7.      Yet, DOCCS has not taken adverse action against other officers who have facial hair, like the Deputy Superintendent for Administrative Services, defendant James Johnson.  And only shortly before it denied Mr. Sughrim and Mr. Feliciano a religious accommodation, it granted permission to other officers to wear facial hair for secular reasons.

8.      Not only does DOCCS allow many officers to wear facial hair, but its grooming policy explicitly permits security staff who started before 1990 to wear beards.  Similarly,

DOCCS's respirator policy is not universally applicable; it only applies to staff "who are assigned, or wish to be assigned, to positions wherein respiratory use is, or may be required." Those positions are known as "clean shaven posts." Neither Mr. Sughrim nor Mr. Feliciano is assigned to a clean-shaven post; neither has access to a respirator on his post; and neither has been, nor is required to be, fit-tested for a respirator under DOCCS's respirator policy. The very fact that DOCCS has certain posts designated as clean-shaven, while others are not so designated, shows that its institutional needs do not require all officers to be clean-shaven.

9.      For all the many years that DOCCS allowed Mr. Sughrim and Mr. Feliciano to wear facial hair, it never once claimed that it caused an undue hardship to facility operations. At present, numerous DOCCS security staff, including officers on clean-shaven posts, have beards or goatees. Thus, the claim that it will cause an undue hardship to DOCCS if Mr. Sughrim and Mr. Feliciano have facial hair is meritless and pretextual.

10.     Courts have repeatedly enjoined adverse employment actions taken against law enforcement officers who wear facial hair because of their religions. *E.g.*, *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) (opinion by then-Judge Samuel Alito holding that the Newark Police Department's facial hair policy violated the First Amendment); *Litzman v. City of New York*, No. 12-cv-4681, 2013 U.S. Dist. LEXIS 162968 (S.D.N.Y. 2013) (Judge Harold Baer held that the NYPD's facial hair policy violated the First Amendment and New York law); *Syed v. City of New York*, No. 16-cv-4789 (PGG) (KNG) (June 22, 2016) (ECF Dkt. 4) (Judge P. Kevin Castel issued a temporary restraining order enjoining the NYPD "from taking any action adversely to affect [Officer] Syed's compensation and/or benefits as a Police Officer" pending a preliminary injunction hearing on the NYPD's dismissal of Officer Syed for refusing to shave his beard for religious reasons).

4

11.     Other large corrections departments and law enforcement agencies have concluded that they can safely fulfill their institutional mandate and allow officers to have facial hair.  The New York City Department of Corrections, which employs more than 11,000 officers, permits corrections officers to wear beards up to one inch.  The United States Army similarly permits soldiers to wear beards up to two inches for religious reasons.[2]  And the NYPD's facial hair policy, adopted after the *Syed* case was filed, permits officers to wear beards for religious reasons.  Like DOCCS, the NYPD designates certain positions that require the use of a respirator as clean-shaven positions, but it permits officers who need to keep facial hair to work other positions.

12.     Mr. Sughrim and Mr. Feliciano bring this action to stop DOCCS's practice of religious intolerance and to vindicate their constitutional rights and the rights of other similarly-situated DOCCS employees.  They seek a class-wide judgment declaring DOCCS's practice of refusing to allow facial hair for religious reasons unconstitutional and a violation of Title VII of the Civil Rights Act of 1964, the New York State Constitution, and the New York State Human Rights Law.  They also seek a class-wide injunction under federal law enjoining Defendants from denying them the right to wear facial hair for religious reasons and directing Defendants to implement all necessary measures to ensure this practice is not continued.

13.     Mr. Sughrim and Mr. Feliciano also seek, individually, compensatory damages commensurate with their injuries and punitive damages in an amount to be determined at trial, as legally permissible, as well as the costs and expenses of this action.

## JURISDICTION

14.     Jurisdiction is conferred on this Court under 28 U.S.C. § 1331, as well as 28 U.S.C. § 1343(a)(3) and (4).

---

[2] *See* Army Directive 2017-03, *available at* https://www.army.mil/e2/c/downloads/463407.pdf.

15.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202; Rule 57 of the Federal Rules of Civil Procedure; and the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908).

16.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear Plaintiffs' state law claims.

## VENUE

17.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events alleged herein were committed within this district.

## JURY DEMAND

18.     Plaintiffs demand a jury trial on each and every claim to which they are legally entitled to a jury.

## PARTIES

19.     Plaintiffs BRIAN SUGHRIM and DAVID FELICIANO are citizens and residents of the State of New York and of the United States.

