**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRIAN SUGHRIM, DAVID FELICIANO,
DEREK GLEIXNER, KHALDOUN ALSHAMIRI, and
ROLAND SOFO, individually and on behalf of all others
similarly situated,

                                                              Plaintiffs,

          v.

STATE OF NEW YORK; NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION; ANTHONY J.
ANNUCCI, Acting Commissioner (in his official
capacity); JOHN A. SHIPLEY, Director of Labor
Relations (in his personal capacity); NA-KIA WALTON,
Assistant Director of Labor Relations/ADA Coordinator
(in her personal capacity); STEPHEN URBANSKI,
Deputy Superintendent for Security Services of Fishkill
Correctional Facility (in his personal and official
capacities); ALAN WASHER, Corrections Captain (in his
personal and official capacities); WILLIAM LEE,
Superintendent of Eastern Correctional Facility (in his
personal and official capacities); MICHAEL BERTONE,
Deputy Superintendent of Security at Eastern Correctional
Facility (in his personal and official capacities); THOMAS
NAPOLI, Deputy Superintendent and Designee for
Reasonable Accommodation of Cayuga Correctional
Facility (in his personal and official capacities),

                                                              Defendants.

No. 19-cv-07977 (RA) (SDA)

**FOURTH AMENDED
CLASS ACTION
COMPLAINT**

        Plaintiffs Brian Sughrim, David Feliciano, Derek Gleixner, Khaldoun Alshamiri, and

Roland Sofo, individually and on behalf of all others similarly situated, as and for their First

Amended Class Action Complaint allege as follows:

### PRELIMINARY STATEMENT

        1.        The State of New York, through its Department of Corrections and Community

Supervision ("DOCCS"), has engaged in a practice of discrimination, harassment, and retaliation

against New York State Corrections Officers whose sincere religious beliefs include wearing a beard.  DOCCS has suspended and moved to terminate officers who wear beards for religious reasons, while DOCCS has allowed countless officers to wear beards for non-religious reasons without consequences.  DOCCS officials have forced officers with sincere religious beliefs concerning the wearing of beards to shave their faces.  DOCCS has denied the religious accommodation requests of officers based on pretextual reasons; and DOCCS officials have made subjective and improper decisions that the religious practices of certain officers are a matter of personal preference.  DOCCS also has harassed and retaliated against officers who have requested a religious accommodation to wear a beard.  These actions and decisions violate the First and Fourteenth Amendments, as well as federal and New York State antidiscrimination laws.

2.      In August 2019, DOCCS suspended Officers Brian Sughrim and David Feliciano because they requested religious accommodations to keep their beards.  Both officers had worn beards for over a decade with medical accommodations.  But after they submitted religious accommodation requests, DOCCS asserted for the first time that their beards created "an undue hardship" because of illusory security concerns, and they were ordered to shave.  When Officers Sughrim and Feliciano refused, DOCCS suspended them and began termination proceedings, which would have forfeited their hard-earned pensions.

3.      At the same time that this was happening, countless corrections officers working at DOCCS facilities across the State, including at Fishkill Correctional Facility where Officers Sughrim and Feliciano work, wore beards regularly without repercussion.  Some had medical accommodations while many others simply wore beards freely without any formal permission from or objection by DOCCS.

4.      Officer Derek Gleixner faced similar retaliation, harassment, and discrimination after he submitted a religious accommodation request in April 2019.  Although he had worn a beard for much of the preceding two years, it was only after he submitted a religious accommodation request that DOCCS officials began to harass and discipline him for wearing a beard.  While other officers with beards (who did not have accommodations) were left alone, the Superintendent of Eastern Correctional Facility, where Officer Gleixner worked, harassed Officer Gleixner about his beard and his religion and ordered him to shave.  As a result, Officer Gleixner was forced to shave his beard in violation of his religious beliefs.

5.      After Officer Gleixner complained about this harassment to the Governor's Office of Employee Relations, DOCCS denied his religious accommodation request.  As with Officers Sughrim and Feliciano, DOCCS claimed that Officer Gleixner's beard "creates an undue hardship on facility operations and impacts safety and security within the facility," notwithstanding the fact that for nearly two years Officer Gleixner wore a beard and DOCCS never claimed it was an undue hardship or impacted safety or security – not until he filed a religious accommodation request.

6.      DOCCS officials continued to harass and retaliate against Officer Gleixner because he had made a religious accommodation request.  Even though he was in compliance with DOCCS's grooming policy because he did not have a beard (having been forced to shave it), DOCCS officials demanded that Officer Gleixner shave his face with a razor – while other officers on duty at the same time with beards and other facial hair were not directed to shave.  Officer Gleixner continued to face harassment, and in August 2019 DOCCS informed him he was being suspended for 30 days because he was not "clean shaven."

7.      DOCCS has claimed that all officers must be clean-shaven because of the possibility they will need to wear a respirator.  But this claim is contradicted by DOCCS's own

3

policies and practices, as well as federal regulations governing the use of respirators and an arbitration decision that ruled against DOCCS on this very point.

8.      DOCCS's official grooming policy permits officers to wear facial hair and permits any officer with enough seniority to wear a beard.  There are certain positions in each facility, limited in number, that DOCCS designates as "clean-shaven posts."  These are the few positions that DOCCS has identified where respirator use may be required.  Only a few officers in DOCCS facilities have access to respirators, and a correspondingly limited number of respirators are kept on hand at DOCCS facilities, far fewer than would be needed for every officer working at any given time to be able to wear a respirator.

9.      The proper use of a respirator does not require being clean-shaven.  Federal OSHA regulations governing the use of respirators do not require users to be completely clean-shaven. The regulations instead require that respirator users be able to achieve a proper seal from the mask as determined by a fit test.  As part of his training for the Corrections Emergency Response Team ("CERT"), Officer Gleixner passed a fit test for a respirator while maintaining a beard.  Indeed, he successfully completed various CERT trainings with a beard, including a training that involved exposure to tear gas while he wore a respirator over his beard.  DOCCS did not bar Officer Gleixner's use of a respirator or participation on the CERT team because he had a beard, but that was before he submitted a religious accommodation request.

10.     In 2016, DOCCS and the State of New York lost a class-action arbitration with the correctional officers' union on this very issue.  An arbitrator found that DOCCS's "clean-shaven" designation was not required by OSHA regulations, nor was it consistent with DOCCS's own grooming policies.  The arbitrator ultimately ruled that officers at Mohawk Correctional Facility

"who have facial hair are to be permitted to work certain 'clean shaven' posts if they can pass the necessary 'fit test.'"

11.     Other large corrections departments and law enforcement agencies carry out their duties safely with officers being allowed to wear beards.  The New York City Department of Corrections, which employs more than 11,000 officers, permits any corrections officer to wear beards up to one inch, regardless of reason.  The United States Army similarly permits soldiers to wear beards up to two inches for religious reasons.  The New York City Police Department also permits officers to wear beards for religious reasons, excluding certain positions that require the use of a respirator.  Unlike DOCCS, the NYPD no longer claims that safety concerns require all of its officers to be clean-shaven for possible respirator use.

12.     The fact that it was never an undue hardship for DOCCS if Officers Sughrim, Feliciano, and Gleixner wore beards is proven by the fact that hours after the State of New York and DOCCS learned this lawsuit had been filed, DOCCS reinstated Officers Sughrim and Feliciano and the following day, granted them and Officer Gleixner accommodations to wear beards at work.

13.     Nonetheless, those accommodations continue to bar Officers Sughrim, Feliciano, and Gleixner from working certain posts and limit the length of beard they are allowed to wear. In Officer Feliciano's case, the accommodation does not permit a beard of the length he wears for religious reasons, and he could be disciplined at any time because the beard he presently wears does not comply with the accommodation DOCCS granted.

14.     And even after DOCCS changed course in response to this lawsuit, significant problems persist.  In November 2019, DOCCS officials ordered Officer Khaldoun Alshamiri, who had a religious accommodation request pending, to shave his beard and told him he would be

suspended if he refused.  When he did not shave, DOCCS officials sent him home and told him he would be punished for disobeying a direct order.  Officer Alshamiri faced additional discrimination, harassment, and retaliation for opposing DOCCS's directive to shave.

15.    DOCCS only granted Officer Alshamiri's religious accommodation request, which was pending since September 2019, after the Court entered a temporary restraining order against the State and DOCCS.  Since his post is changing soon, Officer Alshamiri will be required to submit a new religious accommodation request.  He fears that he could be disciplined or ordered to shave while that request is pending, as he was while his last request was pending, and that DOCCS may deny the request for pretextual reasons.

16.    On November 23, 2019, DOCCS served Officer Roland Sofo at Cayuga Correctional Facility with a letter denying his religious accommodation request to wear a beard. The denial asserted that DOCCS officials had "determined that wearing a beard is a personal preference and not a religious requirement" of Officer Sofo's religion.  This determination is wrong, and DOCCS officials never spoke with Officer Sofo before they somehow determined that his religious beliefs were merely personal preferences.  DOCCS has denied religious accommodations for other officers, including Fred Szafranski at Albion Correctional Facility, on the same basis.  These denials violate fundamental tenets of the First Amendment and federal laws protecting the freedom of religion.

17.    In contrast to this intolerance to officers who wear beards for religious reasons or request to wear beards for religious reasons, DOCCS has granted accommodations for officers to wear beards for secular reasons, permits officers with enough seniority to maintain beards, and allows yet more officers to wear beards without discipline even when they have not requested an accommodation.

