**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/29/2022
```

|  |  |
|---|---|
| **Brian Sughrim et al,** | |
| **Plaintiffs,** | |
| **-against-** | |
| **State of New York et al,** | |
| **Defendants.** | |

**1:19-cv-07977 (RA) (SDA)**

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE RONNIE ABRAMS, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is Plaintiffs' motion for class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Pls.' 7/15/22 Not. of Mot., ECF No. 254.)[1] For the reasons set forth below, I respectfully recommend that Plaintiffs' motion be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

I.     **Proposed Class Representatives**

Plaintiffs Brian Sughrim ("Sughrim"), David Feliciano ("Feliciano"), Derek Gleixner ("Gleixner") , Khaldoun Alshamiri ("Alshamiri") and Roland Sofo ("Sofo") are five New York State Department of Corrections and Community Supervision ("DOCCS") officers who were denied accommodations for their religious beliefs to wear beards, and who seek to represent officers

---

[1] Plaintiffs filed in support of their motion a Declaration of Joshua Moskowitz at ECF No. 264, together with 134 exhibits. Due to a clerical error in the labeling of Plaintiffs' initial set of motion papers, Plaintiffs later filed a Corrected Declaration of Joshua Moskowitz at ECF No. 289, together with 134 exhibits. (*See* Pls.' 10/25/22 Ltr., ECF No. 299.) Citations to Plaintiffs' exhibits will be made to those filed as part of ECF No. 289.

who were similarly denied accommodations. (*See* Pls.' Class Cert. Mem., ECF No. 266, at 1; Defs.' Class Cert. Opp., ECF No. 282, at 1.)

A.    **Sughrim**

Sughrim is a Correction Officer at Fishkill Correctional Facility ("Fishkill") who has worked at DOCCS for over 20 years. (Sughrim 7/13/22 Decl., ECF No. 259, ¶¶ 2-4.) He never has had to wear a respirator at work. (*Id*. ¶ 4.) In April 2019, Sughrim submitted to DOCCS an Application to Request Reasonable Accommodation ("RFA"[2]) seeking a religious accommodation to wear a beard in accordance with his Muslim faith. (Sughrim 4/19 RFA, ECF No. 289-25.) In May 2019, Sughrim submitted a form entitled "Request for Religious Accommodation." (Sughrim 5/19 RFA, ECF No. 289-27.)

On August 5, 2019, Sughrim received a denial letter stating, in part:

Security staff being unable to properly fit a respirator or safety equipment places an undue hardship and burden on facility operations, as having an insufficient amount of clean shaven security staff affects the facility's ability to respond quickly and efficiently to emergency or routine situations, which ultimately breaches the security of the facility. . . .

After careful review, it was determined that your facility has 68 essential posts that are considered clean shaven posts. . . . Your request creates an undue hardship on facility operations and impacts the safety and security within the facility.

(Sughrim 8/5/19 Denial Ltr., ECF No. 289-28.)

On August 8, 2019, a Notice of Discipline was issued to Sughrim imposing a penalty of dismissal from state service and loss of any accrued annual leave, due to his failure to shave his

---

[2] Since Plaintiffs refer to this application as an "RFA" (*see*, *e.g.*, Pls.' Class Cert. Mem. at 1), and the Defendants also, at times, refer to "RFAs" when addressing Plaintiffs' arguments (*see*, *e.g.*, Defs.' Class Cert. Opp. at 7), the Court adopts Plaintiffs' abbreviation "RFA" for ease of reference. The Court uses the same abbreviation for the application entitled "Request for Religious Accommodation."

beard. (Sughrim 8/8/19 Not., ECF No. 289-32.) On August 10, 2019, Fishkill Superintendent Leroy Fields issued a notice suspending Sughrim from duty without pay. (Sughrim 8/10/19 Not., ECF Nos. 289-30 & 31.) On August 19, 2019, an Amended Notice of Discipline was sent to Sughrim imposing a penalty of dismissal from state service and loss of any accrued annual leave. (Sughrim 8/19/19 Am. Not., ECF No. 289-29.) On August 27, 2019, Sughrim received a letter revoking his suspension and authorizing him to wear a one-inch beard, but prohibiting him from working clean-shaven posts, and requiring him to file new requests if he changes posts or is transferred to another facility. (8/27/19 DOCCS Ltr. to Sughrim, ECF No. 289-26.)

