**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BRIAN SUGHRIM, et al.,

                    Plaintiffs,

        v.                                              No. 19-CV-7977 (RA) (SDA)

STATE OF NEW YORK, et al.,

                    Defendants.

---

**PLAINTIFFS' BRIEF CONCERNING THE INJUNCTIVE RELIEF SOUGHT FOR THE
CLASS AND CERTAIN NAMED PLAINTIFFS**

HAMILTON CLARKE, LLP
48 Wall Street, Suite 1100
New York, New York 10005
(212) 729-0952

Ronald E. Cook
1317 Vassar Street
Houston, TX 77006

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ..................................................................................................ii

LIST OF EXHIBITS ..........................................................................................................iii

PRELIMINARY STATEMENT ............................................................................................1

SUMMARY OF PROPOSED INJUNCTIVE RELIEF ............................................................2

I.     PERMANENT POLICY CHANGES, TRAINING, AND RECORD-KEEPING.............3

    a.     Policy changes to Directive 2609 ............................................................3

    b.     Training ........................................................................................7

    c.     Record-keeping..................................................................................10

        i.     Documentation of accommodations decided at the facility level..............10

        ii.     Documentation of requests for additional information ............................11

        iii.     Documentation of grounds for denials .......................................12

II.     TIME-LIMITED PERIOD OF MONITORING AND REPORTING ............................13

III.     PRELIMINARY INJUNCTION FOR CLASS MEMBERS PENDING FULL IMPLEMENTATION OF THE FOREGOING RELIEF ......................................15

IV.     PERMANENT INJUNCTION FOR THE NAMED PLAINTIFFS (OTHER THAN BRIAN SUGHRIM) ................................................................17

CONCLUSION ..................................................................................................................18

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Adeyeye v. Heartland Sweeteners, LLC*,
    721 F.3d 444 (7th Cir. 2013) .................................................................... 6, 7

*Alves v. Main*, No. 01-789 (DMC),
    2012 WL 6043272 (D. N.J. Dec. 4, 2012) .................................................. 8, 9

*Clark v. California*,
    739 F. Supp. 2d 1168 (N.D. Cal. 2010).......................................................9

*EEOC v. United Health Programs of Am., Inc.*,
    350 F. Supp. 3d 199 (E.D.N.Y. 2018)....................................................9, 13

*Employment Div., Dep't of Hum. Res. v. Smith*,
    494 U.S. 872 (1990) ......................................................................................4

*Floyd v. City of New York*,
    959 F. Supp. 2d 668 (S.D.N.Y. 2013) ........................................................8, 9

*Ford v. McGinnis*,
    352 F.3d 582 (2d Cir. 2003) (Sotomayor, J.) ..............................................14

*Frazee v. Ill. Dep't of Employment Sec.*,
    489 U.S. 829 (1989) ...................................................................................4, 7

*Jackson v. Mann*,
    196 F.3d 316 (2d Cir. 1999) ........................................................................14

*Jamie S. v. Milwaukee Public Schools*, No. 01-C-928,
    2009 WL 1615520 (E.D. Wis. June 9, 2009) ...............................................9

*Reed v. Faulkner*,
    842 F.2d 960 (7th Cir. 1988) .........................................................................6

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*,
    450 U.S. 707 (1981) ......................................................................................4

*United States v. Seeger*,
    380 U.S. 163 (1965) ......................................................................................4

**OTHER**

EEOC Guidance Directive 915.063, Section 12: Religious Discrimination (Jan. 15, 2021),
*available at* https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination.............5, 6

**LIST OF EXHIBITS**

1) Excerpts of Transcript of March 13, 2023 Conference (Dkt. 309)

2) DOCCS Directive 2609 (Plaintiffs' Summary Judgment Ex. 119)

3) Excerpts of Transcript of May 18, 2022 Deposition of Anthony J. Annucci

4) Defendants' Objections & Responses to Plaintiffs' Third Set of Document Requests

5) Excerpts of Transcript of March 24, 2022 Deposition of Osbourne McKay

6) Excerpts of Transcript of Feb. 28, 2020 Conference (Dkt. 130)

7) Curriculum vitae of Eric W. Treene

8) Proposed Order

## PRELIMINARY STATEMENT

Plaintiffs submit this brief pursuant to the Court's March 31, 2023 Order (Dkt. 311) directing Plaintiffs to "provide the Court more clarity on what injunctive relief they are seeking." Mindful of Rule 65's standards and the principal that "Courts must grant relief no broader than necessary to cure the effects of the harm caused by the violation," Dkt. 311 at 2 (cleaned up), Plaintiffs submit that the following relief, outlined in more detail below, is necessary to remedy the effects of the unlawful religious accommodation policies and practices of the New York State Department of Corrections and Community Supervision ("DOCCS"): (1) permanent changes to DOCCS's religious accommodation policies, training, and record keeping; (2) a time-limited period of monitoring and reporting to Plaintiffs' counsel; (3) preliminary relief for the Class pending full implementation of the foregoing policy changes, training, and additional record keeping procedures; and (4) a permanent injunction for the named plaintiffs (other than Brian Sughrim) protecting their requested religious accommodations.