20.     Defendant STATE OF NEW YORK ("the State") maintains and operates Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION ("DOCCS").  The State is authorized by law to maintain a corrections department, and does maintain DOCCS, which acts as its agent in the area of corrections and for which it is ultimately responsible.  The State assumes the risks incidental to the maintenance of a corrections department and the employment of corrections officers.

21.     Defendant ANTHONY J. ANNUCCI is the Acting Commissioner of DOCCS.  He is sued in his official capacity.

22.     In his capacity as Acting Commissioner of DOCCS, defendant Annucci has final decision-making authority for DOCCS and bears ultimate responsibility to oversee, authorize, and manage DOCCS employment policies, practices, and customs.

23.     Defendant JOHN A. SHIPLEY is the Director of Labor Relations of DOCCS.  He is sued in his personal and official capacities.

24.     Defendant NA-KIA WALTON is the Assistant Director of Labor Relations/ADA Coordinator of DOCCS.  She is sued in her personal and official capacities.

25.     Defendant LEROY FIELDS is the Superintendent of Fishkill Correctional Facility. He is sued in his personal and official capacities.

26.     Defendant STEPHEN URBANSKI is the Deputy Superintendent of Security of Fishkill Correctional Facility.  He is sued in his personal and official capacities.

27.     Defendant JAMES JOHNSON is the Deputy Superintendent for Administrative Services of Fishkill Correctional Facility.  He is sued in his personal and official capacities.  As of August 14, 2019, defendant Johnson wore facial hair.

28.     Defendant ALAN WASHER is a Corrections Captain at Fishkill Correctional Facility.  He is sued in his personal and official capacities.

29.     At all times relevant herein, Defendants ANNUCCI, SHIPLEY, WALTON, FIELDS, URBANSKI, JOHNSON, and WASHER have acted under color of law, and within their authority as employees, officers, and/or agents of DOCCS and/or the State of New York.

## STATEMENT OF FACTS

### I.      Plaintiffs' Background

30.      Mr. Sughrim and Mr. Feliciano are observant Muslims.

31.      Mr. Sughrim converted to Islam approximately two years ago.

32.      Mr. Feliciano converted to Islam approximately 25 years ago.

33.      Their sincerely held religious beliefs require them to keep a modest beard; the basis for this belief is grounded in the Quran, Sunnah, and the Hadith.

34.      Based on their religious beliefs, Mr. Sughrim and Mr. Feliciano wear beards that are the minimum lengths they believe are required.

35.      Mr. Sughrim maintains a beard between one-half and one inch; Mr. Feliciano maintains a beard between one and two inches.

### A.      Brian Sughrim

36.      Mr. Sughrim joined DOCCS in December 1994.

37.      He has worn a beard between one-half and one inch long for most of his career with DOCCS.

38.      Mr. Sughrim's beard has never interfered with any aspect of his job responsibilities.

39.      After working briefly at Sing Sing Correctional Facility, Mr. Sughrim went to Fishkill Correctional Facility in or about 1995.

40.      His present assignment at Fishkill is a permanent post in the yard.

41.      Mr. Sughrim's current post is not what DOCCS calls a "clean-shaven post," meaning a post that requires the use of a respirator.

42.      Mr. Sughrim has been assigned to that post for approximately four years.

43.     Prior to his current post in the yard, Mr. Sughrim was assigned for approximately twenty years to a permanent post in a housing unit.

44.     That was not a clean-shaven post either.

45.     Mr. Sughrim has never been assigned to, on a permanent or temporary basis, nor switched posts with an officer assigned to, a clean-shaven post.

46.     In neither of his posts at Fishkill for the past 24 years has Mr. Sughrim had access to a respirator.

47.     At no point since graduating from the DOCCS Academy has Mr. Sughrim ever been asked, expected, or required to wear a respirator.

48.     At no point since graduating from the DOCCS Academy has Mr. Sughrim been evaluated or fit-tested for a respirator.

49.     Throughout his nearly 25-year career with DOCCS, Mr. Sughrim has never had to wear a respirator or gas mask in order to complete his job responsibilities and duties.

50.     Prior to working for DOCCS, Mr. Sughrim spent four years enlisted in the Navy. He served on the U.S.S. John F. Kennedy stationed in Virginia Beach.

51.     Mr. Sughrim maintained a beard for medical reasons while he worked in the Navy. He was never admonished or disciplined for doing so.

52.     While in the Navy, Mr. Sughrim was fit-tested for a gas mask, while he had facial hair, and he passed the fit test.

**B.      David Feliciano**

53.     Mr. Feliciano joined DOCCS in January 2000.

54.     He has maintained a beard between one and two inches for most of his career.

55.     Mr. Feliciano's facial hair has never interfered with his job responsibilities.

9

56.     After working briefly at Sing Sing and Greenhaven Correctional Facilities, Mr. Feliciano went to work at Fishkill Correctional Facility.