6

18.     On August 9, 2019, New York Governor Andrew Cuomo signed a law "prohibiting employment discrimination based on . . . facial hair."[1]  According to Governor Cuomo, this law will "make clear that employers cannot refuse to hire, attain, promote, or take other discriminatory action against an individual for wearing . . . facial hair in accordance with tenets of their religion." The law applies to public employers, including DOCCS.  In endorsing this new law, Governor Cuomo stated:

> As New Yorkers we celebrate our diversity and we champion freedom of religious expression in all places, including the workplace. This law will protect people from discriminatory employment practices based on religious attire or facial hair and makes it crystal clear to anyone who may still have doubts that New York has zero tolerance for bigotry of any kind.

19.     This lawsuit seeks to halt DOCCS's illegal practice of religious intolerance and retaliation against corrections officers with religious beliefs about wearing beards.  The plaintiffs seek a class-wide judgment declaring DOCCS's practice unconstitutional and a violation of federal law.  They also seek a class-wide injunction – against the State of New York and DOCCS pursuant to Title VII of the Civil Rights Act of 1964 and against the individual defendants in their official capacities pursuant to 42 U.S.C. § 1983 – enjoining them from continuing this practice and directing them to implement all necessary measures to ensure this practice is not continued.

20.     The plaintiffs also seek, individually, compensatory damages commensurate with their injuries and punitive damages as legally permissible in an amount to be determined at trial, as well as the costs and expenses of this action.

## JURISDICTION

---

[1] *See* "Governor Cuomo Signs Legislation Prohibiting Employment Discrimination Based on Religious Attire or Facial Hair," https://www.governor.ny.gov/news/governor-cuomo-signs-legislation-prohibiting-employment-discrimination-based-religious-attire (Aug. 9, 2019).

21.     Jurisdiction is conferred on this Court under 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(3) and (4); and 42 U.S.C. § 2000e-5(f)(3).

22.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202; Rule 57 of the Federal Rules of Civil Procedure; the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908); and the Court's inherent equitable authority.

23.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear Plaintiffs' state law claims.

## VENUE

24.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events alleged herein were committed within this district.

## JURY DEMAND

25.     Plaintiffs demand a jury trial on each and every claim to which they are legally entitled to a jury.

## PARTIES

26.     Plaintiffs BRIAN SUGHRIM, DAVID FELICIANO, DEREK GLEXINER, KHALDOUN ALSHAMIRI, and ROLAND SOFO are citizens and residents of the State of New York and of the United States.  At all relevant times, they were New York State Corrections Officers employed by the State of New York and the New York State Department of Corrections and Community Supervision.  As used herein, "the named plaintiffs" refers to Officers Sughrim, Feliciano, Gleixner, Alshamiri, and Sofo.

27.     Defendant STATE OF NEW YORK ("the State") maintains and operates Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY

SUPERVISION ("DOCCS").  The State is authorized by law to maintain a corrections department, and does maintain DOCCS, which acts as its agent in the area of corrections and for which it is ultimately responsible.  The State assumes the risks incidental to the maintenance of a corrections department and the employment of corrections officers.

28.    Defendant ANTHONY J. ANNUCCI is the Acting Commissioner of DOCCS.  He is sued in his official capacity.

29.    In his capacity as Acting Commissioner of DOCCS, defendant Annucci has final decision-making authority for DOCCS and bears ultimate responsibility to oversee, authorize, and manage DOCCS employment policies, practices, and customs.

30.    Defendant JOHN A. SHIPLEY is the Director of the Bureau of Labor Relations of DOCCS.  In that capacity, defendant Shipley supervises the office that administers DOCCS's employee disciplinary program.  He is sued in his personal capacity.

31.    Defendant NA-KIA WALTON is the Assistant Director of Labor Relations/ADA Coordinator of DOCCS.  She is sued in her personal capacity.

32.    Defendant STEPHEN URBANSKI is the Deputy Superintendent of Security of Fishkill Correctional Facility.  He is sued in his personal and official capacities.

33.    Defendant ALAN WASHER is a Corrections Captain at Fishkill Correctional Facility.  He is sued in his personal and official capacities.

34.    Defendant WILLIAM LEE is, or was at all relevant times, the Superintendent of Eastern Correctional Facility.  He is sued in his personal and official capacities.

35.    Defendant MICHAEL BERTONE is, or was at all relevant times, the Deputy Superintendent of Security at Eastern Correctional Facility.  He is sued in his personal and official capacities.

36.     Defendant THOMAS NAPOLI is, or was at all relevant times, the Deputy Superintendent and Designee for Reasonable Accommodation of Cayuga Correctional Facility. He is sued in his personal and official capacities.

37.     As used herein, "the DOCCS Officials" refers to Defendants Annucci, Shipley, Walton, Urbanski, Washer, Lee, Bertone, and Napoli.

38.     At all times relevant herein, the DOCCS Officials acted under color of state law.

## STATEMENT OF FACTS

### I.     DOCCS's Grooming and Respirator Policies

39.     DOCCS maintains "directives" that set forth DOCCS's official policies.

40.     DOCCS Directive 3083 sets forth DOCCS's official grooming policy.  The policy applies to correctional officers.

41.     Directive 3083 does not proscribe corrections officers from having facial hair.

42.     Directive 3083 states that security staff appointed before January 25, 1990 are allowed to wear beards or goatees, regardless of reason or need, while "[s]ecurity staff appointed after January 25, 1990 are not permitted to wear beards or goatees."

43.     Directive 3083 also permits officers to have moustaches and sideburns.

44.     Directive 3083 provides that "[w]henever the Department requires an employee to wear a respirator, facial hair which would prevent a proper seal between the face and mask (e.g., beard/goatee) is prohibited."

45.     DOCCS's official policy governing the use of respirators is set forth in Directive 4068.

46.     By its terms, Directive 4068 does not apply to all employees; it states that it applies to employees who "are assigned, or wish to be assigned, to positions wherein respiratory use is, or

may be, required." Such employees "shall be medically cleared and trained for use of the particular respirator(s) required for those positions."

47.     Directive 4068 does not proscribe facial hair entirely.

48.     Directive 4068 states that an employee "who is required to wear a tight-fitting respirator must not have facial hair that comes between the sealing surface of the face piece and the face or that interferes with respirator valve function."

49.     Directive 4068 recognizes that "no one respirator will fit every individual" and therefore requires employees who need to use respirators must be "fit-tested" and "[f]it testing will be performed . . . [o]n an annual basis."

50.     DOCCS does not conduct annual respirator fit tests on all of its corrections officers.

51.     DOCCS designates certain positions in its facilities as "clean-shaven posts." These are the positions for which Directive 4068 applies because employees working these positions where respirator use may be required.

52.     The number of clean-shaven posts in each facility is limited.

53.     For instance, out of 544 posts at Fishkill Correctional Facility, only 68 are clean-shaven posts.

54.     Upon information and belief, each DOCCS facility maintains only a small number of respirators; at Fishkill, that number is less than twenty.

55.     In keeping with the fact that most security posts are not clean-shaven posts, numerous DOCCS security staff wear facial hair on the job.

56.     In October 2019, after this lawsuit was filed, DOCCS adopted Directive 2609, entitled "Reasonable Accommodation of Religious Observance or Practices for Employees and Applicants."

57.     Directive 2609 sets forth DOCCS's policy for employees to request religious accommodations, including for the religious practice of wearing beards.

58.     Directive 2609 states that "[a]n employee who, in accordance with his or her religious beliefs, observes a particular manner of dress, hairstyle, beard, or other religious practice, should not be unreasonably required to compromise his or her practice in the workplace."

59.     Directive 2609 also states that "[a]n employee may request a religious accommodation at any time, regardless of prior non-observance."

60.     Directive 2609 does not specify how DOCCS officials should determine whether an employee's professed religious beliefs or practices are, or are not, sincere or religious in nature.

61.     There is no requirement in Directive 2609 that DOCCS officials must meet or speak with an employee before deciding whether an employee's professed religious beliefs or practices are, or are not, sincere or religious in nature.

62.     Directive 2609 states that "[m]any religious accommodations may occur without any formal request, or any discussion. For example, the wearing of religious headgear should be permitted, without discussion, in nearly all circumstances, unless it creates a specific concern, such as a safety concern or a conflict with an essential appearance standard."

63.     But Directive 2609 also specifies that "[c]ertain types of requests for reasonable accommodation of religious observance or practices should always be formally documented using forms" and identifies among such requests, "Requests for exemptions to Personal Grooming Standards (Directive #3083 . . . )."

64.     Because Directive 3083 prohibits the wearing of beards – except for officers hired before January 25, 1990 – Directive 2609 requires a different and more onerous process to request

a religious accommodation to wear a beard than it requires for most other religious accommodations, including, "the wearing of religious headgear."

65.    As discussed below, even following the adoption of Directive 2609, DOCCS has continued to deny religious accommodations for improper reasons.

## II.    Religious Discrimination and Retaliation Against the Plaintiffs

### A.    Brian Sughrim and David Feliciano

#### i.    Background

66.    Officer Sughrim is Muslim.

67.    His sincerely held religious beliefs require him to keep a beard; the basis for this belief is grounded in the Quran, Sunnah, and the Hadith.

68.    Officer Sughrim joined DOCCS in December 1994.

69.    He has worn a beard between one-half and one inch long for most of his career with DOCCS.

70.    Officer Sughrim's beard has never interfered with any aspect of his job responsibilities.

71.    After working briefly at Sing Sing Correctional Facility, Officer Sughrim began working at Fishkill Correctional Facility ("Fishkill") in or about 1995.