B.   **Feliciano**

Feliciano is a Correction Officer at Fishkill who has worked at DOCCS for over 20 years. (Feliciano 7/14/22 Decl., ECF No. 260, ¶¶ 2-4.) He never has had to wear a respirator at work. (*Id*. ¶ 4.) In April 2019, Feliciano submitted an RFA seeking a religious accommodation to wear a beard in accordance with his Muslim faith. (Feliciano 4/19 RFA, ECF No. 289-17.) In May 2019, Feliciano submitted a form entitled "Request for Religious Accommodation." (Feliciano 5/19 RFA, ECF No. 289-11.) In his May 2019 RFA, Feliciano stated: "I do not work any clean shaven posts, nor do I swap with any officers on clean shaven posts. . . . I am not required to wear personal protective safety equipment. . . ." (*Id*. at P00020-21.) Feliciano also stated that, "[a]ccording to the interpretation of Islam that I adhere to, . . . I must grow [my beard] to at least a fist full or approximately 4 inches from the chin." (*Id*. at P00020.)

On August 5, 2019, Feliciano received a denial letter identical in content to Sughrim's denial letter of the same date. (*Compare* Feliciano 8/5/19 Denial Ltr., ECF No. 289-19, *with* Sughrim 8/5/19 Denial Ltr.) On August 13, 2019, a Notice of Discipline was issued to Feliciano

that imposed a 30-day suspension without pay, due to his failure to shave. (Feliciano 8/13/19 Not., ECF No. 289-39.) On August 19, 2019, another Notice of Discipline was sent to Feliciano imposing dismissal from state service and loss of accrued annual leave. (Feliciano 8/19/19 Not., ECF No. 289-38.)

On August 27, 2019, Feliciano received a letter granting him an accommodation to wear a beard of up to one inch in length (not the four inches he had requested). (8/27/19 DOCCS Ltr. to Feliciano, ECF No. 289-36.) The August 27 letter prohibited Feliciano from working clean-shaven posts, and required him to file new requests if he changed posts or transferred to another facility. (*See id*.)

### C.   Gleixner

Gleixner is a Correction Officer assigned to Eastern Correctional Facility ("Eastern"). (Gleixner 7/12/22 Decl., ECF No. 256, ¶ 3.) In March 2019, Gleixner submitted an RFA seeking an accommodation to wear a beard in accordance with his Muslim faith. (Gleixner 3/19 RFA, ECF No. 289-21.) On June 25, 2019, DOCCS denied Gleixner's RFA. (Gleixner 6/25/19 Denial Ltr., ECF No. 289-20.) The denial letter stated, in part:

> Working in a correctional facility is an environment where a tight-fitting respirator must be worn . . . . Wearing a respirator that is less protective could pose a grave danger not only to the worker who is wearing it, but also to other workers who might be called on to rescue him from the [immediate danger to life and health] atmosphere. Preventing unnecessary risks is a compelling governmental interest that justifies DOCCS' decision not to provide a religious exemption from the respirator standard, especially as there is no less restrictive way to provide this protection . . . . You [sic] request creates an undue hardship on facility operations and impacts the safety and security within the facility. . . .

(*Id*. at 1.)

On August 22, 2019, Eastern's Superintendent informed DOCCS's Director of Labor Relations that Gleixner had trimmed his beard, but not fully, and requested that Gleixner be disciplined for insubordination. (8/22/19 DOCCS email, ECF No. 289-58.) On August 23, 2019, Gleixner received a Notice of Discipline suspending him for 30 days without pay, due to his failure to shave. (Gleixner 8/23/19 Not., ECF No. 47-2.)

On August 27, 2019, Gleixner received a letter granting him an accommodation to wear a beard of up to one inch in length. (8/27/19 DOCCS Ltr. to Gleixner, ECF No. 289-44.) The August 27 letter prohibited Gleixner from working clean-shaven posts, and required him to file new requests if he changed posts or transferred to another facility. (*See id*.)