This relief is necessary because the undisputed facts establish that DOCCS: (a) has a policy "of denying requests to maintain facial hair as a religious accommodation, for some particular faiths or religions, but not others, due to the fact that [DOCCS officials] deem that maintaining a beard is not a tenet of their faith/religion"; (b) continues to conflate sincerity of belief with religious requirements; (c) does not train its staff to process religious accommodations in a legally appropriate manner; (d) does not maintain adequate documentation of its religious accommodation process and determinations; and (e) has effectively conceded, by virtue of its COVID-19 vaccination program, that allowing officers to wear beards who are not assigned to clean shaven posts does not present an undue hardship. First, we provide a summary of the relief sought, and then we provide a detailed explanation as to why the relief is necessary.

1

## SUMMARY OF PROPOSED INJUNCTIVE RELIEF

I.     **Permanent changes to policy, training, and record keeping.** Directive 2609, DOCCS's religious accommodation policy, must be revised to include the relevant legal standards. Among other things, Directive 2609 must clarify that DOCCS is not allowed to "determine" the requirements or tenets of a religion and the policy. Training is needed for DOCCS executives and staff who are responsible for administering the policy, and DOCCS staff must be trained in the difference between assessing sincerity and religious requirements. Furthermore, to ensure that DOCCS administers its religious accommodation policy consistent with applicable federal law, it must adhere to additional record keeping procedures. For example, DOCCS needs to maintain centralized records of beard accommodations that are granted to ensure equal treatment of all religions – a documentation requirement that exists in Directive 2609 but is not followed in practice. DOCCS must also document the process of assessing religious accommodation requests and its reasons for making determinations about such requests.

II.     **Time-limited period of monitoring and reporting.** To ensure that the foregoing changes and procedures are employed and followed, there must be a reasonable period of monitoring DOCCS's administration of its religious accommodation policy and an associated reporting of information to Plaintiffs' counsel to properly conduct that monitoring.

III.     **Preliminary injunction for class members.** Until the foregoing remedies are fully implemented, the Court should enter a preliminary injunction protecting all class members who are not assigned to a clean-shaven post from being ordered to shave or disciplined for refusing to shave. After the foregoing remedies are fully implemented, the Court should order DOCCS to apply its amended policies to reassess the beard accommodation requests of all class members who have not been granted their requested accommodation in the interim.

IV.    **Permanent injunctive relief for the named plaintiffs (other than Brian Sughrim).** DOCCS should be required to: (a) grant a religious accommodation to Roland Sofo permitting him to wear a beard up to one-inch long; (b) issue a new religious accommodation to David Feliciano permitting him to wear a beard up to three-inches long; and (c) not revoke or modify the existing accommodations of Derek Gleixner or Khaldoun Alshamiri.

I.    **PERMANENT POLICY CHANGES, TRAINING, AND RECORD-KEEPING**[1]

a.    **Policy changes to Directive 2609**

Directive 2609 should be amended to clarify that DOCCS cannot "determine" the requirements or tenets of a religion, and it must distinguish between a legitimate sincerity analysis and an improper religious requirements inquiry. Despite clearly established law to the contrary, DOCCS continues to insist that it may "evaluate" religious tenets in assessing accommodation requests, as Defendants argued during the March 13, 2023 hearing on these motions:

> [MR. LUNSFORD:] It seems to me——and, again, this is my interpretation——that plaintiffs are saying you can't evaluate whether my religion requires facial hair. I think that is contrary to the law, because *I think you can evaluate what the tenets of the religion are.*
>
> For example, hypothetically, what is the religious belief was you shall have no facial hair. What happened then? Can someone sincerely believe as a matter of course that I should have facial hair when there's a tenet of my religion that says I shall not, and there has some kind eternal implications for that.
>
> *So we disagree whether the tenets can even be a source of consideration. Our position is yes, they can*. . . .[2]

---

[1]  As used herein, "Ex." refers to exhibits attached to this brief and "Pls.' SJ Ex." refers to the exhibits attached to the Corrected Decl. of Joshua Moskovitz, dated Sept. 28, 2022 (Dkt. 289).

[2]  Ex. 1 at 56:7-57:8 (Trans. of 3/13/23 Conf.) (Dkt. 309) (emphasis added). Defendants also argued that DOCCS can assess the tenets of a religion based on documentation received from applicants. *See id.* at 57:17-58:9. But the summary judgment record shows that DOCCS looks at information and materials that applicants have not submitted. *See, e.g.*, Pls.' 56.1 Statement ¶¶ 228 & 232 (Dkt. 265). Illustrating why government officials cannot "determine" what counts as a religious requirement, DOCCS denied religious beard accommodations to more than 70 Norse Pagan officers (including Asatruars) because DOCCS, "determined that wearing a beard is . . . not a religious requirement" based on its review of materials that stated, "[w]earing religious beards" is part of a traditional practice that is "just as important to traditionalist Asatruars as the worship of our gods." *Id.* ¶¶ 129, 228, 233.