57.     For approximately the past twelve years, Mr. Feliciano has been assigned to a permanent post, known as the "14/18" post, in a housing unit.

58.     His job responsibilities on that post include delivering items like radio batteries to officers while they are on their posts.

59.     Mr. Feliciano's current post is not a clean-shaven post.

60.     Mr. Feliciano's prior post was "RDO Relief," which provides coverage for other posts. ("RDO" stands for "regular day off.")  He covered recreation and housing posts in that capacity.

61.     Mr. Feliciano was assigned to RDO Relief for approximately seven years.

62.     That post was not a clean-shaven post either.

63.     Mr. Feliciano has never been assigned to a clean-shaven post, on either a temporary or permanent basis.

64.     For several months approximately six years ago, Mr. Feliciano regularly swapped to a clean-shaven post two days each week.  DOCCS approved those swaps.  Other than that, Mr. Feliciano has never switched posts with an officer assigned to a clean-shaven post.

65.     In neither of his posts at Fishkill has Mr. Feliciano had access to a respirator.

66.     Throughout his nearly 20-year career with DOCCS, Mr. Feliciano has never had to wear a respirator or gas mask in order to complete his job responsibilities or duties.

67.     DOCCS has not directed Mr. Feliciano to be evaluated or fit-tested for a respirator or gas mask since early in his career.

**II.     Plaintiffs' Facial Hair Requests**

     **A.     Medical Accommodation**

     68.     Years ago, DOCCS granted both Mr. Sughrim and Mr. Feliciano medical accommodations to wear beards.

     69.     Mr. Sughrim and Mr. Feliciano have both been diagnosed with pseudofolliculitis barbae, a condition in which shaving leads to ingrown hairs that develop into painful bumps and cause the skin to become inflamed, making further shaving excruciating.

     70.     In November 1995, Mr. Sughrim submitted a request to DOCCS to wear a beard because of this condition.

     71.     His request was supported by a note from a licensed dermatologist recommending that Mr. Sughrim not shave.

     72.     DOCCS granted that request.

     73.     In April 2013, Mr. Feliciano submitted an accommodation request to DOCCS to keep a beard because of his pseudofolliculitis barbae condition.

     74.     DOCCS granted that request in June 2013.

     75.     The letter from DOCCS granting Mr. Feliciano's accommodation stated, "except in emergency situations, you will not be assigned to a post where you are required to be clean-shaven."

     76.     In March 2019, Mr. Sughrim and Mr. Feliciano received a memo addressed to "all appropriate staff" from defendants Urbanski and Johnson, who are Deputy Superintendents at Fishkill.

     77.     The memo stated that security staff who had "an approved medical shaving exemption are required to resubmit for an approval every six months."

78.     The memo directed staff who had not resubmitted their medical shaving exemption "recently" to "provide updated medical documentation" along with the appropriate form.

79.     After receiving the memo, Mr. Sughrim was called into the office of defendant Fields, the Fishkill Superintendent.

80.     Defendant Fields directed Mr. Sughrim to submit updated medical documentation regarding his shaving restriction.

81.     Plaintiffs both submitted to defendant Johnson recent prescriptions from dermatologists advising that they not shave.

82.     The letter from Mr. Sughrim's dermatologist stated that Mr. Sughrim was "currently under my care and diagnosed with pseudofolliculitis barbae"; Mr. Sughrim "has tried various disposable and electric razors and skin care products both over the counter and prescribed with negative results"; and Mr. Sughrim "should be medically excused from shaving due to his above mentioned condition."

83.     The letter from Mr. Feliciano's doctor likewise stated that he had "a history of pseudofolliculitis barbae" and that shaving causes him razor bumps that "often become large, painful, infected, pus pimples that require topical antibiotics."  The letter also stated that daily shaving "would constantly exacerbate the condition."

84.     Nonetheless, DOCCS sent Mr. Sughrim and Mr. Feliciano notices that "[t]he medical note you provided was not sufficient" because DOCCS wanted "information as it relates to your attempts to utilize alternative hair removal options and medical treatment."

85.     Mr. Sughrim's dermatologist note <u>had</u> provided that information.

86.     The notices from DOCCS also asserted that "[u]niformed staff are required to be clean-shaven as outlined in Directives #3083 and #4068," but that assertion is not correct.

87.     Directive 3083 states that "[s]ecurity staff appointed after January 25, 1990 are not permitted to wear beards or goatees," but it permits security staff appointed before January 25, 1990 to have beards or goatees, regardless of reason or need.