72.    His present assignment at Fishkill is a permanent post in the yard.

73.    Officer Sughrim's current post is not a clean-shaven post.

74.    Officer Sughrim has been assigned to that post for approximately four years.

75.    Prior to his current post in the yard, Officer Sughrim was assigned for approximately twenty years to a permanent post in a housing unit.

76.    That was not a clean-shaven post either.

77.     Officer Sughrim has never been assigned to, on a permanent or temporary basis, nor switched posts with an officer assigned to, a clean-shaven post.

78.     In neither of his posts at Fishkill for the past 24 years has Officer Sughrim had access to a respirator.

79.     At no point since graduating from the DOCCS Academy has Officer Sughrim ever been asked, expected, or required to wear a respirator.

80.     At no point since graduating from the DOCCS Academy has Officer Sughrim been evaluated or fit-tested for a respirator.

81.     Throughout his nearly 25-year career with DOCCS, Officer Sughrim has never had to wear a respirator or gas mask in order to complete his job responsibilities and duties.

82.     Prior to working for DOCCS, Officer Sughrim spent four years enlisted in the Navy.  He served on the U.S.S. John F. Kennedy stationed in Virginia Beach.

83.     Officer Sughrim maintained a beard for medical reasons while he worked in the Navy.  He was never admonished or disciplined for doing so.

84.     While in the Navy, Officer Sughrim was fit-tested for a gas mask, while he had facial hair, and he passed the fit test.

85.     Officer Feliciano is also Muslim.

86.     His sincerely held religious beliefs require him to keep a beard; the basis for this belief is grounded in the Quran, Sunnah, and the Hadith.

87.     Officer Feliciano joined DOCCS in January 2000.

88.     He has maintained a beard between one and two inches for most of his career.

89.     Officer Feliciano's facial hair has never interfered with his job responsibilities.

14

90.     After working briefly at Sing Sing and Greenhaven Correctional Facilities, Officer Feliciano went to work at Fishkill, where he is still assigned.

91.     For approximately the past twelve years, Officer Feliciano has been assigned to a permanent post, known as the "14/18" post, in a housing unit.

92.     His job responsibilities on that post include delivering items like radio batteries to officers while they are on their posts.

93.     Officer Feliciano's current post is not a clean-shaven post.

94.     Officer Feliciano's prior post was "RDO Relief," which provides coverage for other posts. ("RDO" stands for "regular day off.")  He covered recreation and housing posts in that capacity.

95.     Officer Feliciano was assigned to RDO Relief for approximately seven years.

96.     That post was not a clean-shaven post either.

97.     Officer Feliciano has never been assigned to a clean-shaven post, on either a temporary or permanent basis.

98.     For several months approximately six years ago, Officer Feliciano regularly swapped to a clean-shaven post two days each week.  DOCCS approved those swaps.  Other than that, Officer Feliciano has never switched posts with an officer assigned to a clean-shaven post.

99.     In neither of his posts at Fishkill has Officer Feliciano had access to a respirator.

100.    Throughout his nearly 20-year career with DOCCS, Officer Feliciano has never had to wear a respirator or gas mask in order to complete his job responsibilities or duties.

101.    DOCCS has not directed Officer Feliciano to be evaluated or fit-tested for a respirator or gas mask since early in his career.

ii.     **Medical accommodation requests**

102.    Years ago, DOCCS granted both Officer Sughrim and Officer Feliciano medical accommodations to wear beards.

103.    Officers Sughrim and Feliciano have both been diagnosed with pseudofolliculitis barbae, a condition in which shaving leads to ingrown hairs that develop into painful bumps and cause the skin to become inflamed, making further shaving excruciating.

104.    In November 1995, Officer Sughrim submitted a request to DOCCS to wear a beard because of this condition.

105.    His request was supported by a note from a licensed dermatologist recommending that Officer Sughrim not shave.

106.    DOCCS granted that request.

107.    In April 2013, Officer Feliciano submitted an accommodation request to DOCCS to keep a beard because of his pseudofolliculitis barbae condition.

108.    DOCCS granted that request in June 2013.

109.    The letter from DOCCS granting Officer Feliciano's accommodation stated, "except in emergency situations, you will not be assigned to a post where you are required to be clean-shaven."

110.    In March 2019, Officer Sughrim and Officer Feliciano received a memo addressed to "all appropriate staff" from defendant Urbanski and James Johnson, who were Deputy Superintendents at Fishkill.

111.    The memo stated that security staff who had "an approved medical shaving exemption are required to resubmit for an approval every six months."

112.    The memo directed staff who had not resubmitted their medical shaving exemption "recently" to "provide updated medical documentation" along with the appropriate form.

113.    After receiving the memo, Officer Sughrim was called into the office of Leroy Fields, the Fishkill Superintendent.

114.    Superintendent Fields directed Officer Sughrim to submit updated medical documentation regarding his shaving restriction.

115.    Plaintiffs both submitted to Deputy Superintendent Johnson recent prescriptions from dermatologists advising that they not shave.

116.    The letter from Officer Sughrim's dermatologist stated that Officer Sughrim was "currently under my care and diagnosed with pseudofolliculitis barbae"; Officer Sughrim "has tried various disposable and electric razors and skin care products both over the counter and prescribed with negative results"; and Officer Sughrim "should be medically excused from shaving due to his above mentioned condition."

117.    The letter from Officer Feliciano's doctor likewise stated that he had "a history of pseudofolliculitis barbae" and that shaving causes him razor bumps that "often become large, painful, infected, pus pimples that require topical antibiotics."   The letter also stated that daily shaving "would constantly exacerbate the condition."

118.    Nonetheless, DOCCS sent Officer Sughrim and Officer Feliciano notices that "[t]he medical note you provided was not sufficient" because DOCCS wanted "information as it relates to your attempts to utilize alternative hair removal options and medical treatment."

119.    Officer Sughrim's dermatologist note *had* provided that information.

120.    The notices from DOCCS also asserted that "[u]niformed staff are required to be clean-shaven as outlined in Directives #3083 and #4068," but that assertion is not correct.

121.    The notices DOCCS sent to Officer Sughrim and Officer Feliciano instructed them to "provide a photo of your clean-shaven face, along with conforming medical documentation."

122.    It was well-known in DOCCS that Officer Sughrim and Officer Feliciano were practicing Muslims when DOCCS instructed them to shave.

### iii.    Religious accommodation requests

123.    Because shaving was medically inadvisable for Officers Sughrim and Feliciano and because it would violate a tenet of their religious beliefs, they could not comply with DOCCS's directive to shave their beards.

124.    Between late April and early May 2019, Officers Sughrim and Feliciano both submitted religious accommodation requests to DOCCS.

125.    Officer Feliciano submitted his request on a DOCCS form entitled, "Request for Religious Accommodation."

126.    That form asks, among other things: "Are you assigned or swap to a clean-shaven post?" "To what extent are you required to wear personal protective safety equipment," and "Do you ever have duties or assignments outside the physical perimeter of the facility?"

127.    Officer Feliciano wrote on the form: "I do not work any clean shaven posts, nor do I swap with any officers on clean shaven posts. . . .  I am not required to wear personal protective safety equipment. It is not part of my bid or part of anyone else[']s bid I swap with."  (A bid is a post or position in DOCCS parlance.)

128.    Officer Sughrim and Officer Feliciano both submitted documentation from religious leaders attesting to their sincerely-held Muslim beliefs.

129.    By separate letters, both dated August 5, 2019, and signed by defendant Walton, DOCCS denied Officer Sughrim's and Officer Feliciano's requests for religious accommodation to continue wearing their beards.

130.    The letters, which contained nearly identical language, stated that DOCCS "recognizes your right to request a religious accommodation for your sincerely held religious beliefs. Specifically, you requested to be permitted a shaving exemption based on your Islamic religious beliefs."

131.    Nonetheless, DOCCS directed Officers Sughrim and Feliciano "to conform with the Department's personal grooming standards outlined in Directive #3083," apparently meaning that Officers Sughrim and Feliciano must shave their beards.

132.    DOCCS justified its denial of Officer Sughrim's and Officer Feliciano's requests for religious accommodation by asserting that all security staff must be clean-shaven because they all must be able to wear respirators in case of an emergency or other staffing need.

133.    According to DOCCS, Officer Sughrim's and Officer Feliciano's "request [to keep their beards] creates an undue hardship and burden on facility operations and impacts the safety and security within the facility."

134.    This justification was not true and was pretextual.

135.    It does not present a hardship to DOCCS for Officers Sughrim and Feliciano to have beards.

136.    For more than a decade, DOCCS permitted Officer Sughrim and Officer Feliciano to wear beards and never claimed that it compromised the safety or security of Fishkill.

137.    Between April 24, 2019, and July 29, 2019 – that is, during the period DOCCS was reviewing Officer Sughrim's and Officer Feliciano's religious accommodation requests and before it denied those requests – DOCCS granted new beard accommodations and extended existing accommodations for apparently secular reasons for several other officers at Fishkill.

138.    Before and after it denied Officer Sughrim's and Officer Feliciano's religious accommodation requests, DOCCS allowed other security officers at Fishkill and other facilities to have beards for medical reasons.

139.    Before and after it denied Officer Sughrim's and Officer Feliciano's religious accommodation requests, DOCCS allowed other officers to wear beards without any formal authorization.

140.    DOCCS continues to permit other security officers at Fishkill and other facilities to have beards; some have an accommodation, while others do not.