### D.   Alshamiri

Alshamiri is a Correction Officer at Cayuga Correctional Facility ("Cayuga") and a reserve in the United States Marine Corps ("USMC"). (Alshamiri 7/12/22 Decl., ECF No. 257, ¶ 3; Pls.' Class Cert. Mem. at 9.) In June 2018, Alshamiri filed an RFA seeking a religious accommodation to wear a beard in accordance with his Muslim faith. (Alshamiri 6/18 RFA, ECF No. 289-16.) On July 12, 2018, DOCCS denied Alshamiri's RFA. (Alshamiri 7/12/18 Denial Ltr., ECF No. 289-15.) The denial letter stated in part: "[W]e are unable to grant your request at this time [because] . . . you shave on a regularly scheduled basis to conform with the USMC grooming standards; however, your request does not reconcile the apparent discrepancy between your request to the Department versus your stated ability to comply with the military's grooming standard." (*Id*. at 1.)

Alshamiri filed another RFA in November 2019 seeking a religious accommodation to wear a beard in accordance with his Muslim faith. (Alshamiri 11/19 RFA, ECF No. 289-12.) On

December 6, 2019, Alshamiri received a letter granting him an accommodation to wear a beard of up to one inch in length. (12/6/19 DOCCS Ltr. to Alshamiri, ECF No. 289-13.) The December 26 letter prohibited Alshamiri from working clean-shaven posts, and required him to file new requests if he changed posts or transferred to another facility. (*See id*.)

   E.  <u>Sofo</u>

   Sofo is a Correction Officer at Cayuga. (Sofo 7/12/22 Decl., ECF No. 258, ¶ 3.) In November 2019, Sofo submitted an RFA seeking to grow a beard in accordance with his Norse Pagan beliefs. (Sofo 11/19 RFA, ECF No. 289-23.) On November 22, 2019, DOCCS denied Sofo's RFA. (Sofo 11/22/19 Denial Ltr., ECF No. 289-24.) The denial letter stated, in part:

> Based on a review of material regarding your religion, as well as a consultation with the Division of Ministerial Family and Volunteer Services, it has been determined that wearing a beard is a personal preference and not a religious requirement of the Norse Pagan religion. Further, maintaining facial hair and/or beards is not an inflexible dogma of the religion, as demonstrated by the recognized exception made for individuals serving in law enforcement positions.

(*Id*. at 1.)

## II. <u>Relevant DOCCS Policies</u>

   DOCCS Directive 3083 establishes an appearance policy for "uniformed employees," also known as "security staff" or correction officers. (*See* Directive 3083, ECF No. 289-116; *see also* State's Rule 56.1 Statement, ECF No. 284, ¶¶ 2, 8). Directive 3083 includes "personal grooming standards" for hair, facial hair and other things. (*See* Directive 3083 at 10-12.) Directive 3083's specifications for facial hair provide that security staff cannot wear beards or goatees while "[s]ecurity staff appointed prior to January 25, 1990 may wear beards or goatees provided they are kept neatly trimmed within one inch." (*Id*. at 11.)

Directive 3083 provides that, "[w]henever the Department requires an employee to wear a respirator, facial hair which would prevent a proper seal between face and mask (e.g., beard/goatee) is prohibited" and cites to Directive 4068, "Respiratory Protection Program." (Directive 3083 at 11.) DOCCS Directive 4068 states: "Any employee (or contracted personnel) who is required to wear a tight-fitting respirator must not have facial hair that comes between the sealing surface of the face piece and the face or that interferes with respirator valve function."[3] (Directive 4068, ECF No. 289-117, at 1.)

Directive 3083 allows officers to request accommodations to be exempt from the Department's grooming policy for religious reasons. (*See* Directive 3083 at 12.) Directive 3083 provides that religious requests be "individually assessed by the Department." (*See id*.) It also provides that religious requests "may be addressed through various means, including but not limited to, voluntary substitutions or swaps, job reassignments, or modification of workplace policies, practices, or procedures." (*Id*.)

In October 2019, the Department adopted Directive 2609, "Reasonable Accommodation of Religious Observance or Practices for Employees and Applicants." (Directive 2609, ECF No. 289-119.) Directive 2609 provides procedures for processing requests for reasonable accommodation of religious observance or practices. (*See id*. at 3-4.)