3

This argument tracks the admission that DOCCS "has established a practice of using the tenets of a religion, or lack thereof, as a reason for denying a religious accommodation request."[3]

DOCCS's argument is contrary to clearly established law, *viz.*, the State may not decide whether a person's beliefs or practices are "required" by a religion.[4]  Thus, Directive 2609 should be amended to state expressly:

> DOCCS may not, in assessing religious accommodation requests, attempt to determine whether the applicant's belief or practice is a requirement or a tenet of a religion. Instead, DOCCS may only consider whether the applicant's belief is sincerely held. Sincerity of belief is different from asking whether a belief or practice is a requirement of a religion. DOCCS cannot decide whether a particular practice or belief is a religious requirement.

Directive 2609 should be further amended to include the following standards for an appropriate sincerity analysis:

1. The sincerity of an applicant's religious belief must be presumed.[5]

---

[3] Pls.' 56.1 Statement at ¶ 117 (citing Pls.' SJ Ex. 80).

[4] *See Employment Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872, 887 (1990) ("Repeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim."); *Frazee v. Ill. Dep't of Employment Sec.*, 489 U.S. 829, 832-34 (1989) ("Never did we suggest that unless a claimant belongs to a sect that forbids what his job requires, his belief, however sincere, must be deemed a purely personal preference rather than a religious belief. Indeed, in *Thomas* [*v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707 (1981)], there was disagreement among sect members as to whether their religion made it sinful to work in an armaments factory; but we considered this to be an irrelevant issue and hence rejected the State's submission that unless the religion involved formally forbade work on armaments, Thomas' belief did not qualify as a religious belief."); *Thomas*, 450 U.S. at 716 ("[I]t is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith.   Courts are not arbiters of scriptural interpretation."); *United States v. Seeger*, 380 U.S. 163 (1965).

[5] *See* EEOC Guidance Directive 915.063, Section 12: Religious Discrimination § 12-I-A-2 (Jan. 15, 2021) ("EEOC Guidance on Religious Discrimination"), *available at* https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination ("[T]he sincerity of an employee's stated religious belief is usually not in dispute and is generally presumed or easily established.") (cleaned up); *id.* § 12-I-A-3 ("Because the definition of religion is broad and protects beliefs, observances, and practices with which the employer may be unfamiliar, the employer should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief.").

2. DOCCS may only inquire into an applicant's sincerity of belief if there is an objective basis to question the sincerity of an applicant's professed belief. DOCCS may not question the sincerity of only certain religions or faiths.[6]

    a. Examples of an objective basis that would give rise to a legitimate inquiry into an applicant's sincerity include:

        i. when an applicant is known to have behaved in a manner markedly inconsistent with his professed belief, or

        ii. when an applicant submits a religious accommodation request shortly after being denied an accommodation on a different basis.

    b. DOCCS must document the objective basis for questioning the sincerity of an applicant's religious belief.

3. The presumption of sincerity may be overcome when evidence exists that is sufficient to establish that the applicant's beliefs are insincere.

4. DOCCS may consider all relevant factors in assessing an applicant's sincerity, including:

    a. whether the employee has behaved in a manner markedly inconsistent with the professed belief;

    b. whether the accommodation sought is a particularly desirable benefit that is likely to be sought for secular reasons; and

    c. whether the timing of the request renders it suspect (*e.g.*, it follows an earlier request by the employee for the same benefit for secular reasons);

    d. and whether the employer otherwise has reason to believe the accommodation is not sought for religious reasons.[7]

5. No one factor will be dispositive, and these factors may have no application to non-traditional religions or little weight in some circumstances.[8]

---

[6] *See* EEOC Guidance on Religious Discrimination § 12-I-A-3 ("If . . . an employee requests religious accommodation, and an employer has an objective basis for questioning either the religious nature or the sincerity of a particular belief, observance, or practice, the employer would be justified in seeking additional supporting information."). An objective standard for questioning an applicant's sincerity is necessary to avoid a problem seen in this case of only certain religious beliefs being scrutinized. *See, e.g.*, Pls.' SJ Ex. 77 (ODI Director Herman's email: "[DCC Sheehan's] response means that ODI has to continue to deny religious accommodations for certain religions/faiths."); Pls.' SJ Ex. 80 ("we are concerned about the past and continued practice of denying requests to maintain facial hair as a religious accommodation, for some particular faiths or religions, but not others").

[7] EEOC Guidance on Religious Discrimination § 12-I-A-2.