88.     Directive 3083 also permits officers to have moustaches and sideburns.

89.     Facial hair is only prohibited entirely by Directive 3083 "[w]henever the Department requires an employee to wear a respirator, facial hair which would prevent a proper seal between the face and mask (e.g., beard/goatee) is prohibited."

90.     DOCCS's respirator policy, Directive 4068, applies to employees who "are assigned, or wish to be assigned, to positions wherein respiratory use is, or may be, required shall be medically cleared and trained for use of the particular respirator(s) required for those positions."

91.     Thus, it does not apply to all employees; it only applies to employees who are in positions that require or may require respirator use.

92.     Directive 4068 does not proscribe facial hair entirely.  It states that an employee "who is required to wear a tight-fitting respirator must not have facial hair that comes between the sealing surface of the face piece and the face or that interferes with respirator valve function." Thus, some facial hair is acceptable.

93.     Consistent with these policies, certain positions in DOCCS facilities where employees are required to wear respirators are known as "clean shaven posts."

94.     Out of 544 posts at Fishkill Correctional Facility, only 68 are clean shaven posts.

95.     In keeping with the fact that most security posts are not clean-shaven posts, numerous DOCCS security staff assigned to Fishkill, and other facilities across the state, wear facial hair on the job.

96.     The notices DOCCS sent to Mr. Sughrim and Mr. Feliciano instructed them to "provide a photo of your clean-shaven face, along with conforming medical documentation."

97.     It was well-known in DOCCS that Mr. Sughrim and Mr. Feliciano were practicing Muslims when DOCCS instructed them to shave.

**B.      Religious Accommodation**

98.     Because shaving was medically inadvisable for Mr. Sughrim and Mr. Feliciano and it would violate a tenet of their religious beliefs, they could not comply with DOCCS's directive to shave their beards.

99.     Between late April and early May 2019, Mr. Sughrim and Mr. Feliciano both submitted religious accommodation requests to DOCCS.

100.    Mr. Feliciano submitted his request on a DOCCS form entitled, "Request for Religious Accommodation."

101.    That form asks, among other things: "Are you assigned or swap to a clean-shaven post?" "To what extent are you required to wear personal protective safety equipment," and "Do you ever have duties or assignments outside the physical perimeter of the facility?"

102.    Mr. Feliciano wrote on the form: "I do not work any clean shaven posts, nor do I swap with any officers on clean shaven posts. . . .  I am not required to wear personal protective safety equipment. It is not part of my bid or part of anyone else[']s bid I swap with."  (A bid is a post or position in DOCCS parlance.)

103.    Mr. Sughrim and Mr. Feliciano both submitted documentation from religious leaders attesting to their sincerely-held Muslim beliefs.

104.    By separate letters, both dated August 5, 2019, and signed by defendant Walton, DOCCS denied Mr. Sughrim's and Mr. Feliciano's requests for religious accommodation to continue wearing their beards.

105.    The letters, which contained nearly identical language, stated that DOCCS "recognizes your right to request a religious accommodation for your sincerely held religious beliefs. Specifically, you requested to be permitted a shaving exemption based on your Islamic religious beliefs."

106.    Nonetheless, DOCCS directed Mr. Sughrim and Mr. Feliciano "to conform with the Department's personal grooming standards outlined in Directive #3083," apparently meaning that Mr. Sughrim and Mr. Feliciano must shave their beards.

107.    DOCCS justified its denial of Mr. Sughrim's and Mr. Feliciano's requests for religious accommodation by asserting that all security staff must be clean-shaven because they all must be able to wear respirators in case of an emergency or other staffing need.

108.    According to DOCCS, Mr. Sughrim and Mr. Feliciano having facial hair would "place[] an undue hardship and burden on facility operations."

109.    This justification was pretextual.

110.    It does not present a hardship to DOCCS for Mr. Sughrim and Mr. Feliciano to have facial hair.

111.    For more than a decade, DOCCS permitted Mr. Sughrim and Mr. Feliciano to wear beards and never claimed that it compromised the safety or security of Fishkill.

112.    Between April 24, 2019, and July 29, 2019 – that is, during the period DOCCS was reviewing Mr. Sughrim's and Mr. Feliciano's religious accommodation requests and before it

denied those requests – DOCCS <u>granted</u> accommodations to wear beards to at least two other officers at Fishkill.

113.    Before and after it denied Mr. Sughrim's and Mr. Feliciano's religious accommodation requests, DOCCS allowed other security officers at Fishkill and other facilities to have beards for medical reasons.

114.    Before and after it denied Mr. Sughrim's and Mr. Feliciano's religious accommodation requests, DOCCS allowed other officers to wear beards without any formal authorization.