141.    Some of those security staff who have beards work in clean-shaven posts.

142.    In granting Officer Feliciano's initial medical accommodation for facial hair in 2013, DOCCS told Officer Feliciano that he may be assigned to a clean-shaven post "in emergency situations."

143.    Nonetheless, Officer Sughrim and Officer Feliciano are not, and have never been, assigned to clean shaven posts that would require the use of a respirator.  The very fact that DOCCS maintains designated "clean shaven posts" indicates that only certain positions require the need to be clean shaven.

144.    Even if Officer Sughrim or Officer Feliciano ever had to wear a respirator at work, which they have never had to for more than two decades, DOCCS does not know whether they are in compliance with Directive 4068 because it has not fit-tested them to determine whether their facial hair "comes between the sealing surface of the face piece and the face or that interferes with respirator valve function."

145.    There is no actual threat to safety or security for officers in clean-shaven posts to have facial hair, because there are security staff at Fishkill with beards who work on clean-shaven posts.

146.    Even if it was necessary for security staff on clean-shaven posts not to have facial hair, there are sufficient security staff assigned to Fishkill to cover the clean-shaven posts.

147.    There are presently 544 posts at Fishkill, only 68 of which are clean-shaven posts.

148.    There are approximately 780 corrections officers assigned to Fishkill.

149.    Of those officers, approximately 200 are resource officers, who are not assigned to a permanent post and are available to cover other posts.

150.    At the time DOCCS denied Officer Sughrim's and Officer Feliciano's religious accommodation requests, there were approximately 44 security staff at Fishkill who had accommodations to wear beards.

151.    Thus, there were approximately 734 officers at Fishkill, not counting Officer Sughrim and Officer Feliciano, who were available to fill the 68 clean-shaven posts.

152.    DOCCS did not offer Officer Sughrim or Officer Feliciano an accommodation of any kind that would allow them to keep their beards.

153.    DOCCS maintains more than 50 correctional facilities, 13 of which are in the Hudson Valley Region where Fishkill is located.  DOCCS did not offer Officer Sughrim or Officer Feliciano the choice to move to any of these other facilities.

### iv.    Discipline and suspension

154.    On August 5, 2019, defendant Washer provided Officer Sughrim a copy of defendant Walton's letter and directed him to shave before his next shift the following day.

155.    Defendant Washer knew Officer Sughrim was Muslim and that shaving would violate a tenet of Officer Sughrim's religious beliefs.

156.    On August 6, 2019, Officer Sughrim reported for duty with a beard; he worked a double shift that day without incident.

157.    Officer Sughrim reported for work on August 7, 2019 and worked without incident.

158.    On August 8, 2019, when Officer Sughrim reported to Fishkill, defendant Washer directed him to wait in defendant Washer's office.

159.    Officer Sughrim was made to wait from approximately 8:00 a.m. until approximately 3:00 p.m., at which point Cpt. Washer handed Officer Sughrim a Notice of Discipline ("NOD").

160.    The NOD was signed by defendant Shipley,

161.    The NOD stated that DOCCS was dismissing Officer Sughrim from state service and that he would lose his accrued annual leave.

162.    The NOD stated that Officer Sughrim had "failed to groom [himself] consistent with personal appearance requirements" because he was "wearing a beard while on duty."

163.    The NOD stated that Officer Sughrim was "insubordinate in that [he] failed to comply with an order given by a superior," that is, "Captain A. Washer gave you a direct order . . . to be clean shaven on your next tour of duty" and "[y]ou failed to comply with this order."

164.    The NOD stated that the penalty assessed was appropriate because "your actions in this instance are totally inconsistent with your duties and responsibilities as an employee with [DOCCS]" and "your actions . . . bring into question your continued suitability as an employee with this Department."

165.    On August 10, 2019, when Officer Sughrim reported for his next regular shift, he was made to stand in "line up," which is essentially rollcall, where several officers—as many as six—had beards, including some who did not have a formal accommodation from DOCCS.

166.    Officer Sughrim was then told to report to Cpt. Churns's office.

167.    Cpt. Churns told Officer Sughrim, in sum and substance, that given the Governor had just signed a law making it illegal to discriminate against employees on the basis of facial hair, he would speak with DOCCS about the situation in light of the new law.

168.    Officer Sughrim had to wait in Cpt. Churns's office throughout the day.

169.    When Cpt. Churns eventually returned, he said he had spoken with DOCCS Labor Relations in Albany, and they intended to proceed with suspending Officer Sughrim.  Defendant Shipley is the Director of DOCCS's Bureau of Labor Relations.

170.    Defendant Shipley, who signed Officer Sughrim's NOD, is the Director of Labor Relations.

171.    Defendant Shipley knew that Officer Sughrim was Muslim and that shaving would violate a tenet of Officer Sughrim's religious beliefs.

172.    Officer Sughrim was stripped of his badge and identification and escorted out of Fishkill in front of his friends and colleagues.

173.    Officer Feliciano was informed of DOCCS's denial of his religious accommodation request on or about August 5, 2019.

174.    He appeared on August 9 and August 12, 2019, for a previously scheduled training, without incident.

175.    However, on August 9, 2019, defendant Urbanski told Officer Feliciano that when he appeared for his next regular shift on August 13, 2019, he needed to be clean shaven.

23

176.     Defendant Urbanski knew that Officer Feliciano was Muslim and that shaving would violate a tenet of Officer Feliciano's religious beliefs.

177.     On August 13, 2019, when Officer Feliciano reported to Fishkill, defendant Urbanski handed him a NOD.

178.     The NOD was signed by defendant Shipley,

179.     The NOD contained the same statements as Officer Sughrim's NOD noted above.

180.     Defendant Shipley knew that Officer Feliciano was Muslim and that shaving would violate a tenet of Officer Feliciano's religious beliefs.

181.     Officer Feliciano's notice stated that DOCCS intended to impose a 30-day suspension, as opposed to dismissal, which it had applied to Officer Sughrim.  There was no indication in the notice why a different penalty was imposed on Officer Feliciano.

182.     On August 14, 2019, when Officer Feliciano reported to Fishkill, defendant Washer pulled him aside and made him wait in the administrative building.

183.     Eventually, defendant Washer appeared and stripped Officer Feliciano of his badge and he was escorted out of the facility in front of his friends and colleagues.

184.     Defendant Washer knew that Officer Feliciano was Muslim and that shaving would violate a tenet of Officer Feliciano's religious beliefs.

185.     Officer Sughrim's and Officer Feliciano's suspensions went into effect immediately.

186.     This forced Officer Sughrim to use his accrued personal time in order to stay on payroll and continue receiving health benefits.

187.    Officer Sughrim had approximately three weeks of accrued personal time, and if his suspension lasted longer than that, he would have lost his salary and health insurance, and his pension contributions would have stopped.

188.    Similarly, Officer Feliciano was forced to use his accrued personal time because he was concerned that his health insurance would be cut off.

189.    During the time that they were suspended, Officers Sughrim and Feliciano were not able to work overtime shifts that they customarily performed, and which enhanced their pension.

190.    When DOCCS suspended Officers Sughrim and Feliciano, they were added to the "lock out" book, which is kept at the front desk of Fishkill.

191.    The lock out book contains the names and photographs of officers who are not permitted to enter the facility; these officers include former corrections officers who have committed crimes or other serious misconduct.

192.    For Officers Sughrim and Feliciano to have had their names and photographs in the lock out book, which any of their fellow officers could have seen, is insulting, embarrassing, and demoralizing.

193.    On or about August 19, 2019, DOCCS sent Officer Sughrim and Officer Feliciano amended NODs, both signed by defendant Shipley.

194.    These NODs stated that DOCCS intended to dismiss both Officer Sughrim and Officer Feliciano from state service and take away their accrued annual leave.

195.    The amended NOD to Officer Sughrim confirmed that he was suspended without pay effective August 10, 2019; and the amended NOD to Officer Feliciano confirmed that he was suspended without pay effective August 14, 2019.

196.    Had Officer Sughrim and Officer Feliciano been dismissed from DOCCS, they would have lost their pensions and suffered other adverse, and irreparable, consequences.

v.    **DOCCS's response to this lawsuit**

197.    Officers Sughrim and Feliciano filed this lawsuit on August 26, 2019.

198.    In response, DOCCS reinstated both officers with backpay and withdrew the Notices of Discipline against them for refusing to shave their beards.

199.    On August 27, 2019, DOCCS granted Officers Sughrim and Feliciano limited accommodations to keep their beards.

200.    Before learning about this lawsuit, DOCCS had not taken action to reinstate Officers Sughrim or Feliciano.

201.    Before learning about this lawsuit, DOCCS had not taken action to grant Officers Sughrim or Feliciano a religious accommodation to wear their beards.

202.    The accommodations that DOCCS granted Officers Sughrim and Feliciano were signed by defendant Walton.

203.    The accommodations limit the type and length of beards Officers Sughrim and Feliciano can wear.  They only allow beards "up to one inch in length" and specify that Officers Sughrim and Feliciano are "not permitted to wear a goatee, pencil-lined beard, or any designer-type beard."  The accommodations do not define "designer-type beard."

204.    The accommodation given to Officer Feliciano was not reasonable because it does not accommodate his sincerely held religious beliefs.  Officer Feliciano had requested a religious accommodation to wear his beard longer than one inch; and it was noted in the initial Complaint in this lawsuit that Officer Feliciano maintained a beard longer than one-inch long for religious reasons.  Accordingly, Officer has not received a reasonable accommodation.