In November 2021, NYDOCCS issued a memorandum providing that any uniform staff members not assigned to clean-shaven posts may wear neatly-trimmed, one-inch beards if they received a COVID-19 vaccine. (11/23/21 DOCCS Mem., ECF No. 289-130 (the "COVID Vaccine

---

[3] Directive 4068 is predicated upon "Occupational Health and Safety Administration (OSHA) Standards, CFR 1910.134, for Respiratory Protection." (Directive 4068 at 1.)

Incentive").) NYDOCCS has not denied a single religious accommodation request since November 2021. (*See* List of Facial-Hair Related Accommodation Requests, ECF No. 289-64 at 20-21.)

## PROCEDURAL HISTORY

On August 26, 2019, Plaintiffs Sughrim and Feliciano filed the Complaint in this action. (*See* Compl., ECF No. 1.) The Complaint alleges that "[t]he State of New York, acting through [DOCCS], is discriminating against and infringing on the religious freedoms of New York Corrections Officers who wear facial hair because of their religious beliefs," and asserts claims under the U.S. and New York State Constitutions and under federal and New York State law. (*See id.* ¶¶ 1, 194-221.)

On December 13, 2019, a First Amended Complaint ("FAC") was filed on behalf of Plaintiffs Sughrim, Feliciano, Gleixner, Alshamiri and Sofo. (FAC, ECF No. 82.) On May 15, 2020, a Second Amended Complaint ("SAC") was filed on behalf of the same Plaintiffs. (SAC, ECF No. 145.) On November 19, 2020, a Third Amended Complaint ("TAC") was filed on behalf of the same Plaintiffs. (TAC, ECF No. 199.) The Defendants named in the TAC were the State of New York, DOCCS and ten individual defendants , *i.e.*, Anthony J. Annucci, the Acting Commissioner of DOCCS; John A. Shipley, the Director of Labor Relations of DOCCS; Na-Kia Walton, the Assistant Director of Labor Relations/ADA Coordinator of DOCCS; Leroy Fields ("Fields"), the Superintendent of Fishkill; Stephen Urbanski, the Deputy Superintendent for Security Services at Fishkill; James Johnson ("Johnson"), the Deputy Superintendent for Administrative Services at Fishkill; Alan Washer, a Corrections Captain at Fishkill; William Lee, the Superintendent of Eastern; Michael Bertone, Deputy Superintendent of Security at Eastern; and Thomas Napoli, Deputy Superintendent and Designee for Reasonable Accommodation at Cayuga (the "DOCCS

Officials", and together with the State of New York and DOCCS, the "Defendants"). (TAC ¶¶ 27-38.)

In their TAC, Plaintiffs brought four categories of claims: (1) claims against the DOCCS Officials in their official capacities for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments; (2) claims against the DOCCS Officials in their individual capacities for damages pursuant to 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments; (3) claims against the State of New York and DOCCS for damages, injunctive relief and declaratory relief for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"); and (4) state law claims against the State of New York, DOCCS and DOCCS Officials in their individual capacities for violations of Article I §§ 3 and 11 of the New York Constitution, as well as the New York State Human Rights Law ("NYSHRL"). (TAC ¶¶ 365-402.)

On November 30, 2020, the Court issued an Opinion & Order granting in part and denying in part Defendants' motion to dismiss the TAC. *See Sughrim v. New York*, 503 F. Supp. 3d 68, 99 (S.D.N.Y. 2020). Relevant to Plaintiffs' instant motion for class certification, the Court held that Plaintiffs plausibly stated claims for violations of the Free Expression Clause and Equal Protection Clause, *see id*. at 88-91, and that Plaintiffs Sughrim, Feliciano and Gleixner plausibly stated Title VII disparate treatment, denial of reasonable accommodation and retaliation claims.[4] *See id*. at 96-98.