[8] *Id.*

6.  It is important to keep the following in mind when assessing an applicant's sincerity:

    a.  The fact that an employee does not adhere steadfastly to his beliefs does not mark them as insincere.[9]  While inconsistent conduct is relevant to the question of sincerity, an employee's beliefs – or degree of adherence – may change over time. Therefore, an employee's religious practice may be newly adopted or inconsistently observed and still be sincerely held.[10]

    b.  An employee may have a sincerely held religious belief or practice even if they have forgone the practice or belief during the job application process and not revealed it to the employer until after they were hired or later in employment.[11]

    c.  An employee may have a sincerely held religious belief or practice even if they choose to adhere to a religious custom only at certain times, while others choose to adhere always.[12]

    d.  Whether an employee's particular beliefs or practices deviate from commonly followed religious tenets, or the applicant adheres to some common religious practices but not others, is irrelevant to a determination of the applicant's sincerity of belief.[13]  For instance, a Jewish applicant who maintains a sincere belief in wearing a beard will not be deemed insincere in his beliefs because he does keep to a Kosher diet.

---

[9] *See Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 453 (7th Cir. 2013) ("Title VII and courts also do not require perfect consistency in observance, practice, and interpretation when determining if a belief system qualifies as a religion or whether a person's belief is sincere. These are matters of interpretation where the law must tread lightly."); *Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988) ("Some religions place unrealistic demands on their adherents; others cater especially to the weak of will. It would be bizarre for prisons to undertake in effect to promote strict orthodoxy, by forfeiting the religious rights of any inmate observed backsliding, thus placing guards and fellow inmates in the role of religious police.").

[10] EEOC Guidance on Religious Discrimination § 12-I-A-2 (citing *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997) (en banc) (Jewish employee proved her request for leave to observe Yom Kippur was based on a sincerely held religious belief even though she hadn't in her prior eight-year tenure sought leave from work for a religious observance, and conceded that she generally was not a very religious person, where the evidence showed that the birth of her son and the death of her father had strengthened her religious beliefs over the years)).

[11] *Id.* (citing cases).

[12] *Id.* (citing cases).

[13] *Frazee*, 489 U.S. 829 at 833 ("in *Thomas*, there was disagreement among sect members as to whether their religion made it sinful to work in an armaments factory; but we considered this to be an irrelevant issue and hence rejected the State's submission that unless the religion involved formally forbade work on armaments, Thomas' belief did not qualify as a religious belief"); *see also Adeyeye*, 721 F.3d at 452-54 ("[T]he prospect that courts would begin to inquire into the personal reasons an individual has for holding a religious belief would create a slippery slope we have no desire to descend. Has the plaintiff had a true conversion experience? Is he following religious practices that are embedded in his culture and family upbringing? Is he making Pascal's coldly rational wager to believe in God based on his self-interest? These questions are simply not an appropriate or necessary line of inquiry for courts. We are not and should not be in the business of deciding whether a person holds religious beliefs for the 'proper' reasons. We thus restrict our inquiry to whether or not the religious belief system is sincerely held; we do not review the motives or reasons for holding the belief in the first place.")

7.  When DOCCS assesses an employee's sincerity of belief, before it makes a determination, it must:

    a.  inform the employee that their sincerity of belief is being assessed,

    b.  permit the employee an opportunity to be interviewed by the DOCCS staff tasked with assessing the applicant's sincerity, and

    c.  allow the employee to submit any additional information or documentation they choose to support their sincerity of belief.

**b.  Training**

Training on the foregoing legal principles and standards is needed for DOCCS staff who administer Directive 2609. This includes staff in DOCCS's central Office of Diversity and Inclusion (ODI). It also includes DOCCS's Deputy Commissioner and Counsel (DCC) and assistant counsel, the Executive Deputy Commissioner (EDC), the Acting Commissioner, and the designated staff member at each facility who serves as the "Designee for Reasonable Accommodation" (DRA) under Directive 2609.[14]

As the evidence in this case has demonstrated, ODI staff, the DCC (and assistant counsel), the EDC, and the Acting Commissioner do not understand the difference between a legitimate sincerity analysis and an illegitimate determination of the requirements or tenets of a religion.[15] There is no evidence of any written policy directives or guidance that explain how to make a

---

[14] Directive 2609 identifies ODI, the DCC, and the EDC as having roles in DOCCS's religious accommodation process. *See* Ex. 2 (Pls.' SJ Ex. 119) § IV (STATE001346-1347). The evidence further shows that ODI consults DOCCS Counsel staff, and they instruct ODI staff on religious accommodation requests. *See, e.g.*, Pls.' 56.1 Statement ¶¶ 105-110. The Commissioner must be trained because he is "the final policy maker" for DOCCS and he must provide "the final level of approval" for policy changes. *See* Ex. 3 at 61:21-62:3 (Trans. of 5/18/22 Dep. of Anthony J. Annucci).