115.    DOCCS continues to permit other security officers at Fishkill and other facilities to have beards.

116.    Some of those security staff have an accommodation from DOCCS to wear facial hair, while others do not.

117.    Some of those security staff who have beards work in clean-shaven posts.

118.    In granting Mr. Feliciano's initial medical accommodation for facial hair in 2013, DOCCS told Mr. Feliciano that he may be assigned to a clean-shaven post "in emergency situations."

119.    Nonetheless, Mr. Sughrim and Mr. Feliciano are not, and have never been, assigned to clean shaven posts that would require the use of a respirator.  The very fact that DOCCS maintains designated "clean shaven posts" indicates that only certain positions require the need to be clean shaven.

120.    Even if Mr. Sughrim or Mr. Feliciano ever had to wear a respirator at work, which they have never had to for more than two decades, DOCCS does not know whether they are in compliance with Directive 4068 because it has not fit-tested them to determine whether their facial

16

hair "comes between the sealing surface of the face piece and the face or that interferes with respirator valve function."

121.    There is no actual threat to safety or security for officers in clean-shaven posts to have facial hair, because there are security staff at Fishkill with beards who work on clean-shaven posts.

122.    Even if it was necessary for security staff on clean-shaven posts not to have facial hair, there are sufficient security staff assigned to Fishkill to cover the clean-shaven posts.

123.    There are presently 544 posts at Fishkill, only 68 of which are clean-shaven posts.

124.    There are approximately 780 corrections officers assigned to Fishkill.

125.    Of those officers, approximately 200 are resource officers, who are not assigned to a permanent post and are available to cover other posts.

126.    At the time DOCCS denied Mr. Sughrim's and Mr. Feliciano's religious accommodation requests, there were approximately 44 security staff at Fishkill who had permission to wear beards.

127.    Thus, there were approximately 734 officers at Fishkill, not counting Mr. Sughrim and Mr. Feliciano, who were available to fill the 68 clean shaven posts.

128.    DOCCS did not offer Mr. Sughrim or Mr. Feliciano an accommodation of any kind that would allow them to keep their beards.

129.    DOCCS maintains more than 50 correctional facilities, 13 of which are in the Hudson Valley Region where Fishkill is located.  DOCCS did not offer Mr. Sughrim or Mr. Feliciano the choice to move to any of these other facilities.

III.    **Plaintiffs' Suspensions**

A.    **Mr. Sughrim**

130.    On August 5, 2019, defendant Washer provided Mr. Sughrim a copy of defendant Walton's letter and directed him to shave before his next shift the following day.

131.    Defendant Washer knew Mr. Sughrim was Muslim and that shaving would violate a tenet of Mr. Sughrim's religious beliefs.

132.    On August 6, 2019, Mr. Sughrim reported for duty with a beard; he worked a double shift that day without incident.

133.    Mr. Sughrim reported for work on August 7, 2019 and worked without incident.

134.    On August 8, 2019, when Mr. Sughrim reported to Fishkill, defendant Washer directed him to wait in his office.

135.    Mr. Sughrim was made to wait from approximately 8:00 a.m. until approximately 3:00 p.m., at which point Cpt. Washer handed Mr. Sughrim a Notice of Discipline ("NOD").

136.    The NOD was signed by defendant Shipley,

137.    The NOD stated that DOCCS was dismissing Mr. Sughrim from state service and that he would lose his accrued annual leave.

138.    The NOD stated that Mr. Sughrim had "failed to groom [himself] consistent with personal appearance requirements" because he was "wearing a beard while on duty."

139.    The NOD stated that Mr. Sughrim was "insubordinate in that [he] failed to comply with an order given by a superior," that is, "Captain A. Washer gave you a direct order . . . to be clean shaven on your next tour of duty" and "[y]ou failed to comply with this order."

140.    The NOD stated that the penalty assessed was appropriate because "your actions in this instance are totally inconsistent with your duties and responsibilities as an employee with

[DOCCS]" and "your actions . . . bring into question your continued suitability as an employee with this Department."

141.    On August 10, 2019, when Mr. Sughrim reported for his next regular shift, he was made to stand in "line up," which is essentially rollcall, where several officers—as many as six— had beards, including some who do not have a formal accommodation from DOCCS.

142.    Mr. Sughrim was then told to report to Cpt. Churns's office.

143.    Cpt. Churns told Mr. Sughrim, in sum and substance, that given the Governor had just signed a law making it illegal to discriminate against employees on the basis of facial hair, he would speak with DOCCS about the situation in light of the new law.

144.    Mr. Sughrim had to wait in Cpt. Churns's office throughout the day.

145.    When Cpt. Churns eventually returned, he said he had spoken with DOCCS Labor Relations in Albany and they intended to proceed with suspending Mr. Sughrim.