205.    Officer Feliciano is not in compliance with the accommodation he was given and is subject to discipline at any time for maintaining a beard that does not comply with the accommodation he was given.

206.    The accommodations given to Officers Sughrim and Feliciano also limit the positions they are eligible to work.  The accommodations state, "you will not be permitted to bid on any clean-shaven posts unless you decide to withdraw your request for facial hair" and require Officers Sughrim and Feliciano to submit a new religious accommodation request if they change posts or transfer to another facility.

207.    Officers Sughrim and Feliciano remain concerned that if they change posts or transfer to another facility, which will require them to submit new religious accommodation requests, the DOCCS Officials may deny their requests for the same pretextual reason that their initial requests were denied.

208.    No DOCCS official spoke with Officers Sughrim or Feliciano about their religious accommodation requests after their request were denied and before the accommodations were later granted.

209.    Since the date DOCCS reinstated Officers Sughrim and Feliciano, there are officers at Fishkill who continue to openly wear beards, including on clean-shaven posts, some with no accommodation, and they have not been disciplined or harassed by DOCCS officials for wearing beards.

210.    As a result of the foregoing, Officers Sughrim and Feliciano were, and continue to be, insulted, embarrassed, depressed, and demoralized.

**C.    Derek Gleixner**

211.    Officer Gleixner is Muslim.

212.    His sincerely held religious beliefs require him to keep a modest beard; the basis for this belief is grounded in the Quran, Sunnah, and the Hadith.

213.    Officer Gleixner has worked for DOCCS since June 2016.

214.    He is currently assigned to Fishkill; before that, he worked at Eastern Correctional Facility ("Eastern").

215.    Before he converted to Islam, Officer Gleixner usually kept a beard for non-religious reasons and he experienced no harassment, discrimination, or discipline from DOCCS or DOCCS officials because of his beard.

216.    Officer Gleixner had a beard when Lt. Michael Harms, who is a lieutenant on the CERT team, asked Officer Gleixner to transfer to Eastern and join the CERT team there.

217.    At Lt. Harms's urging, Officer Gleixner joined the CERT team at Eastern in or around June 2017.

218.    At that time, and throughout the nearly two years that Officer Gleixner was a member of the CERT term, he usually wore a short beard.

219.    Officer Gleixner's beard never interfered with his responsibilities or duties on the CERT team.

220.    As part of his training with the CERT team, Officer Gleixner was fit-tested for a seal with a respirator when he had a beard and he passed.

221.    Officer Gleixner participated in various trainings with the CERT team, including being exposed to tear gas while he wore a respirator, all while he had a beard, and he suffered no negative consequences.

222.    In or around April 2019, Officer Gleixner submitted a request to DOCCS's Office of Diversity & Inclusion for a religious accommodation to maintain a beard.

223.     On May 3, 2019, while his religious-accommodation request was still pending, Officer Gleixner reported for duty to cover a shift for his "swap partner."  In accordance with the tenets of his faith, Officer Gleixner was wearing a modest beard.

224.     Officer Gleixner was not the only officer with a beard at the May 3rd pre-shift briefing.  Nonetheless, Officer Gleixner was singled out in front of other officers because of his beard and ordered to report to Deputy Superintendent ("DSS") Michael Bertone's office.

225.     Officer Gleixner told DSS Bertone that his religious-accommodation request was pending, and he showed DSS Bertone the letter from his imam that he had submitted with that request.

226.     Nonetheless, DSS Bertone ordered Officer Gleixner to shave or go home.

227.     Upon information and belief, DSS Bertone did not that day order other officers with beards to shave or go home.

228.     After receiving DSS Bertone's order, Officer Gleixner spoke with Superintendent Lee.  Officer Gleixner told Superintendent Lee that he had made a religious accommodation request to wear a beard, and that his request was pending.

229.     Superintendent Lee looked at Officer Gleixner's name tag and said, in sum and substance and in a mocking tone, "Gleixner . . . Muslim . . . yeah, okay."

230.     Superintendent Lee said this in front of other officers, humiliating Officer Gleixner.

231.     Superintendent Lee humiliated and embarrassed Officer Gleixner further by parading him down a hallway and into the front lobby of the facility in front of other officers and employees.

232.     Officer Gleixner was directed to sit in the lobby while Superintendent Lee spoke with DSS Bertone.

233. When Superintendent Lee returned, he said, in sum and substance and in a voice loud enough for other officers to hear, that Superintendent Lee did not care about Officer Gleixner's request for a religious accommodation and Officer Gleixner had to shave like he was told.

234. Out of fear that he would be subject to disciplinary action, and that his swap partner would also be disciplined if he was sent home during that officer's shift, Officer Gleixner was forced to shave.

235. Officer Gleixner used an electric razor at the lowest setting and shaved his beard.

236. When Officer Gleixner saw Superintendent Lee after Officer Gleixner had shaved, Superintendent Lee patted him on the shoulder and said, in sum and substance, that Officer Gleixner looked much better.

237. Out of fear that he and his swap partner, whose shifts Officer Gleixner regularly covered, would be disciplined if he grew his beard, Officer Gleixner continued to shave his beard with an electric razor at the lowest setting.

238. After May 3, 2019, Officer Gleixner observed other officers wearing beards during shifts that he worked.  Upon information and belief, those officers were not ordered to shave and were not disciplined.

239. On or about May 13, 2019, Officer Gleixner complained to the Anti-Discrimination Investigations Division of the New York State Governor's Office of Employee Relations ("GOER") about the religious discrimination and harassment he was experiencing.

240. On June 25, 2019, after Officer Gleixner filed his complaint with GOER, DOCCS denied Officer Gleixner's religious accommodation request.

241.    The letter denying Officer Gleixner's request stated that DOCCS "recognizes your right to request a religious accommodation for your sincerely held religious beliefs."

242.    The reason given for denying Officer Gleixner's religious accommodation request were substantially the same as the reasons given to Officers Sughrim and Feliciano: that Officer Gleixner's request to wear a beard "creates an undue hardship on facility operations and impacts the safety and security within the facility."

243.    Officer Gleixner never had to wear a respirator during a regular shift.

244.    Officer Gleixner had passed a fit-test for a respirator while wearing a beard.

245.    Many other officers wore beards at DOCCS facilities, without any consequence to themselves or their colleagues.

246.    On June 27, 2019, at the beginning of a shift that Officer Gleixner was working for his swap partner, even though Officer Gleixner did not have a beard because he had been shaving with the electric razor since May 3, 2019, Officer Gleixner was directed to shave on the orders of DSS Bertone.

247.    Several other officers on duty that day had beards, and upon information and belief, none of those officers had an accommodation from DOCCS to wear a beard, and none of those other officers was ordered to shave or disciplined for wearing beards.

248.    Even though Officer Gleixner did not have a beard, because of DSS Bertone's order, Officer Gleixner was forced to shave with a state-issued razor, or face discipline.

249.    Shaving with a razor caused cuts and abrasions and a rash on Officer Gleixner's face.

250.    On July 2, 2019, even though he did not have a beard, Officer Gleixner was again pulled out of the pre-shift briefing in front of other officers and directed to go to DSS Bertone's office for a formal counseling session about his facial hair.

251.    At that counseling session, DSS Bertone admitted that Officer Gleixner did not have a beard.

252.    And again on July 10, 2019, Officer Gleixner was pulled out of the pre-shift briefing because of his facial hair and ordered to go to DSS Bertone's office for "counseling" about his facial hair.

253.    Officer Gleixner was being targeted by DOCCS officials because of his religion and desire to keep a beard for religious reasons.

254.    Other officers who actually had beards and did not have accommodations from DOCCS were not subject to the same treatment as Officer Gleixner.

255.    On or around August 20, 2019, Officer Gleixner submitted another discrimination complaint to GOER, detailing the harassment he had suffered during the previous months.

256.    Two days later, at the end of his shift on the morning of August 22, 2019, Cpt. Exner, who was then the acting Deputy Superintendent of Security at Eastern, told Officer Gleixner that he was being targeted.

257.    Before Officer Gleixner's second shift began that afternoon, Superintendent Lee berated Officer Gleixner about his facial hair in front of other officers.

258.    Superintendent Lee ordered Officer Gleixner to sit in a conference room where he could be seen by other officers and facility employees.  Several officers—including one who had a full beard but, upon belief, no accommodation to wear a beard—came into the room to inquire about what was happening to Officer Gleixner.

32

259.    The following day, August 23, 2019, Officer Gleixner received a Notice of Discipline from defendant Shipley, informing him that he was being suspended for thirty days without pay.

260.    The NOD stated that Officer Gleixner was being disciplined for "misconduct" because he had failed to comply with an order to be clean-shaven per Directive 3083 (even though Directive 3083 does not require officers to be clean shaven and Officer Gleixner was in compliance with Directive 3083).

261.    On August 27, 2019, the day after this lawsuit was filed, Officer Gleixner received another letter from defendant Shipley, informing him that the NOD was withdrawn.

262.    Officer Gleixner also received a letter that day from defendant Walton, advising him that his request for a religious accommodation to maintain a beard was now approved.

263.    However, Officer Gleixner's accommodation has the same limitations as Officers Sughrim's and Officer Feliciano's accommodations.

264.    In his current position at Fishkill Correctional Facility, Officer Gleixner is routinely assigned, not by his request, to transportation and other posts that are designated clean-shaven posts, even though he has a beard and an accommodation to have a beard that limits Officer Gleixner from swapping shifts with officers who work clean-shaven posts.