---

[4] In summary, the Court denied Defendants' motion to dismiss Plaintiffs' § 1983 claims for injunctive and declaratory relief; granted Defendants' motion to dismiss Plaintiffs' § 1983 claim for damages against Defendants Fields and Johnson, but denied the motion with respect to the other DOCCS Officials who were sued in their personal capacities; denied Defendants' motion to dismiss Gleixner, Sughrim and Feliciano's Title VII Claims; granted Defendants' motion to dismiss Alshamiri and Sofo's Title VII claims without prejudice such that they could seek leave to amend once they had exhausted their administrative remedies; granted Defendants' motion to dismiss Plaintiffs' state constitutional claims; granted

In their motion for class certification filed on July 15, 2022, Plaintiffs seek to certify a declaratory-injunctive Class consisting of:

> DOCCS security staff whose religious accommodation requests to wear beards were not granted after August 26, 2016, and all DOCCS security staff who will in the future submit requests for religious accommodations to wear beards.

(Pls.' Class Cert. Mem. at 24.) Plaintiffs also seek to certify a Subclass consisting of:

> officers who since August 26, 2016 were denied religious accommodations based on DOCCS's policy of determining the tenets or requirements of some religions, but not others (the "Religious Requirements Subclass").

(*Id*.)

On August 17, 2022, the Court referred to the undersigned for a report and recommendation Plaintiffs' motion for class certification. (*See* Am. Order of Ref., ECF No. 277.) The same day, the Court granted leave to Plaintiffs to file a Fourth Amended Complaint ("FAC"), with respect to Alshamiri and Sofo's Title VII claims. (*See* 8/17/22 Order, ECF No. 276.)

On August 18, 2022, Plaintiffs filed their FAC. (FAC, ECF No. 278.) The FAC asserts claims for declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments to the United States Constitution, and pursuant to Title VII, premised upon Defendants' denial of or failure to grant reasonable accommodations to correction officers who have a sincere religious belief or practice to wear a beard. (*See id*. ¶¶ 378-98 (Count I through Count IV).) The FAC does not contain any Count premised upon the assertion that certain religions were treated more favorably than others.

---

Defendants' motion to dismiss Plaintiffs' NYSHRL claims; and denied Defendants' motion to dismiss on all other grounds. *See Sughrim*, 503 F. Supp. 3d at 99-100.

With respect to class certification, the FAC alleges that, "[p]ursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs seek to represent a certified Plaintiff class consisting of all persons who have been or will be subjected to DOCCS's practice and/or custom of not allowing security staff to wear facial hair as an expression of their sincerely held religious beliefs and taking adverse actions against such employees in violation of the First and Fourteenth Amendments of the United States Constitution and Title VII of the Civil Rights Act of 1964." (FAC ¶ 362.) There is no reference in the FAC to any subclass.

## LEGAL STANDARDS

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The Court has discretion on questions of class certification because "the district court is often in the best position to assess the propriety of the class . . . ." *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001).

Class certification is appropriate where the proposed class meets, by a preponderance of the evidence following a court's "rigorous analysis," the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and the proposed class constitutes one of the types of classes enumerated in Rule 23(b). *Wal-Mart*, 564 U.S. at 350; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) ("The standard of proof applicable to evidence proffered to meet the requirements of Rule 23 is a preponderance of the evidence.") (internal quotation and citation omitted). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. However, "in making such

determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement." *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Thus, the Court should "refrain from deciding any material factual disputes between the parties concerning the merits of the claims and should accept the underlying allegations from the complaint as true." *Dajour B. ex rel. L.S. v. City of New York*, No. 00-CV-02044 (JGK), 2001 WL 1173504, at *3 (S.D.N.Y. Oct. 3, 2001) (internal citations omitted).

> The four prerequisites of Rule 23(a) are as follows:
>
> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation].

Fed. R. Civ. P. 23(a).

In addition to meeting the requirements of Rule 23(a), the proposed class must constitute one of the types of classes enumerated in Rule 23(b). Plaintiffs have moved for class certification under Rule 23(b)(2). Rule 23(b)(2) provides for class certification if the requirements of Rule 23(a) are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Rule 23(c)(5) authorizes the creation of subclasses "that are each treated as a class." *See* Fed. R. Civ. P. 23(c)(5). The Advisory Committee Notes state that, "[w]here a class is found to include subclasses divergent in interest, the class may be divided correspondingly, and each subclass treated as a class." *See* 1966 Advisory Comm. Notes to Fed. R. Civ. P. 23, Subdiv. (c)(4). They further state that "[c]lass counsel must be appointed for all classes, including each subclass

that the court certifies to represent divergent interests." *See* 2003 Advisory Comm. Notes to Fed.