[15] *See* Pls.' 56.1 Statement ¶ 88 (Commissioner Annucci testified that determining whether a practice or belief is a requirement of a particular religion "is a determination that the department *has* to do") (quoting Pls.' SJ Ex. 108 at 191-92); *id.* (EDC Martuscello agreed with Commissioner Annucci) (citing Pls.' SJ Ex. 111 at 118); *id.* ¶¶ 92-93 (Commissioner Annucci testified that that DOCCS can question whether an applicant's belief is a legitimate tenet of the religion and a sincerely held belief, and that ODI uses religious scholars or experts to determine what the tenets or requirements of a religion are) (citing Pls.' SJ Ex. 108 at 184-88); *id.* ¶¶ 105-110 (describing legally inaccurate advice from DOCCS assistant and deputy counsel to ODI staff); *id.* ¶ 121 (email from DCC Sheehan advising ODI to determine "if maintaining a beard is a practice/requirement of the employee's religion."); *id.* ¶ 267 (ODI Assistant Director stating, "we cannot question the sincerity of one's beliefs") (quoting Pls.' SJ Ex. 60).

religious accommodation determination or that set out the appropriate factors for that determination.[16]  Directive 2609 does not provide any standard or factors for assessing sincerity. Moreover, DOCCS staff receive no training on assessing sincerity of belief. ODI's then-Assistant Director, who was responsible for reviewing religious accommodation requests, testified that she had not received training in how to assess an applicant's sincerity of belief;[17]  and there is no record evidence that facility DRAs receive training in the legal proscription on determining religious requirements or distinguishing that analysis from a legitimate sincerity analysis.

The Court should direct DOCCS to provide appropriate training to present and future ODI staff, the DCC, the EDC, the Commissioner (or Acting Commissioner), and facility DRAs. To ensure this training is effective and consistent with the law, it should be developed and delivered (in the initial round of trainings) by a court-appointed expert, at Defendants' expense. There is a demonstrated need for an independent expert given the consistently wrong statement of law issued by DOCCS's Counsel and assistant counsel – even after federal court decisions repeatedly declared that DOCCS's analysis was unconstitutional. *See infra* Point II.b (pp.13-14).

The Court is empowered to appoint an independent expert to develop and deliver training as part of a remedial injunction for violations of federal law. *See EEOC v. United Health Programs of Am., Inc.*, 350 F. Supp. 3d 199, 225-226 (E.D.N.Y. 2018) (ordering "trainings [to] be conducted at defendants' expense by the Outside Monitor or another third-party approved by the EEOC"); *Floyd v. City of New York*, 959 F. Supp. 2d 668, 676-681 (S.D.N.Y. 2013) (appointing monitor, among other things, to develop appropriate "training" to remedy constitutional violations); *Alves*

---

[16] Pls.' 56.1 Statement ¶ 85 (citing Pls.' SJ Ex. 114 at 128-29); *id.* ¶ 86 (Commissioner Annucci was not aware of any document that sets out the appropriate factors to be considered when DOCCS is assessing the religious beliefs of an applicant for a religious beard accommodation) (citing Pls.' SJ Ex. 108 at 212-13); *id.* ¶ 876 (EDC Martuscello testified that DOCCS does not have written standards for making a decision on whether to grant or deny a religious accommodation request) (citing Pls.' SJ Ex. 111 at 121).

[17] Pls.' SJ Ex. 114 at 36.

*v. Main*, No. 01-789 (DMC), 2012 WL 6043272 at \*7 (D. N.J. Dec. 4, 2012) (approving settlement agreement requiring defendant to retain independent experts to "provide continuing education to the STU's therapists and staff"); *Clark v. California*, 739 F. Supp. 2d 1168, 1234 (N.D. Cal. 2010) ("The training provided in CDCR must be improved through consultation with experts and plaintiffs' counsel."). "It is within the power of a district court to order the appointment of a monitor to oversee judicially ordered reforms." *Floyd*, 959 F. Supp. 2d at 676 (citing *United States v. City of N.Y.*, 717 F.3d 72, 97 (2d Cir. 2013)); *see also Jamie S. v. Milwaukee Public Schools*, No. 01-C-928, 2009 WL 1615520 at \*3-4 (E.D. Wis. June 9, 2009) (vacated on other grounds) (discussing approved settlement agreement requiring "court-appointed independent expert" to approve training for staff).

There are several benefits to appointing an independent training expert. Rather than relying on protracted litigation over the details of a training program, appointing an independent training expert will streamline the development and deployment of this training. An independent training expert will yield a better training program and reduce the ultimate cost for doing so by avoiding the need for the parties to engage competing experts. Finally, an independent training expert will be able to deliver this training in the first instance to DOCCS executives and ODI staff who are responsible for overseeing the religious accommodation process and training other employees in the future. Having an independent training expert "train the trainers" should achieve a better baseline of instruction in an area that DOCCS has historically failed to comprehend.