146.    Defendant Shipley, who signed Mr. Sughrim's NOD, is the Director of Labor Relations.

147.    Defendant Shipley knew that Mr. Sughrim was Muslim and that shaving would violate a tenet of Mr. Sughrim's religious beliefs.

148.    Mr. Sughrim was stripped of his badge and identification and escorted out of Fishkill in front of his friends and colleagues.

**B.    Mr. Feliciano**

149.    Mr. Feliciano was informed of DOCCS's denial of his religious accommodation request on or about August 5, 2019.

150.    He appeared on August 9 and August 12, 2019, for a previously scheduled training, without incident.

151.    However, on August 9, 2019, defendant Urbanski told Mr. Feliciano that when he appeared for his next regular shift on August 13, 2019, he needed to be clean shaven.

152.    Defendant Urbanski knew that Mr. Feliciano was Muslim and that shaving would violate a tenet of Mr. Feliciano's religious beliefs.

153.    On August 13, 2019, when Mr. Feliciano reported to Fishkill, defendant Urbanski handed him a NOD.

154.    The NOD was signed by defendant Shipley,

155.    The NOD contained the same statements as Mr. Sughrim's NOD noted above.

156.    Defendant Shipley knew that Mr. Feliciano was Muslim and that shaving would violate a tenet of Mr. Feliciano's religious beliefs.

157.    Mr. Feliciano's notice stated that DOCCS intended to impose a 30-day suspension, as opposed to dismissal, which it had applied to Mr. Sughrim.  There was no indication in the notice why a different penalty was imposed.

158.    On August 14, 2019, when Mr. Feliciano reported to Fishkill, defendant Washer pulled him aside and made him wait in the administrative building.

159.    Eventually, defendant Washer appeared and stripped Mr. Feliciano of his badge and he was escorted out of the facility in front of his friends and colleagues.

160.    Defendant Washer knew that Mr. Feliciano was Muslim and that shaving would violate a tenet of Mr. Feliciano's religious beliefs.

**IV.    Effect on Plaintiffs**

161.    Defendants' actions insulted, embarrassed, depressed, and demoralized Mr. Sughrim and Mr. Feliciano.

162.    Mr. Sughrim's and Mr. Feliciano's suspensions went into effect immediately.

163.     Mr. Sughrim was forced to use his accrued personal time in order to stay on payroll and continue receiving health benefits; but he only had approximately three weeks of personal time, which will be exhausted shortly.

164.     When Mr. Sughrim's personal time is exhausted, he will no longer be paid, his health insurance will be cut off, and his pension contributions will stop.

165.     Mr. Feliciano initially chose not to use his accrued personal time and since he was suspended has not been paid and his pension contributions have stopped.

166.     Concerned that his health insurance would be cut off shortly, Mr. Feliciano requested that DOCCS allow him to use his accrued personal time; however, Mr. Feliciano does not know whether DOCCS will approve that request.

167.     Mr. Feliciano only has approximately five weeks of accrued personal time, and so even if DOCCS grants his request, after five weeks he will no longer be paid, his health insurance will be cut off, and his pension contributions will stop.

168.     Since they have been suspended, Mr. Sughrim and Mr. Feliciano have not been able to work overtime shifts that they customarily performed, and which enhanced their pension.

169.     Having been suspended means that Mr. Sughrim and Mr. Feliciano have been or will be shortly added to the "lock out" book, which is kept at the front desk of Fishkill.

170.     The lock out book contains the names and photographs of officers who are not permitted to enter the facility; these officers include former corrections officers who have committed crimes or other serious misconduct.

171.     For Mr. Sughrim and Mr. Feliciano to have their names and photographs in the lock out book, which any of their fellow officers can see, is insulting, embarrassing, and demoralizing.

172.    On or about August 19, 2019, DOCCS sent Mr. Sughrim and Mr. Feliciano amended NODs, both signed by defendant Shipley.

173.    These NODs state that DOCCS intends to dismiss both Mr. Sughrim and Mr. Feliciano from state service and take away their accrued annual leave.

174.    The amended NOD to Mr. Sughrim confirms that he was suspended without pay effective August 10, 2019; and the amended NOD to Mr. Feliciano confirms that he was suspended without pay effective August 14, 2019.

175.    Dismissal from DOCCS means that Mr. Sughrim and Mr. Feliciano will lose their pensions and suffer other adverse, and irreparable, consequences.

## V.    Experience of Other DOCCS Employees

176.    DOCCS security staff at Fishkill and other correctional facilities have suffered similar experiences as Mr. Sughrim and Mr. Feliciano.