265.    Officer Gleixner remains concerned that if he changes posts or transfers to another facility, and he is required to submit a new religious accommodation request, DOCCS officials may deny that request for the same pretextual reason that his initial request was denied.

266.    The foregoing caused Officer Gleixner humiliation, embarrassment, as well as physical, emotional, and spiritual injuries.

**D.    Khaldoun Alshamiri**

33

267.   Officer Alshamiri is Muslim.

268.   His sincerely held religious beliefs require him to keep a modest beard; the basis for this belief is grounded in the Quran, Sunnah, and the Hadith.

269.   Officer Alshamiri has worked for DOCCS since June 2016.

270.   Officer Alshamiri is also in the United States Marine Corps Reserve.

271.   Officer Alshamiri is currently stationed at Cayuga Correctional Facility ("Cayuga") and has worked there since he left the DOCCS Academy.

272.   Officer Alshamiri, who is assigned to a post in the law library, does not work a clean-shaven post.

273.   Officer Alshamiri first submitted a request for a religious accommodation to maintain his beard shortly after he started at Cayuga.

274.   He was told to write a memorandum to the Superintendent of Cayuga to request such an accommodation.

275.   Shortly after Officer Alshamiri wrote and submitted the requested memorandum, he was called up for service by the Marine Corps.  He was deployed with the Marines for approximately a year before returning to his position at Cayuga.

276.   Upon returning to Cayuga, the Superintendent's secretary asked Officer Alshamiri if he still wanted a religious accommodation to wear a beard and he told her that he did.

277.   Notwithstanding that many officers at Cayuga had beards, including some who worked clean-shaven posts, supervisors told Officer Alshamiri several times a week that he needed to shave.

278.    In late 2017, since he had not received a response from the Superintendent's office regarding his religious accommodation request, Officer Alshamiri submitted a religious accommodation request to DOCCS's central office in Albany.

279.    Officer Alshamiri was told later that he had used the wrong form to submit the request and was provided a new form, which he completed and re-submitted.

280.    DOCCS denied Officer Alshamiri's accommodation request in July 2018, but Officer Alshamiri did not learn about the denial until October 2018 because it was mailed to an old address.

281.    The reason DOCCS gave for denying the request was that he was required to shave as part of his periodic duties with the Marine Corp.

282.    In other words, DOCCS did not find that Officer Alshamiri's religious belief was insincere (which would not have been correct), nor did DOCCS determine that it caused any undue hardship to DOCCS to grant a reasonable accommodation to Officer Alshamiri.

283.    Nonetheless, DOCCS denied Officer Alshamiri's religious accommodation request.

284.    Julie Dennis in DOCCS's Office of Diversity Management told Officer Alshamiri that he needed to submit additional evidence to confirm the sincerity of his religious beliefs.

285.    After he received a letter from the Marine Chaplain affirming the sincerity of his faith, Officer Alshamiri appealed DOCCS's denial of his religious accommodation request in August 2019.

286.    On September 9, 2019, Officer Alshamiri received an email from defendant Walton, who acknowledged receipt of Officer Alshamiri's appeal but did not state whether Officer Alshamiri was being granted an accommodation; instead, defendant Walton directed Officer

Alshamiri to complete a new form and return it to her if he wanted to reapply for a religious accommodation.

287.    Officer Alshamiri submitted the new form to defendant Walton on or about September 20, 2019.  Cayuga acknowledged receipt of that request on September 23, 2019. Officer Alshamiri has not received a response to that request.

288.    In the middle of November 2019, while his religious accommodation request was still pending, Officer Alshamiri was told by a supervisor that he would have to shave.  The supervisor, Lt. Soto, has a beard and he apologized to Officer Alshamiri, in sum and substance, for the hypocrisy of him directing Officer Alshamiri to shave.

289.    Because Officer Alshamiri still had not received a response to his accommodation request, he went to see Deputy Superintendent Napoli, who is the Cayuga Correctional Facility "Designee for Reasonable Accommodation" under DOCCS's current religious accommodation policy.

290.    Defendant Napoli told Officer Alshamiri that he would be locked out if he refused to shave.

291.    Officer Alshamiri requested a new religious accommodation request form, and after being provided the form, was directed to go home and return clean shaven.  Officer Alshamiri did not shave and when he returned to work, he was ordered to sit in the lobby where officers walked by and made rude comments to him about his beard.

292.    Officer Alshamiri was sent back to talk with defendant Napoli and he showed defendant Napoli the new religious accommodation request form that he had prepared.

293.    Defendant Napoli signed the form and wrote on it that the request was being sent to the Office of Diversity and Inclusion and a decision should be made by December 5, 2019.

294.    Defendant Napoli then told Officer Alshamiri that he would suspend Officer Alshamiri if he refused to shave.

295.    Officer Alshamiri refused to shave, and defendant Napoli said that he was writing Officer Alshamiri up for disobeying a direct order and told him to leave the facility.

296.    Officer Alshamiri went to his residence and later received a call from a supervisor who told Officer Alshamiri, in sum and substance, that he could work until his religious accommodation request was decided and Officer Alshamiri should return to Cayuga.

297.    Once Officer Alshamiri arrived back at the facility, the same supervisor stopped Officer Alshamiri and ordered him to revise a memo that he had previously prepared regarding an incident involving an inmate in the law library.  Another supervisor directed Officer Alshamiri to change the memo over Officer Alshamiri's objections, and eventually ordered Officer Alshamiri to write an addendum to the memo.

298.    On December 6, 2019, after the Court entered a temporary restraining order and on the very day the Court was holding a hearing to decide whether to continue and/or limit the restraining order, DOCCS officials prepared a letter authorizing Officer Alshamiri to wear a beard but only up to one-inch in length and requiring him to submit a new request if he changes posts. The letter was not mailed until December 9, 2019.

299.    Prior to receiving this letter, Officer Alshamiri had submitted a request to change posts and his last day on his current post is December 24.  Accordingly, Officer Alshamiri will be required to submit a new religious accommodation request.  Given his experience to-date, he is concerned that he will face harassment and may be ordered to shave his beard while his new request is pending, and that DOCCS may use pretextual reasons to deny his new request.

   **E.    Roland Sofo**

37

300.    Officer Sofo is a believer in Asatru, which is a traditional Norse Pagan religion.

301.    He follows the Forn Sidr (or "Old Customs") practice of Asatru and an important practice within his sincerely held religious beliefs is to maintain a beard.  The basis for this belief is grounded in the teachings of ancient texts that Asatru and Forn Sidr consider spiritual texts, including the Íslendinga saga, Guta Lag (or Gutalagen), and Edda.

302.    Officer Sofo has worked for DOCCS since 2014.

303.    He is currently stationed at Cayuga and has worked there for most of his career.

304.    Many officers at Cayuga have beards for non-religious reasons; on information and belief, none of those officers has faced consequences for not shaving.

305.    In November 2018, officers at Cayuga conducted a "No Shave November" fundraising campaign in which participating officers donated money and refrained from shaving for a month.  Upon information and belief, over 100 officers participated.  There was no complaint, as far as Officer Sofo knows, from supervisors or DOCCS executives.

306.    In October 2019, Officer Sofo informed supervisors that he wanted to keep a beard based on his religious beliefs.

307.    On or about November 15, 2019, Officer Sofo's superiors announced at lineup before the start of a shift that DOCCS had circulated a memo directing all officers without religious accommodations to be clean-shaven.  Officer Sofo requested a religious accommodation form from a supervisor, but the supervisor instructed him to speak with defendant Napoli.

308.    On November 16, 2019, Officer Sofo again attempted to locate a form to submit a religious accommodation request but he could not find one.

309.     Between Officer Sofo's first and second shifts that day, he requested the form yet again and this time a lieutenant provided it.  The lieutenant told Officer Sofo in sum and substance, I don't care what the law says, you have to shave.

310.     Officer Sofo submitted a religious accommodation request to keep a beard at the end of his second shift on November 16, 2019.

311.     On November 23, 2019, when Officer Sofo arrived at Cayuga to work a scheduled swap shift for another officer, a supervisor was waiting for him.  The supervisor handed Officer Sofo a letter denying his religious accommodation request.  The letter was dated the day before, November 22, 2019.

312.     Officer Sofo attempted to read the two-page denial letter while his supervisor stood over him berating him to "go shave."

313.     DOCCS's new Directive 2609 states "The accommodation process should not be adversarial in nature."

314.     The denial letter, signed by defendant Walton, stated:

Based on a review of material regarding your religion, as well as a consultation with the Division of Ministerial Family and Volunteer Services, it has been determined that wearing a beard is a personal preference and not a religious requirement of the Norse Pagan religion.  Further, maintaining facial hair and/or beards is not an inflexible dogma of the religion, as demonstrated by the recognized exception made for individuals serving in law enforcement positions. As such, your specific request **cannot be approved**.

315.     Neither defendant Walton nor any other DOCCS official had spoken to Officer Sofo about his religious beliefs and practices before his religious accommodation request was denied.

316.   Although the denial letter stated that "this is an interactive process and you may submit comments or any additional information that you believe would more fully support your request," DOCCS made no effort to engage Officer Sofo's request in an interactive way.

317.   DOCCS has never explained and Officer Sofo does not know what "material regarding [his] religion" was reviewed or what information the Division of Ministerial Family and Volunteer Services provided that led DOCCS to deny his religious accommodation request.

318.   Officer Sofo does not know how it was determined that his beliefs about keeping a beard were only a personal preference and not religious in nature.  That determination is wrong.