R. Civ. P. 23, Subdiv. (g)(1)(A).

## DISCUSSION

The Court first considers certification of the proposed Class and then considers

certification of the proposed Subclass.

## I.   Certification Of Class

### A.   Rule 23(a) Analysis

#### 1.   Numerosity

For class certification to be appropriate, the proposed class must be so numerous that

joinder of all of its individual members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1).

Numerosity is presumed when a class consists of forty members or more. *See Shahriar v. Smith*

*& Wollensky Rest. Grp.*, 659 F.3d 234, 252 (2d Cir. 2011). However, "[d]etermination of

practicability depends on all the circumstances surrounding a case, not on mere numbers."

*Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). "Relevant considerations include judicial

economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class

members, financial resources of class members, the ability of claimants to institute individual

suits, and requests for prospective injunctive relief which would involve future class members."

*Id*. (internal citations omitted).

Citing to documents produced by Defendants in this case, Plaintiffs assert that "[t]he

proposed class includes at least 234 officers who work in at least 24 facilities whose RFAs were

not granted during the class period." (Pls.' Class Cert. Mem. at 25.) In seeking to defeat class

certification, Defendants argue that "officers who no longer need religious accommodations to

wear beards because they received the COVID-19 vaccine" should not be counted as part of the proposed Class. (*See* Defs.' Class Cert. Opp. at 8.) In addition, Defendants argue that Plaintiffs improperly have included in their calculation of the number of class members officers who (1) received accommodations, (2) retired, (3) did not provide information requested or (4) had their RFAs denied because of undue hardship. (*See id.* at 8-9.)

The Court finds that Plaintiffs have satisfied the numerosity requirement with respect to the proposed Class. Defendants' argument that the Court should exclude from the Class those officers who received the COVID-19 vaccine due to the November 2021 COVID Vaccine Incentive program, which permits them to wear one-inch beards is a retread of the mootness argument raised by Defendants in support of their prior motion to dismiss in this case. In support of their motion to dismiss, Defendants had argued, among other things, that "Plaintiffs [had] received religious accommodations to maintain their beards," such that there was no ongoing violation of federal law. *See Sughrim*, 503 F. Supp. 3d at 91. The Court, however, held, as follows:

> the voluntary-cessation doctrine counsels against a finding of mootness here. The voluntary cessation of challenged conduct will not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed. Accordingly, courts will find a case moot after a defendant voluntarily discontinues challenged conduct only if (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.
>
> Here, it cannot be said with assurance that there is no reasonable expectation that the alleged violation will recur. The DOCCS beard policy remains in place. The accommodations granted to Plaintiffs are limited in scope. Plaintiffs are not assured that they will be provided new accommodations after their current accommodations lapse, as allegedly occurred with Alshamiri. Moreover, absent an injunction, nothing will stop Defendants from denying accommodations to other members of the putative class. Interim events have thus failed to completely and irrevocably eradicate[ ] the effects of the alleged violation, and any equitable relief provided by this Court would be prospective in nature.

*Id*. (cleaned up) (citations omitted).

So too here, the officers who have received accommodations because they received the COVID-19 vaccine (or otherwise) could have those accommodations lapse in the future. Defendants do not contend that the COVID Vaccine Incentive program is permanent or that it is intended to be long-term. Absent an injunction, nothing will stop the Commissioner from revoking the program in the future. Thus, the vaccinated Class members need injunctive relief, just as the named Plaintiffs need injunctive relief, such that the vaccinated Class members properly are counted in assessing numerosity.

Defendants attempt to exclude from the numerosity count certain officers (for example, those who retired and those who did not provide information requested) is disingenuous. Defendants do not disclose how many officers they contend should be excluded.[5] Presumably, if the number of officers to be excluded dropped the number of Class members below the threshold of 40, Defendants would have supplied such information. Because Plaintiffs have made a showing that the Class consists of over 40 members, and Defendants have not shown otherwise, the Court finds that the numerosity requirement is satisfied.