Plaintiffs propose the Court appoint Eric W. Treene as the independent training expert. From June 2002 to July 2021, Mr. Treene was Special Counsel on Religious Discrimination in the United States Department of Justice. In that capacity, Mr. Treene represented the United States in key religious liberty matters in federal courts at all levels, including the United States Supreme

Court. He also developed nationwide training for the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). Mr. Treene also worked with the federal Bureau of Prisons on issues concerning religious freedom, including both policy and training. Currently, Mr. Treene is an Adjunct Professor at Catholic University of America and Senior Counsel at Storzer & Associates in Washington, D.C. A copy of Mr. Treene's *curriculum vitae* is annexed to this memo as Exhibit 7. Plaintiffs' counsel spoke briefly with Mr. Treene to assess his availability and he confirmed that he would be available if selected for this appointment.

### c.   Record-keeping

Additional record keeping measures are needed to ensure that DOCCS's religious accommodation process is administered legally and consistent with the foregoing amendments to its current policy.

### i.   Documentation of accommodations decided at the facility level

Directive 2609 encourages the determination of religious accommodations informally at the facility level, but it also allows for religious accommodation requests to be submitted directly to ODI; Directive 2609 also requires ODI to review all religious accommodations that are not granted at the facility level.[18]  In order for ODI to properly review requests submitted directly to it and review requests that a facility did not grant informally, Directive 2609 requires the facility DRA to submit to ODI monthly reports using Form #2609E documenting approvals and denials of accommodation requests.[19]  However, not a single Form #2609E could be found for Fishkill Correctional Facility, Eastern Correctional Facility, or Cayuga Correctional Facility (the three facilities where the named plaintiffs work) from October 10, 2019 through February 2022.[20]  Thus,

---

[18] *See* Ex. 2 § IV (STATE001346-48) (Pls.' SJ Ex. 119).

[19] *See id.* § VI (STATE001348).

[20] *See* Ex. 4 at 4 (Defs.' Objections & Responses to Pls.' 3d Set of Doc. Requests).

ODI is not receiving a complete picture of the accommodation decisions occurring at the facility level. Deputy Commissioner Osbourne McKay, who supervises ODI, acknowledged that ODI not receiving Form #2609Es was "a problem."[21]

Without information about how accommodation requests are being handled at the facility level, ODI cannot properly assess accommodation requests. For instance, ODI would not know if a facility is granting all beard accommodation requests for certain religions but not others. Nor would ODI know whether to credit a facility's claim that granting a particular officer's accommodation will cause a staffing shortage – because ODI would not know if the facility has recently granted beard accommodations to certain religions that it favors. Without accurate centralized record keeping, it is impossible to know whether DOCCS is treating religious accommodation equally and assessing them properly. Thus, DOCCS should be ordered to take appropriate steps to ensure that each facility submits monthly reports to ODI documenting approvals and denials of accommodation requests.

## ii. Documentation of requests for additional information

There is evidence that some religions but not others are subject to requests for additional information; and there is evidence that information that should not be requested (*i.e.*, "proof" that wearing a beard is a "requirement" or "tenet" of their religion) is being requested and applications are being denied or "closed" if the applicant doesn't provide additional documentation acceptable to ODI.[22]  There is presently no standard process for documenting when or why DOCCS officials request additional information from religious accommodation beard applicants. Nor is there a standard process for documenting what additional information is requested of religious

---

[21] *See* Ex. 5 at 137 (Trans. of Dep. of Osbourne McKay).

[22] *See* Pls.' 56.1 Statement ¶¶ 126-128.

accommodation beard applicants. While ODI uses a spreadsheet to track its processing of beard applications, there is no evidence of a standard procedure for tracking every request for additional information, and there is no evidence that facility-level staff are tracking when they request additional information from applicants. Importantly, there is no apparent procedure for documenting *why* additional information is requested of certain applicants. Thus, DOCCS should be ordered to propose an appropriate procedure for documenting when, why, and what additional information is requested of religious accommodation applicants.

### iii.   Documentation of grounds for denials

Directive 2609 does not require DOCCS staff to document how a religious beard request is assessed or why it is denied. This presents two concerns. First, there is little if any transparency in the decision-making process; and second, it prevents a meaningful review of denials. Even in cases where DOCCS provided a denial letter to applicants, the explanation lacked important information. For instance, the denial letter sent to Plaintiff Roland Sofo and other Norse Pagan applicants stated that the denial was "[b]ased on a review of material regarding your religion."[23] But DOCCS did not identify the material it said it reviewed, and it did not provide a copy of the material to Mr. Sofo.[24]  Similarly, the same denial letters said ODI staff had "consult[ed] with the Division of Ministerial Family and Volunteer Services" but there was no documentation in Mr. Sofos' ODI file of what that consultation consisted of, and the ODI Assistant Director who was responsible for that consultation could not recall it specifically in her deposition. There is other evidence of accommodation denials based on "undue hardship" where the ODI file lacks any documentation of the basis for that hardship. In short, ODI's substantive decisions are not being

---

[23]  Pls.' 56.1 Statement ¶ 228.

[24]  *Id.* ¶ 232.

documented sufficiently.