177.    Other DOCCS security staff with religious beliefs that mandate the wearing of facial hair have requested and been denied an accommodation to wear facial hair at work.

178.    Upon information and belief, other DOCCS security staff who wear beards for religious reasons have not made a formal religious accommodation request out of concern that their request will be denied.

179.    These DOCCS security staff are at risk of facing adverse employment action for not shaving.

180.    Upon information and belief, other DOCCS security staff who would otherwise wear beards for religious reasons have refrained from doing so out of concern that they will face adverse employment action.

## CLASS ACTION ALLEGATIONS

181.    Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs seek to represent a certified Plaintiff class consisting of all persons who have been or will be subjected to DOCCS's practice and/or custom of not allowing security staff to wear facial hair as an expression of their sincerely held religious beliefs and taking adverse actions against such employees in violation of the First and Fourteenth Amendments of the United States Constitution, the New York State Constitution, Title VII of the Civil Rights Act of 1964, and the New York State Human Rights Law.

182.    The members of the class are so numerous as to render joinder impracticable: as of August 1, 2019, there were 19,109 security staff working for DOCCS, many of whom have religious beliefs that mandate wearing facial hair.

183.    Upon information and belief, there are more than one hundred DOCCS security staff who are impacted by DOCCS's practice who would be members of the class.

184.    Upon information and belief, many members of the class who would otherwise wear a beard as an expression of their religious beliefs, have refrained from doing so out of fear of discrimination and retaliation.

185.    Upon information and belief, many class members who have been denied a religious accommodation by DOCCS or who have not sought a religious accommodation do not bring individual claims for fear of discrimination and retaliation by other officers and supervisors.

186.    The class members' claims share a number of questions of law and fact in common, including, but not limited to:

   a.    Whether DOCCS engages in a practice and/or custom of not allowing certain security staff to wear facial hair for religious reasons while allowing other security staff to wear facial hair for other reasons; and

b.      Whether the DOCCS beard policy violates the First and Fourteenth Amendments of the United States Constitution, the New York State Constitution, Title VII of the Civil Rights Act of 1964, and/or the New York City Human Rights Law.

187.    Mr. Sughrim's and Mr. Feliciano's claims are typical of those of the class.  Like the other members of the class, Mr. Sughrim and Mr. Feliciano have been a victim of DOCCS's discriminatory practices and have been suspended as a result of DOCCS's practice and/or custom regarding religious accommodations to wear facial hair that is inconsistently applied and discriminates against those who wear facial hair based on their sincerely held religious beliefs.

188.    The legal theories under which Plaintiffs seek declaratory and injunctive relief are the same or similar to those on which all members of the class will rely, and the harms suffered by Plaintiffs are typical of the harms suffered by the class members.

189.    Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interest with members of the plaintiff class, and will fairly and adequately protect the interests of the class.

190.    Plaintiffs are Muslim New York State Corrections Officers who have been, and will continue to be, victims of DOCCS's discriminatory practice regarding the wearing of facial hair.

191.    Plaintiffs are represented by the law firm Bernstein Clarke & Moskovitz PLLC. Bernstein Clarke & Moskovitz partner Joshua S. Moskovitz is lead counsel in this case. Mr. Moskovitz is an experienced civil rights attorney who has litigated several class action lawsuits, including the *Syed* case.

192.    Bernstein Clarke & Moskovitz has the resources, expertise, and experience to prosecute this action, and knows of no conflicts among members of the class or between the attorneys and members of the class.

193.    The plaintiff class should be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the Defendants have acted on grounds generally applicable to the class, thereby making class-wide declaratory and injunctive relief appropriate.

**COUNT I**
**(For Violations of Religious Freedoms Under the First Amendment,**
**42 U.S.C. § 1983, and Article I § 3 of the New York State Constitution)**

194.    Plaintiffs repeat and reallege each and every allegation made in the foregoing paragraphs as if fully set forth herein.

195.    DOCCS's practice of denying permission to officers with religious reasons to wear facial hair and taking adverse employment actions against officers who refuse to shave on religious grounds unreasonably interferes with the religious beliefs of Plaintiffs and other members of the class.

196.    No legitimate governmental interest justifies this practice.

197.    Defendants' conduct "targets" religious exercise and violates the federal and New York State constitutional rights to the free exercise of religion.

198.    DOCCS's practice and Defendants' conduct violates Plaintiffs' right to the free exercise of their religions, in violation of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment; as well as Article I § 3 of the New York State Constitution.

199.    Each of the Defendants has acted with intent to violate the constitutional rights of Plaintiffs and other members of the class, or with deliberate indifference to their constitutional rights.

200.    As a direct and proximate result of the acts and omissions of each of the Defendants, the constitutional rights of Plaintiffs and other members of the class have been violated.