319.   Officer Sofo explained in his accommodation request that according to his faith "letting the hair of the face grow is a symbol of honor, one of the Nine Virtues," and "I believe I must honor the practice as part of what is essential in order to grow in my faith."

320.   Officer Sofo also does not know why defendant Walton and DOCCS think *his* religious beliefs includes an "exception" "for individuals serving in law enforcement positions." That is not what Officer Sofo believes.

321.   After Officer Sofo read the denial letter as best as he could while the sergeant was standing over him admonishing him repeatedly to "go shave," Officer Sofo went to see the lieutenant, who directed Officer Sofo to go home and shave immediately.

322.   Officer Sofo asked if he could appeal the denial of his request and complete his shift in the meantime, but the lieutenant told him, in sum and substance, that he had been instructed to direct Officer Sofo to go home and shave.  He said that if Officer Sofo did not shave, Officer Sofo would be locked out, meaning that Officer Sofo would be suspended from work.

323.   Officer Sofo was unable to have a representative from his union present during the meeting with the lieutenant.

324.   Officer Sofo left the facility and went home.  Shortly after Officer Sofo arrived home, he was notified that if he did not shave and return to work, he would lose swap privileges and could be locked out.

325.   Officer Sofo was deeply concerned that if he refused to shave, the officer whose shift he was covering that day would be disciplined.  Faced with no opportunity to challenge the denial of his accommodation request, or even submit further information as the denial letter said he had the right to do, Officer Sofo felt forced to shave and return to work.

326.   The experience was deeply humiliating to Officer Sofo.

327.   Officer Sofo later learned that the officer whose shift he was covering was docked vacation time for the time it took him to travel to his house, shave, and return to the facility.

328.   When Officer Sofo returned to Cayuga after shaving, he was forced to withstand the taunts and stares of other officers.

329.   Upon information and belief, one or more officers with beards who have not worked for DOCCS since before 1990 and who do not have a medical or religious accommodation worked at Cayuga on November 23, 2019 without being ordered to shave and without being disciplined.

330.   Officer Sofo was forced to shave again before he worked a double shift on November 26, 2019.

331.   The United States Army and the Air Force have granted religious accommodations for Asatru believers to wear beards.

332.   Even after the Court issued the temporary restraining order in November 2019, Officer Sofo has continued to face verbal harassment from supervisors regarding his beard.

**III.     Experience of Other DOCCS Employees**

333.     DOCCS security staff at Fishkill, Eastern, Cayuga, Albion and other New York State correctional facilities have suffered similar experiences as the named plaintiffs.

334.     Other DOCCS security staff with religious beliefs that mandate the wearing of facial hair have requested and been denied an accommodation to wear facial hair at work, even though it would pose no undue hardship to DOCCS to grant the accommodations.

335.     Other DOCCS security staff who wear beards for religious reasons have not made a formal religious accommodation request out of concern that their request will be denied.

336.     Other DOCCS security staff who wear beards for religious reasons have been harassed and retaliated against for wearing beards and/or requesting religious accommodations to wear beards.

337.     Other DOCCS security staff who wear beards for religious reasons are at risk of facing adverse employment action for not shaving.

338.     Other DOCCS security staff who would otherwise wear beards for religious reasons have refrained from doing so out of concern that they will face adverse employment action, retaliation, and harassment.

339.     At least seventy DOCCS security staff have had their requests for a religious accommodation to wear beards denied on the same grounds as Plaintiff Roland Sofo: because DOCCS determined that wearing a beard was a personal preference and not a requirement of those officers' religions.

**IV.     EEOC charges**

340.     On September 13, 2019, Officer Sughrim filed a timely charge of discrimination, retaliation, and failure to provide a reasonable accommodation with the United States Equal

Employment Opportunity Commission ("EEOC").   Officer Sughrim's charge included the allegations made in the initial Complaint filed in this case.

341.   The charge was brought on behalf of Officer Sughrim and all similarly situated correctional officers for DOCCS.

342.   On September 18, 2019, Officer Feliciano filed a timely charge of discrimination, retaliation, and failure to provide a reasonable accommodation with the EEOC.  Officer Feliciano's charge included the allegations made in the initial Complaint filed in this case.

343.   The charge was brought on behalf of Officer Feliciano and all similarly situated correctional officers for DOCCS.

344.   On December 3, 2019, Officer Gleixner filed a timely charge of discrimination, retaliation, and failure to provide a reasonable accommodation with the EEOC.  Officer Gleixner's charge incorporated the allegations made in the initial Complaint filed in this case.

345.   The charge was brought on behalf of Officer Gleixner and all similarly situated correctional officers for DOCCS.

346.   On January 13, 2020, Plaintiffs' counsel received a "right to sue" letter from the EEOC for the class charge filed by Derek Gleixner.

347.   On January 21, 2020 Plaintiffs' counsel received a "right to sue" letter from the EEOC for the class charge filed by Brian Sughrim.

348.   On September 6, 2020, Plaintiffs' counsel received a "right to sue" letter dated August 24, 2020 from the EEOC for the class charge filed by David Feliciano.

349.   On March 12, 2020, Officer Alshamiri filed a timely charge of discrimination, retaliation, and failure to provide a reasonable accommodation with the EEOC.   Officer Alshamiri's charge incorporated the allegations made in the First Amended Complaint filed in this

case.  The charge was brought on behalf of Officer Alshamiri and all similarly situated correctional officers for DOCCS.

350.    On March 12, 2020, Officer Sofo filed a timely charge of discrimination, retaliation, and failure to provide a reasonable accommodation with the EEOC.  Officer Sofo's charge incorporated the allegations made in the First Amended Complaint filed in this case.  The charge was brought on behalf of Officer Sofo and all similarly situated correctional officers for DOCCS.

351.    Officer Alshamiri and Officer Sofo received no response from the EEOC to their charges and more than 180 days have passed since they filed their charges with the EEOC.

352.    On January 11, 2022, Plaintiffs' counsel sent a request to the EEOC for a "right to sue" letter for Officers Alshamiri and Sofo.  The EEOC did not respond.

353.    On April 6, 2022, Plaintiffs' counsel emailed an EO Investigator in the Enforcement Unit of the EEOC and attached a copy of Plaintiffs' counsel January 11, 2022 letter requesting right to sue letters for Officers Alshamiri and Sofo.  The EO Investigator did not respond.

354.    On May 17, 2022, Plaintiffs' counsel called the EO Investigator and left a voicemail concerning Plaintiffs' request for right to sue letters for Officers Alshamiri and Sofo.  The EO Investigator did not respond.

355.    On May 25, 2022, Plaintiffs' counsel sent another request to the EEOC for a "right to sue" letter for Officers Alshamiri and Sofo.

356.    That same day, the EEOC sent an email to Plaintiffs' counsel stating: "We could not locate these charges.  Therefore, please re-send it to NEWYFAXENF@eeoc.gov."

357.     Plaintiffs' counsel sent an email to NEWYFAXENF@eeoc.gov on May 25, 2022, requesting a right to sue letter and attaching copies of the charges for Officers Alshamiri and Sofo that were hand delivered to the EEOC in March 2020.

358.     Plaintiffs' counsel received a response from NEWYFAXENF@eeoc.gov requesting the addendum to the charges for for Officers Alshamiri and Sofo.  Plaintiffs' counsel responded attaching the addendums.

359.     On June 16, 2022, Plaintiffs' counsel again emailed NEWYFAXENF@eeoc.gov to again request right to sue letters for Roland Sofo and Khaldoun Alshamiri.

360.     On July 6, 2022, Plaintiffs' counsel received an email from NEWYFAXENF@eeoc.gov that Sofo's and Alshamiri's charges "have been processed."

361.     Plaintiffs' counsel has received no further response from the EEOC, and has not received right-to-sue letters from the EEOC for Alshamiri or Sofo.

## CLASS ACTION ALLEGATIONS

362.     Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs seek to represent a certified Plaintiff class consisting of all persons who have been or will be subjected to DOCCS's practice and/or custom of not allowing security staff to wear facial hair as an expression of their sincerely held religious beliefs and taking adverse actions against such employees in violation of the First and Fourteenth Amendments of the United States Constitution and Title VII of the Civil Rights Act of 1964.

363.     The members of the class are so numerous as to render joinder impracticable: as of August 1, 2019, there were 19,109 security staff working for DOCCS, many of whom have religious beliefs that mandate wearing facial hair.

364.    Upon information and belief, there are more than one hundred DOCCS security staff who are impacted by DOCCS's practice who would be members of the class.

365.    Upon information and belief, many members of the class who would otherwise wear a beard as an expression of their religious beliefs, have refrained from doing so out of fear of discrimination and retaliation.

366.    Upon information and belief, many class members who have been denied a religious accommodation by DOCCS or who have not sought a religious accommodation do not bring individual claims for fear of discrimination and retaliation by other officers and supervisors.

367.    The class members' claims share a number of common questions of law and fact, including, but not limited to:

    a.    Whether the State of New York and DOCCS, and/or the DOCCS Officials, have engaged and are continuing to engage in a practice or custom of not allowing correctional officers to wear beards for religious reasons while officers are allowed to wear beards for secular reasons; and

    b.    Whether this practice/custom, and/or DOCCS's grooming or reasonable accommodation policies as applied to correctional officers who have religious beliefs/practices of wearing beards violates the First and Fourteenth Amendments of the United States Constitution and Title VII of the Civil Rights Act of 1964.