### 2.    Commonality And Typicality

"The commonality requirement [contained in Rule 23(a)(2)] is met if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987)). "Commonality does not mandate that all class members make identical claims and arguments, only that

---

[5] Defendants successfully opposed Plaintiffs' prior efforts to obtain the names of class members. (*See* 10/30/20 Order, ECF No. 198.)

common issues of fact or law affect all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992).

Rule 23(a)(3) requires that the class representatives have claims typical of those shared by the class members. "To establish typicality under Rule 23(a)(3), the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *See In re Flag Telecom*, 574 F.3d at 35 (quoting *Robidoux*, 987 F.2d at 936). However, "the typicality criterion does not require that the factual predicate of each claim be identical to that of all class members." *MacNamara v. City of New York*, 275 F.R.D. 125, 138 (S.D.N.Y. 2011) (internal citations, quotation marks and emphasis omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37.

"[T]he commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 n.5 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58, n.13 (1982)). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*.

The Class that Plaintiffs seek to certify is defined to include "DOCCS security staff whose religious accommodation requests to wear beards were not granted after August 26, 2016, and all DOCCS security staff who will in the future submit requests for religious accommodations to

wear beards." (Pls.' Class Cert. Mem. at 24.) The Court finds that there are common questions of fact and law that affect all Class members and that they will make similar legal arguments to prove the Defendants' liability, including for example, whether Defendants selectively applied Directive 3083 to those officers who seek to maintain beards for religious reasons, while overlooking clear violations of the directive by officers who wore beards for non-religious reason, *see Sughrim*, 503 F. Supp. 3d at 89; whether Defendants acted with discriminatory intent by singling out Class members with the knowledge that shaving would violate their religious beliefs, *see id*. at 91; the extent to which DOCCS conducts annual respirator-fit tests on its correction officers, *see id*. at 90; and the number of clean-shaven posts and respirators in each facility. *See id*. These common questions are sufficient to warrant certification of the Class. *See Wal-Mart*, 564 U.S. at 359 ("[F]or the purposes of Rule 23(a)(2) [e]ven a single [common] question will do.") (internal quotation marks and citation omitted); *see also* 5 Moore's *Federal Practice* - Civil § 23.23 (2022) ("civil rights cases that challenge conditions, policies, or practices that have an impact on all putative class members typically meet the commonality requirement").

### 3.   Adequacy Of Representation

The adequacy of representation inquiry under Rule 23(a)(4) considers whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For class representatives, "[a]dequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp*., 222 F.3d 52, 60 (2d Cir. 2000)). In addition, courts in this Circuit consider whether "plaintiff's attorneys are qualified,

experienced and able to conduct the litigation" in assessing adequacy under Rule23(a)(4). *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d at 35 (citing *Baffa*, 222 F.3d at 60).

Plaintiffs have established that each of the proposed representatives of the Class members has an interest in vigorously pursuing the claims on behalf of the Class and Subclass. (*See* Gleixner 7/12/22 Decl. ¶¶ 10-15; Alshamiri 7/12/22 Decl. ¶¶ 12-17; Sofo 7/12/22 Decl. ¶¶ 18-24; Sughrim 7/13/22 Decl. ¶¶ 11-16; Feliciano 7/14/22 Decl. ¶¶ 11-16.) None of the proposed representatives have interests antagonistic to other members of the Class.[6]

Finally, Plaintiffs have established, and Defendants do not dispute, that proposed class counsel have the requisite experience, qualifications and ability to conduct the litigation on behalf of the Class. (*See* Pls.' Class Cert. Mem. at 28-29.)

### B.   Rule 23(b)(2) Analysis

Rule 23(b)(2) has two constituent parts. In order to certify a class under Rule 23(b)(2), Plaintiffs "must . . . meet the two criteria specified in Rule 23(b)(2) itself: 1. the party opposing the class must have 'acted or refused to act on grounds generally applicable to the class,' and 2. the plaintiffs must be seeking 'final injunctive relief or corresponding declaratory relief' that is appropriate 'with respect to the class as a whole.'" 2 *Newberg and Rubenstein on Class Actions* § 4:27 (6th ed.) (footnotes omitted) (quoting Fed. R. Civ. P. 23(b)(2)).

In the present case, Defendants have refused to grant religious accommodation requests to wear beards. Moreover, the injunctive and declaratory relief sought by Plaintiffs will inure to

---

[6] Defendants appear to argue that Sofo has a conflict with Class members since other Class members received more favorable treatment than him. (*See* Defs.' Class Cert. Opp. at 13, 18.) However, other Class members (including the other named Plaintiffs), like Sofo, were not granted a religious accommodation to wear a beard. Accordingly, Sofo's interests are not antagonistic to the interests of Class members.

the benefit of the Class. Thus, Rule 23(b)(2) is satisfied. *See Comer v. Cisneros*, 37 F.3d 775, 796

(2d Cir. 1994) (Rule 23(b)(2) satisfied "because the plaintiffs seek injunctive relief and they

predicate the lawsuit on the defendants' acts and omissions with respect to" the class).

## II.    Certification Of Subclass

The Subclass that Plaintiffs seek to certify is defined as "officers who since August 26,

2016 were denied religious accommodations based on DOCCS's policy of determining the tenets

or requirements of some religions, but not others." (Pls.' Class Cert. Mem. at 24.) However, the

FAC does not contain any legal claims premised upon the assertion that certain religions were

treated more favorably than others. Rather, the legal claims that the FAC asserts are based upon

"DOCCS's practice and/or custom of not allowing security staff to wear facial hair as an expression

of their sincerely held religious beliefs and taking adverse actions against such employees in

violation of the First and Fourteenth Amendments of the United States Constitution and Title VII

of the Civil Rights Act of 1964." (FAC ¶ 362.) These claims equally apply to members of the

proposed Class and proposed Subclass.[7] As set forth above, the FAC does not mention a subclass

or assert claims on its behalf. In these circumstances, there is no need for the creation of the

subclass proffered by Plaintiffs.

"[S]ubclasses are only necessary when members of the class have divergent interests." *In

re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009); *see also* 3 *Newberg and

Rubenstein on Class Actions* § 7:29 (noting that "subclassing" is only compulsory when needed to

---

[7] As Plaintiffs themselves note in their memorandum in support of class certification: "Each class and sub-class member was denied, either in part or in full, a religious accommodation request at some point by the same DOCCS officials in ODI, which is part of DOCCS's central office; and all of the accommodation requests were reviewed and approved by the same Deputy Commissioner and Counsel and the same Executive Deputy Commissioner." (Pls.' Class Cert. Mem. at 26-27.)

cure conflicts). No divergent interests are present here. The Class includes DOCCS security staff whose religious accommodation requests to wear beards were not granted. Thus, subclassing is not necessary. *See In re Deepwater Horizon*, 739 F.3d 790, 813 (5th Cir. 2014) ("Although the creation of subclasses is sometimes necessary under Rule 23(a)(4) to avoid a fundamental conflict, there is no need to create subclasses to accommodate every instance of differently weighted interests." (internal quotation marks omitted)).

Nor is there a reason for permissive subclassing in this case. "Subclassing . . . is permitted to assist a court in managing complex litigation in a variety of circumstances in which subclasses would promote efficiency." 3 *Newberg and Rubenstein on Class Actions* § 7:29. This is not a complex case. Even if there are factual variations among class members regarding the reasons for denial of their religious accommodation requests to wear beards, efficiency would not be served by certification of the Subclass. *See Clark Equip. Co. v. International Union, Allied Indus. Workers*, 803 F.2d 878, 880 (6th Cir. 1986) (subclassing appropriate only when court believes it will materially improve litigation).

## <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that Plaintiffs' motion for class certification be GRANTED IN PART and DENIED IN PART. Specifically, I recommend that Plaintiffs' motion for certification of the proposed Class be GRANTED and that their motion for certification of the proposed Subclass be DENIED.

Dated:       New York, New York
             October 29, 2022

_____
**STEWART D. AARON**
**United States Magistrate Judge**

\*               \*               \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Abrams.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).