Evaluating the process by which religious accommodation decisions are made – to determine if the process used was appropriate and the decisions were legally justified – requires additional record keeping. Accordingly, DOCCS should be ordered to consistently document:

- the specific factual basis for any decision to deny a religious accommodation request (it would be insufficient to simply state "undue hardship" or "insincere belief");

- what materials and information were considered in assessing religious accommodation requests;

- the specific factual basis for a decision denying an accommodation because of undue hardship or insincerity of belief; and

- what efforts were made to identify alternative accommodations in cases of undue hardship.

## II.     TIME-LIMITED PERIOD OF MONITORING AND REPORTING

A reasonable period of monitoring DOCC's administration of religious beard accommodations, coupled with adequate reporting, will be necessary to ensure that DOCCS complies with any court-ordered relief and implements that relief in a manner that is legally sound. Plaintiffs believe that five years is appropriate.[25]  Enough time is needed to oversee adoption of the foregoing amendments to Directive 2609 and implementation of those reforms in practice as well as the court-ordered training. It is important that sufficient time be allotted to monitor the adoption and dissemination of any court-ordered training, especially second-level training (*i.e.*, training given by DOCCS staff who themselves were trained by the court-appointed monitor). It is also important that there be sufficient time to monitor the processing of enough accommodation requests to ensure DOCCS is processing and assessing the requests uniformly and appropriately.

---

[25] *See United Health Programs of Am., Inc.*, 350 F. Supp. 3d at 221 (approving five-year monitoring period).

In some cases, ODI has taken months to decide requests.[26]

A five-year monitoring period is necessary to ensure that these reforms take hold. This is not the first or even the second time that a federal court has told DOCCS officials that the First Amendment does not permit DOCCS to deny a person's religious beliefs based on an "objective inquiry" into religious tenets. In *Ford v. McGinnis*, 352 F.3d 582 (2d Cir. 2003) (Sotomayor, J.), the court rejected the New York Attorney General's argument that Ford's beliefs "were not entitled to First Amendment protection" merely because "DOC[C]S religious authorities [determined] that Ford's belief did not comport with 'Islam's actual requirements.'" *Id.* at 588. "The opinions of the DOC[C]S religious authorities cannot trump the plaintiff's sincere and religious belief." *Id.* at 590.

*Ford* followed an earlier decision in *Jackson v. Mann*, 196 F.3d 316 (2d Cir. 1999), in which the court rejected the New York Attorney General's Office argument that DOCCS officials appropriately denied kosher meals to Jackson because the facility Rabbi determined that to have legitimate Jewish beliefs a person needed to be born Jewish or formally convert. "This reasoning," according to the Second Circuit, "erroneously substituted the objective 'accuracy' of Jackson's assertion that he is Jewish for the correct test – whether Jackson's beliefs are 'sincerely held.'" *Id.* at 320. Indeed, the Second Circuit found the law to be clearly established in rejecting the DOCCS officials' appeal for qualified immunity. *Id.* at 321.

Despite the clarity of the law, more than twenty years after these decisions, DOCCS continues to employ the same analysis to deny religious accommodations to correction officers. In the case of Norse Pagan officers like Roland Sofo, DOCCS asked its Division of Ministerial Family and Volunteer Services to determine whether Norse Pagan religions require beards and took the answer as an "objective" truth to support denying more than 70 officers religious beard

---

[26] *See* Decl. of Tonia Wheeler ¶ 6 (Dkt. 287); Pls.' 56.1 Statement ¶¶ 241, 242.

accommodations.[27] As recently as last month's hearing in this case, DOCCS continued to maintain that this analysis is appropriate. Thus, a monitoring period of at least five years is needed to ensure that this constitutionally infirm approach to religious accommodations is rooted out.

During this monitoring period, DOCCS should provide Plaintiffs' counsel with reports and information to adequately assess the performance of DOCCS's religious accommodation practice. Accordingly, the Court should order DOCCS to provide Plaintiffs' counsel the following documents every month during the monitoring period:

- all religious beard accommodation requests processed through ODI;

- all supporting documentation for religious beard accommodation requests processed through ODI;

- all documentation reviewed by ODI in assessing religious beard accommodation requests;

- all documentation produced by ODI in processing religious beard accommodation requests including, but not limited to, denials and the basis for any such denials; and

- all Form #2609Es received by ODI.

## III.   PRELIMINARY INJUNCTION FOR CLASS MEMBERS PENDING FULL IMPLEMENTATION OF THE FOREGOING RELIEF

Pending full implementation of the amendments to DOCCS's policies and training (and assuming the Court adopts the Report & Recommendation of the Magistrate Judge, Dkt. 300, and certifies the class), DOCCS should be enjoined from ordering any class member who is not permanently assigned to a clean-shaven post to shave or disciplining them for not shaving.[28] This preliminary injunction is needed for two reasons.

First, the Acting Commissioner has the unbridled authority to lift the COVID-19

---

[27] *See* Pls.' 56.1 Statement ¶¶ 129, 228.

[28] Plaintiffs' proposed class consists of: "DOCCS security staff whose religious accommodation requests to wear beards were not granted after August 26, 2016, and all DOCCS security staff who will in the future submit requests for religious accommodations to wear beards." *See* Dkt. 300 at 10.

vaccination incentive at any moment,[29] and there are more than 200 class members whose religious beard accommodations have not been granted. Without an accommodation, if these officers do not shave, they are subject to immediate discipline, including termination (as was imposed initially on Plaintiffs Sughrim and Feliciano).

Second, among the 200+ officers who have not received a religious beard accommodation, there are certainly officers who have not been fully vaccinated against COVID-19 and therefore, are not allowed to wear a beard without an accommodation under the present, interim COVID-19 vaccination program. Defendants have offered no evidence that every putative class member is presently allowed to wear a beard based on the COVID-19 vaccination program.[30]

There is ample evidence that DOCCS has denied religious beard accommodations for the named plaintiffs and putative class members even though the accommodation presented no actual hardship and there was no finding that the officer's belief was insincere.[31]   DOCCS has essentially conceded that permitting an officer not, who is not assigned to a clean shaven post, to have a beard

---

[29] Defendants' comments at the March 13, 2023 hearing raise the likelihood that DOCCS will lift the COVID vaccination incentive sooner than later. *See* Ex. 1 at 43:5-10 ("[MR. LUNSFORD:] . . . I would say that DOCCS is currently at the point when they go, whoa, we have too many people that have a beard, and we need to consider a different path in terms of how we manage this.").

[30] As Magistrate Judge Aaron noted in his Report and Recommendation, "Defendants attempt to exclude from the [class] certain officers (for example, those who retired and those who did not provide information requested) is disingenuous" (Dkt. 300 at 15). That is because, "Defendants do not disclose how many officers they contend should be excluded" and "Defendants successfully opposed Plaintiffs' prior efforts to obtain the names of class members" (Dkt. 300 at 15 & n.5). DOCCS cannot fairly dispute the need for this preliminary injunction by arguing that there are no class members who need it, when DOCCS has not submitted evidence to support that argument and it fought successfully to withhold such evidence.

[31] *See, e.g.,* Ex. 6 at 10:12-14 (Trans. of 2/28/20 Conf.) (defendants acknowledging five putative class members who were denied religious beard accommodations, "in terms of the overall impact of the operation of the department, five people [being allowed to keep their beards] won't seriously impair operations of the department"); Pls.' 56.1 Statement at ¶ 117 (acknowledging that DOCCS "has established a practice of using the tenets of a religion, or lack thereof, as a reason for denying a religious accommodation request, *instead of proof of undue hardship*" (emphasis added)); *see also* Pls.' SJ Ex. 71 (April 26, 2021 email from ODI Director Maria Herman: "We have a large number of individuals who have been approved the shaving exemption based on medical or religious reasons, or were grandfathered in this exemption because they started working prior to 1999, but this has not resulted in any undue hardship for the Facilities"); Pls.' SJ Ex. 80 (September 24, 2020 email from Deputy Commissioner McKay: "facilities have not expressed that they are experiencing undue hardship due to the amount of beard approvals").

causes no hardship because DOCCS has allowed *every* such officer to wear a beard for more than a year now. Thus, the balance of equities tips strongly in favor of protecting the religious and constitutional rights of the limited number of class members who have not been granted a religious accommodation requests based on DOCCS's deeply flawed accommodation practices.

After the foregoing policy revisions, trainings, and record keeping procedures are fully implemented, the Court should order DOCCS to reassess the beard accommodation requests of all class members who have not been granted their requested accommodation in the interim.

## IV.     PERMANENT INJUNCTION FOR THE NAMED PLAINTIFFS (OTHER THAN BRIAN SUGHRIM)

For the individually named plaintiffs other than Brian Sughrim – that is, for David Feliciano, Derek Gleixner, Khaldoun Alshamiri, and Roland Sofo – the following permanent injunctive relief is appropriate: (a) DOCCS should be ordered to grant a religious accommodation to Roland Sofo that permits him to wear a beard up to one-inch long; (b) DOCCS should be ordered to issue a new religious accommodation to David Feliciano that permits him to wear a beard up to three inches long; and (c) DOCCS should be ordered to not revoke or modify the existing accommodations of Derek Gleixner and Khaldoun Alshamiri.

## CONCLUSION

Plaintiffs respectfully request the Court grant the foregoing injunctive relief.[32]

Dated: April 21, 2023

Joshua S. Moskovitz
HAMILTON CLARKE, LLP
48 Wall Street, Suite 1100
New York, New York 10005
(212) 729-0952

Ronald E. Cook
1317 Vassar Street
Houston, TX 77006

Jonathan C. Moore
Luna Droubi
Deema Azizi
Jeffrey F. Kinkle
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016

---

[32] Attached as Exhibit 8 is a Proposed Order that encompasses the relief identified herein.

18