201.    By acting under color of state law to deprive Plaintiffs and other class members of their constitutional rights, Defendants are in violation of 42 U.S.C. § 1983.

202.    As a direct and proximate result, Plaintiffs have suffered injuries and damages as set forth above.

203.    Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed, as legally permissible.

204.    Plaintiffs and other members of the class have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from enforcing DOCCS's practice of denying permission to officers with religious reasons to wear facial hair and taking adverse employment actions against officers who refuse to shave on religious grounds.

**COUNT II**
**(For Violations of Equal Protection Under the Fourteenth Amendment,**
**42 U.S.C. § 1983, and Article I § 11 of the New York State Constitution)**

205.    Plaintiffs repeat and reallege each and every allegation made in the foregoing paragraphs as if fully set forth herein.

206.    Defendants have discriminated against Plaintiffs and other members of the class in violation of the Fourteenth Amendment of the United States Constitution and Article I § 11 of the New York State Constitution.

207.    Each of the Defendants has acted with intent to violate the constitutional rights of Plaintiffs and other members of the class, or with deliberate indifference to their constitutional rights.

208.    As a direct and proximate result of the acts and omissions of each of the Defendants, the constitutional rights of Plaintiffs and members of the class have been violated.

209.    As a direct and proximate result, the Plaintiffs have suffered injuries and damages as set forth above.

210.    Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed, as legally permissible.

211.    Plaintiffs and other members of the class have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from enforcing DOCCS's practice of denying permission to officers with religious reasons to wear facial hair and taking adverse employment actions against officers who refuse to shave on religious grounds.

## COUNT III
### (For Violations of Title VII of the Civil Rights Act of 1964)

212.    Plaintiffs repeat and reallege each and every allegation made in the foregoing paragraphs as if fully set forth herein.

213.    Plaintiffs belong to a religion that mandates male observers grow beards.

214.    Defendants have discriminated against Plaintiffs and similarly situated officers by:

a.      failing to provide an adequate religious accommodation that allows the growth of a beard of reasonable length;

b.      instituting, enforcing, and/or carrying out a practice and/or custom that adversely affects officers who exercise religions that mandate wearing beards;

c.      instituting, enforcing, and/or carrying out a practice and/or custom discriminating against employees who wear or want to wear beards for religious reasons; and

d.      retaliating against Plaintiffs and others similarly situated for exercising their rights to practice their religion by wearing a beard of reasonable length.

27

215.    As a direct and proximate result, Plaintiffs have suffered injuries and damages as set forth above.

216.    Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed, as legally permissible.

217.    Plaintiffs and other members of the class have no adequate remedy at law and will suffer serious and irreparable harm to their rights under Title VII unless Defendants are enjoined from enforcing DOCCS's practice of denying permission to officers to wear facial hair for religious reasons and taking adverse actions against those officers who refuse to shave.

## <u>COUNT IV</u>
### (For Violations of the New York State Human Rights Law)

218.    Plaintiffs repeat and reallege each and every allegation made in the foregoing paragraphs as if fully set forth herein.

219.    Defendants' conduct described above has discriminated against Plaintiffs due to their religion.

220.    Defendants have retaliated against Plaintiffs as a result of the exercise of their religious beliefs.

221.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered injuries and damages as set forth above.

**WHEREFORE**, Plaintiffs, on behalf of themselves and other members of the class they seek to represent, respectfully request that this Court:

        a.      enter an order certifying this action as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure in the manner described above herein, with Brian Sughrim and David Feliciano as class representatives;

        b.      issue a class-wide declaratory judgment that DOCCS's practice of denying accommodations for security staff to wear facial hair for religious reasons and taking adverse actions against employees who refuse to shave violates the First and Fourteenth Amendments of the United States Constitution, Title VII, the New York State Constitution, and the New York State Human Rights Law;

        c.      issue a class-wide injunction enjoining Defendants from taking adverse actions against DOCCS security staff who keep facial hair based on a sincerely held religious belief;

        d.      award Plaintiffs compensatory damages in an amount that is fair, just and reasonable, to be determined at trial;

        e.      award Plaintiffs punitive damages in an amount to be determined at trial;

        f.      award Plaintiffs, and the members of the class they seek to represent, reasonable attorneys' fees and costs; and

        g.      grant such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated: New York, New York
       August 26, 2019

                          BERNSTEIN CLARKE & MOSKOVITZ PLLC
                          11 Park Place, Suite 914
                          New York, New York 10007
                          (212) 321-0087
                          *Attorneys for Plaintiffs*

By:                                        
                  Joshua S. Moskovitz
                  moskovitz@bcmlaw.com