368.    The named plaintiffs' claims are typical of those of the class.  Like the other members of the class, the named plaintiffs all have suffered discrimination, retaliation, and harassment, including a hostile-work environment, and have had their requests for religious accommodations to wear facial hair for religious reasons denied by DOCCS.  The named plaintiffs all have had their rights violated by DOCCS through its inconsistent and discriminatory application of its policies concerning religious accommodations, grooming, and respirator use.

369.     The legal theories under which Plaintiffs seek declaratory and injunctive relief are the same or similar to those on which all members of the class will rely, and the harms suffered by Plaintiffs are typical of the harms suffered by the class members.

370.     Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interest with members of the plaintiff class, and will fairly and adequately protect the interests of the class.

371.     Plaintiffs are New York State Corrections Officers who have been, and will continue to be, victims of DOCCS's discriminatory practice regarding the wearing of beards for religious reasons.

372.     Plaintiffs are represented by Joshua S. Moskovitz, Ronald E. Cook, Jonathan C. Moore, and Luna Droubi.

373.     Mr. Moskovitz is an experienced civil rights attorney who has litigated several class action lawsuits, including a similar lawsuit against the New York City Police Department, which led to a change in the NYPD's policy concerning reasonable accommodations for officers to wear beards for religious reasons.

374.     Mr. Cook is a seasoned attorney with significant experience litigating class action matters.

375.     Mr. Moore and Ms. Droubi are partners at the law firm Beldock Levine & Hoffman, LLP.  They have significant experience litigating civil rights and employment discrimination claims, as well as class action matters involving constitutional issues.

376.     Plaintiffs' attorneys have the resources, expertise, and experience to prosecute this action, and know of no conflicts among members of the class or between the attorneys and members of the class.

377.    The plaintiff class should be certified pursuant to Rule 23(b)(2) of the Federal Rules

of Civil Procedure because the Defendants have acted on grounds generally applicable to the class,

thereby making class-wide declaratory and injunctive relief appropriate.

<u>**COUNT I**</u>

**Against the DOCCS Officials in their Official Capacities for
Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983 for Violations
of the First and Fourteenth Amendments to the United States Constitution**

378.    Plaintiffs repeat and reallege each and every allegation made in the foregoing

paragraphs as if fully set forth herein.

379.    By requesting religious accommodations, the Plaintiffs were engaged in activity

protected under federal law, and the discrimination, harassment, and punishment they suffered in

retaliation for seeking religious accommodations violates federal law.

380.    The aforementioned conduct violates the First and Fourteenth Amendments to the

United States Constitution.

381.    As a direct and proximate result of the aforementioned acts and omissions, the

constitutional rights of Plaintiffs and other members of the class have been and are continuing to

be violated.

382.    By acting under color of state law to deprive Plaintiffs and other class members of

their constitutional rights, the DOCCS Officials are in violation of 42 U.S.C. § 1983.

383.    Plaintiffs and other members of the class have suffered and will continue to suffer

serious and irreparable harm to their constitutional rights unless the DOCCS Officials in their

official capacities are enjoined from discriminating against, harassing (including by creating,

tolerating, perpetuating, and/or maintaining a hostile-work environment), and retaliating against

corrections officers because they wear beards for religious reasons, request an accommodation to

wear beards for religious reasons, or oppose acts of discrimination, harassment, or retaliation against such officers.

384.    Plaintiffs and other members of the class have suffered and will continue to suffer serious and irreparable harm to their constitutional rights unless the DOCCS Officials in their official capacities are enjoined from denying or failing to grant reasonable accommodations to corrections officers who have a sincere religious belief or practice to wear a beard.

## COUNT II

**Against the State of New York and DOCCS
for Declaratory and Injunctive Relief Pursuant to
Title VII of the Civil Rights Act of 1964**

385.    Plaintiffs repeat and reallege each and every allegation made in the foregoing paragraphs as if fully set forth herein.

386.    Plaintiffs and class members have religious beliefs and practices concerning wearing beards.

387.    The State of New York and DOCCS, acting through the DOCCS Officials, have violated and continue to violate rights of the Plaintiffs and similarly situated officers that are protected by Title VII of the Civil Rights Act of 1964 by:

a.    withholding and denying reasonable accommodations for officers to wear beards for religious reasons;

b.    taking adverse employment actions against officers because of their religious beliefs or practices of wearing beards;

c.    discriminating against officers because of their religious beliefs and practices of wearing beards;

d.    harassing officers because of their religious beliefs or practices of wearing beards;

e.    creating, maintaining, condoning and/or allowing to persist a hostile work environment based on religious intolerance;

f.      subjecting officers to disparate treatment because of their religious beliefs and practices of wearing beards;

g.      adopting and/or employing policies, practices and/or customs that have a disparate impact on officers who have religious beliefs or practices of wearing beards; and

h.      retaliating against officers because they (i) exercise their rights to practice their religion by wearing a beard of reasonable length, (ii) request an accommodation to wear a beard for religious reasons, and/or (iii) oppose discrimination, retaliation, or harassment against officers because of their religious beliefs in wearing beards.

388.    The foregoing violations of Title VII are continuing.

389.    Plaintiffs and other members of the class have suffered and will continue to suffer serious and irreparable harm to their rights under Title VII unless the State of New York and DOCCS are enjoined from violating Title VII's prohibition on employment practices that cause or allow to persist religious discrimination, harassment, and retaliation, and require employers to make reasonable accommodations for employees' sincere religious beliefs.

## COUNT III

### Against the State of New York and DOCCS
### for Damages Pursuant to Title VII of the Civil Rights Act of 1964

390.    Plaintiffs repeat and reallege each and every allegation made in the foregoing paragraphs as if fully set forth herein.

391.    The State of New York and DOCCS, acting through the DOCCS Officials, have violated rights of the Plaintiffs that are protected by Title VII of the Civil Rights Act of 1964 by:

a.      withholding and denying reasonable accommodations from Plaintiffs to wear beards for religious reasons;

b.      taking adverse employment actions against Plaintiffs because of their religious beliefs and practices of wearing beards;

c.      discriminating against Plaintiffs because of their religious beliefs or practices of wearing beards;

d.      harassing Plaintiffs because of their religious beliefs and practices of wearing beards;

e.      creating, maintaining, condoning and/or allowing to persist a hostile work environment based on religious intolerance;

f.      subjecting Plaintiffs to disparate treatment because of their religious beliefs or practices of wearing beards;

i.      adopting and/or employing policies, practices and/or customs that have a disparate impact on officers who have religious beliefs or practices of wearing beards; and

g.      retaliating against Plaintiffs because they (i) exercised their rights to practice their religion by wearing a beard of reasonable length, (ii) requested an accommodation to wear a beard for religious reasons, and/or (iii) opposed discrimination, retaliation, or harassment against officers because of their religious beliefs in wearing beards.

392.    As a direct and proximate result, Plaintiffs have suffered injuries and damages as set forth above.

## COUNT IV

**Against the DOCCS Officials in their Individual Capacities
for Damages Pursuant to 42 U.S.C. § 1983 for Violations of the
First and Fourteenth Amendments to the United States Constitution**

393.    Plaintiffs repeat and reallege each and every allegation made in the foregoing paragraphs as if fully set forth herein.

394.    The DOCCS Officials sued in their individual capacities have violated rights of the Plaintiffs and other members of the class that are protected by the First and Fourteenth Amendments of the United States Constitution.

395.    As a direct and proximate result of the acts and omissions of each of the DOCCS Official, the constitutional rights of Plaintiffs and members of the class have been violated.

396.    By acting under color of state law to deprive Plaintiffs and other class members of their constitutional rights, the DOCCS Official violated 42 U.S.C. § 1983.

397.     As a direct and proximate result of the acts and omissions of the DOCCS Official, Plaintiffs have suffered injuries and damages as set forth above.

398.     The unlawful conduct of these defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed, as legally permissible.

**WHEREFORE**, Plaintiffs, on behalf of themselves and other members of the class they seek to represent, respectfully request that this Court:

a.     enter an order certifying this action as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure in the manner described above herein, with Brian Sughrim, David Feliciano, Derek Gleixner, Khaldoun Alshamiri, and Roland Sofo as class representatives;

b.     issue a class-wide declaratory judgment that the aforementioned actions of the defendants violate the First and Fourteenth Amendments of the United States Constitution and Title VII;

c.     issue a class-wide injunction enjoining the State of New York, DOCCS, and the DOCCS Officials (in their official capacities) from discriminating against, harassing, retaliating against, and taking adverse employment actions against DOCCS correctional officers because of their sincerely held religious belief and/or practice to wear a beard, and enjoining these defendants from denying and/or failing to grant reasonable accommodations to such officers to wear beards;

d.     award Plaintiffs compensatory damages in an amount that is fair, just and reasonable, to be determined at trial;

e.     award Plaintiffs punitive damages in an amount to be determined at trial;

f.     award Plaintiffs, and the members of the class they seek to represent, reasonable attorneys' fees and costs; and

g.     grant such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated: August 18, 2022

_____
Joshua S. Moskovitz
THE LAW OFFICE OF JOSHUA MOSKOVITZ, P.C.
392 Central Avenue, # 7803
Jersey City, New Jersey 07307
(212) 380-7040
josh@moskovitzlaw.com


_____/s/_____
Ronald E. Cook
1317 Vassar Street
Houston, TX 77006


_____/s/_____
Luna Droubi
Jonathan C. Moore
Deema Azizi
Jeffrey F. Kinkle
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiffs*