UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BRIAN SUGHRIM,** *et. al.*, | ) <br> ) |
| Plaintiffs, | ) CASE NO. 1:19-CV-07977-RA <br> ) |
| v. | ) <br> ) THE STATE'S RESPONSE TO |
| **STATE OF NEW YORK,** *et al.*, | ) PLAINTIFFS' BRIEF CONCERNING <br> ) THE INJUNCTIVE RELIEF SOUGHT |
| Defendants. | ) FOR THE CLASS AND CERTAIN <br> ) NAMED PLANTIFFS <br> ) <br> ) |

**TABLE OF CONTENTS**

Table of Contents ........................................................................................................................... i

Table of Authorities ..................................................................................................................... ii

Preliminary Statement ...................................................................................................................1

Background ....................................................................................................................................2

Plaintiffs' Proposal .........................................................................................................................4

Legal Standard ...............................................................................................................................5

Argument .......................................................................................................................................6

      I.      NYDOCCS Officers Face No Actual or Imminent Threat of Denial
            of Their Sincere Religious Accommodation Requests for Beards .........................6

      II.     Plaintiffs' Proposed Rewrite of Directive 2609 Extends Further than
            Necessary to Address Any Alleged Harm .............................................................8

            A.     Plaintiffs' Proposed Policy Changes Exceed the Scope
                   of Plaintiffs Action .....................................................................................8

            B.     Plaintiffs' Proposed Policy Changes Exceed
                   Constitutional Requirements ......................................................................9

            C.     Plaintiffs' Proposals Regarding Training, Documentation,
                   and Monitoring Remain Unnecessary and Overboard ..............................11

      III.    Plaintiffs Cannot Demonstrate an Entitlement to Preliminary
            Injunctive Relief for Putative Class Members ....................................................12

      IV.    Plaintiffs Cannot Demonstrate an Entitlement to Injunctive
            Relief for Named Plaintiffs .................................................................................13

Conclusion ...................................................................................................................................13

Certificate of Service ..................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Berni v. Barilla S.P.A.*,
　964 F.3d 141 (2d Cir. 2020) .................................................................................................. 5, 6

*City of New York v. Mickalis Pawn Shop, LLC*,
　645 F.3d 114 (2d Cir. 2011) .................................................................................................. 6, 9

*E.E.O.C. v. United Health Programs of Am., Inc.*,
　350 F.Supp.3d 199 (E.D.N.Y. 2018) ........................................................................................ 11

*Floyd v. City of New York*,
　2020 WL 3819566 (S.D.N.Y. July 7, 2020) ............................................................................... 9

*Floyd v. City of New York*,
　959 F.Supp.2d 668 (S.D.N.Y. 2013) ......................................................................................... 11

*Patrick v. Lefevre*,
　745 F.2d 153 (2d Cir. 1984) ................................................................................... 7, 10, 12, 13

*Philbrook v. Ansonia Bd. of Educ.*,
　757 F.2d 476 (2d Cir. 1985) ....................................................................................................... 7

Defendants the State of New York ("New York"), New York State Department of Corrections and Community Supervision ("NYDOCCS"), Anthony J. Annucci (the "Acting Commissioner"), John A. Shipley, Na-Kia Walton, Leroy Fields, Stephen Urbanski, James Johnson, Alan Washer, William Lee, Michael Bertone, and Thomas Napoli (collectively, the "State Officials," and, together with New York, NYDOCCS, and the Commissioner, the "State"), hereby submit this response to Plaintiffs' Brief Concerning the Injunctive Relief Sought for the Class And Certain Named Plaintiffs (Doc. 314).

## PRELIMINARY STATEMENT

In Plaintiffs' zeal to micromanage all aspects of the State's religious accommodation process, Plaintiffs ignore this Court's explicit warning that "Courts must 'grant relief no broader than necessary to cure the effects of the harm caused by the violation' and 'mould each decree to the necessities of the particular case.'" (Doc. 311, 2, quoting Forschner Grp., Inc. v. Arrow Trading Co., 124 F.3d 402, 406 (2d Cir. 1997)). Plaintiffs, through this narrow action limited to allegations of constitutional violations based on religious accommodations for *facial hair*, seek to rewrite NYDOCCS's policies concerning **all** religious accommodation requests, impose an independent expert to conduct training on all religious accommodation requests, and subject the State to five (5) years of Court monitoring. Plaintiffs additionally seek to prohibit NYDOCCS from denying any religious accommodation request for facial hair, for any reason, until their expansive revisions to NYDOCCS's policies are "fully implemented." Finally, Plaintiffs seek to short-circuit NYDOCCS's decision-making process as to pending requests from Sofo and Feliciano, and permanently enshrine existing accommodations for Alshamiri and Gleixner, regardless of their future post requests or assignments. Plaintiffs' proposal represents a massive overreach, and the Court should deny their request.

1

**BACKGROUND**

Ultimately, this case concerns timing. On August 9, 2019, former New York Governor Andrew Cuomo signed legislation amending the New York State Human Rights Law that included new provisions regarding religious attire, including facial hair, in the workplace. (Doc. 284, ¶ 268). Based on this change in State law, NYDOCCS began reviewing its policies regarding the evaluation of religious accommodation requests to wear facial hair in the workplace. (Id., ¶ 269; Doc. 285-3). As a result of this review, NYDOCCS reversed its prior decisions regarding the accommodation requests of Brian Sughrim and David Feliciano. (Doc. 284, ¶ 270; Docs. 289-64, 289-18, 289-26). NYDOCCS also reversed its prior suspensions of Sughrim and Feliciano and reinstated them with full backpay. (Doc. 284, ¶ 183; Doc. 289-33; Doc. 264-35). Additionally, NYDOCCS approved the religious accommodation request of Derek Gleixner, following a secondary review, on August 27, 2019. (Doc. 289-44).

Following the granting of the religious accommodation requests for facial hair for Plaintiffs Sughrim, Feliciano, and Gleixner, and as a result of the amended legislation, NYDOCCS created Directive 2609, entitled "Reasonable Accommodation of Religious Observance or Practices for Employees and Applicants." (Doc. 289-119). NYDOCCS issued the new directive on October 10, 2019. (Id.). Directive 2609 provides a constitutionally sound process for requesting and granting religious accommodation requests. In fact, according to Plaintiffs, NYDOCCS granted **all** accommodation requests submitted by Muslim officers under Directive 2609. (Doc. 284, ¶ 257). Directive 2609 recognizes that the New York State Human Rights Law requires NYDOCCS to offer a religious accommodation for an "employee's sincerely held religious practice or the wearing of any attire, clothing, or facial hair" unless such accommodation would create an "undue

hardship on the conduct of [NYDOCCS] business." (Doc. 289-119, 3). Directive 2609 defines "Religious Observance or Practice" as:

> Includes Sabbath or holy day observance, and the observance of a particular manner of dress, hairstyle, facial hair, or other religious practice of the individual's religion.
>
> An employee who, in accordance with his or her religious beliefs, observes a particular manner of dress, hairstyle, beard, or other religious practice, should not be unreasonably required to compromise his or her practice in the workplace.
>
> The employer is required by law to make a bona fide effort to accommodate an employee's or prospective employees sincerely held religious observance or practice, unless the request presents an undue hardship on the conduct of the employer's business.

(Id., 3-4). Additionally, Directive 2609 provides informal and formal processes for officers to request religious accommodations, including but not limited to facial hair, and requires that:

> Accommodation of sincerely held practices of the individual's religion, or wearing of any attire, clothing, or facial hair in accordance with the requirements of his or her religion, must be granted unless the accommodation would create a specific concern, such as a safety concern or an undue hardship….

(Id., 4). Prior to the denial of a religious accommodation request, NYDOCCS's Office of Diversity and Inclusion, the Deputy Commissioner and Counsel, and ultimately, the Executive Deputy Commissioner must review the request. (Id.). Plaintiffs fail to identify any concern or threat of harm to Plaintiffs based on the provisions of Directive 2609, or, indeed, even to suggest that Directive 2609 on its face fails to comply with the Constitution.

Following the amendment to the New York State Human Rights Law and the promulgation of Directive 2609, NYDOCCS received 159 religious accommodation requests for facial hair from August 26, 2019, through December 31, 2019. (Doc. 289-64, 4-9). NYDOCCS received only eighteen (18) religious accommodation requests for facial hair in all of 2018. (Doc. 289-64, 2-3).

3

The increase included a significant increase in religious accommodation requests from Norse Pagan or Leviticus 19 followers, increasing from five (5) requests in 2018 to fifty-five (55) between August 26, 2019, and December 31, 2019, along with an additional fifty-four (54) requests that failed to specify a religion. (Id.). Despite this unprecedented influx of requests, NYDOCCS granted all requests from Muslim, Jewish, Sikh, and Rastafarian religions from August 2019 through September 2022. (Doc. 284, ¶¶ 81, 257; Doc. 287, ¶¶ 6-9). NYDOCCS continued to work out any concerns with the new law and policy and developed a record of consistently reviewing applications for religious accommodations to wear beards in a constitutionally sound manner. Indeed, NYDOCCS granted, without a court order or injunction, every religious accommodation request for facial hair from November 5, 2021, to September 26, 2022 (Doc. 287, ¶ 9), and only denied two (2) requests from October 2020 to September 2022. (Id.). Plaintiffs therefore cannot establish any threat of future harm from NYDOCCS's continued application of Directive 2609. Further, even if Plaintiffs could establish a threat of future harm, Plaintiffs' requests far exceed "relief no broader than necessary to cure" the alleged harm. (Doc. 311, 2). Accordingly, the Court should deny Plaintiffs' requested relief.

## PLAINTIFFS' PROPOSAL

Plaintiffs propose four (4) types of injunctive relief, none of which find any support in the record of this action.

First, despite never arguing that Directive 2609 fails on its face to comply with constitutional requirements, Plaintiffs propose a permanent injunction requiring sweeping changes to Directive 2609. (Doc. 314, 7-19). Plaintiffs fail to limit these changes to NYDOCCS's policies for granting religious accommodations to wear facial hair. Instead, their revisions would apply to all requests for religious accommodations for all NYDOCCS employees. As further set forth

4

below, Plaintiffs' proposed revisions extend far beyond constitutional requirements. Plaintiffs' request also includes training "by a court-appointed expert, at [the State's] expense" (id., 8), and detailed documentation of requests decided at the facility level, requests for additional information, and grounds for denials. (Id., 14-17).

Second, Plaintiffs ask the Court to order a five-year monitoring period, during which NYDOCCS must provide Plaintiffs' counsel with voluminous documentation on a monthly basis.

Third, until Plaintiffs' proposed policy changes are "fully implemented," Plaintiffs seek "a preliminary injunction protecting all class members who are not assigned to a clean-shaven post from being ordered to shave or disciplined for refusing to shave." (Doc. 314, 6; 19-21). In other words, Plaintiffs seek to prevent NYDOCCS from enforcing its facial-hair policies at all until Plaintiffs complete their takeover of the religious accommodation request process.

Fourth, Plaintiffs seek permanent injunctive relief providing a religious accommodation to Sofo; providing a new accommodation to Feliciano permitting him to wear a three-inch beard; and preventing NYDOCCS from modifying Gleixner's or Alshamiri's existing accommodations.

The Court should deny this far-reaching injunctive relief because Plaintiffs failed to establish the necessity of any injunction against NYDOCCS regarding religious accommodations for facial hair, and Plaintiffs' proposed injunction vastly exceeds the scope of any relief necessary to address Plaintiffs' limited claims concerning religious accommodations for facial hair.

## LEGAL STANDARD

Injunctive relief requires "prospective-orientation." A Plaintiff "'cannot rely on past injury … but must show a likelihood that he … will be injured in the future.'" Berni v. Barilla S.P.A., 964 F.3d 141, 147 (2d Cir. 2020) (quoting Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344

5

(2d Cir. 1998)). Further, the "threat of future injury must be 'actual and imminent, not conjectural or hypothetical.'" Id. (quoting Summers v. Earth Island Institute, 555 U.S. 488, 439 (2009)).

Additionally, injunctions must satisfy the requirements of Federal Rule of Civil Procedure 65(d) "that 'an injunction … be specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'" City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 143 (2d Cir. 2011) (quoting S.C. Johnson & Son, Inc., v. Clorox Co., 241 F.3d 232, 240-41 (2d Cir. 2001). "[A]n injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation." Id. at 145.

Under these well-established standards, the Court should deny Plaintiffs' proposed preliminary and permanent injunctive relief.

## **ARGUMENT**

### I. NYDOCCS Officers Face no Actual or Imminent Threat of Denial of Their Sincere Religious Accommodation Requests for Beards.

NYDOCCS's last denial of a religious accommodation request for facial hair occurred on November 5, 2021 – more than a year and a half ago. (Doc. 289-64, 20-21; Doc. 287, ¶ 9). Moreover, NYDOCCS denied only two (2) religious accommodation requests since October 21, 2020. (Doc. 289-64, 15-21; Doc. 287, ¶ 9). Injunctive relief requires "prospective-orientation;" a Plaintiff "'cannot rely on past injury … but must show a likelihood that he … will be injured in the future.'" Berni, 964 F.3d at 147 (quoting Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998)). Based on NYDOCCS's application of Directive 2609, officers face no actual or imminent threats to their constitutional right to accommodations for sincerely held religious beliefs to wear facial hair. Indeed, Plaintiffs submit as ***an undisputed fact*** that "DOCCS is not presently enforcing its no-beard policy." (Doc. 265, ¶ 43). While the State disagrees with

6

Plaintiffs' broad statement that NYDOCCS "is not presently enforcing its no-beard policy," it remains true that Plaintiffs cannot point to a single putative class member who faced denial of a religious accommodation request since November 2021. (Doc. 289-64, 20-21; Doc. 287, ¶ 9).

Moreover, Plaintiffs concede, as they must, that NYDOCCS may evaluate the sincerity of any Plaintiff's or putative class member's purported religious belief before deciding whether to grant a religious accommodation. See, e.g., Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 481 (2d Cir. 1985) ("[I]t is entirely appropriate, indeed necessary, for a court to engage in analysis of the sincerity . . . of someone's religious beliefs in both the free exercise context . . . and the Title VII context."). According to the Second Circuit, "[s]incerity analysis . . . provides a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." Patrick v. Lefevre, 745 F.2d 153, 157 (2d Cir. 1984). Beliefs that arise from "deception and fraud . . . must be subject to governmental invasion, lest our society abjure from distinguishing between the incantation of 'sincerely held religious beliefs' as a talisman for self-indulgence or material gain and those beliefs genuinely dictated by conscience." Id. The Second Circuit "outlined several factors that indicate insincerity, noting that 'an adherent's belief would not be 'sincere' if he acts in a manner inconsistent with that belief … or if there is evidence that the adherent materially gains by fraudulently hiding secular interests behind a veil of religious doctrine.'" Philbrook, 757 F.2d at 481 (quoting Int'l Soc. for Krishna Consciousness v. Barber, 650 F.2d 430, 441 (2d Cir. 1981)). "'[T]he religion's size and history' is relevant to the sincerity determination." Id. (quoting Barber, 650 F.2d at 441). Thus, it remains undisputed that NYDOCCS may evaluate the sincerity of an applicant's belief.

Plaintiffs fail to point to any aspect of Directive 2609 that renders it unconstitutional on its face. Indeed, Directive 2609 adequately equips NYDOCCS to evaluate all facts relating to an

7

applicant's sincerity in holding a religious belief concerning wearing a beard. The Directive includes broad definitions of "Creed" and "Religion" that encompass "belief in a Supreme Being or membership in an organized religion or congregation" and "self-identification with a particular creed or religion tradition." (Doc. 289-119, 3). Further, Directive 2609 clearly identifies facial hair and/or beards as potential religious beliefs, referring to the "sincerely held religious" belief or practice in sections II.D, III.F., IV.F.2, and V.B.2. (Id.). In addition, the Directive clearly indicates a procedure for informal and formal requests for religious accommodations to wear a beard, allowing staff to seek a religious accommodation to wear a beard from their first-line supervisor, facility Designee for Reasonable Accommodation ("DRA"), or the Office of Diversity and Inclusion ("ODI"). (Id., 6). Directive 2609 requires granting accommodations for "sincerely held practices" unless "the accommodation would create a specific concern, such as a safety concern or an undue hardship …." (Id., 4). Lastly, before a religious accommodation request to wear a beard may be denied, it must be reviewed by ODI, the Deputy Commissioner and Counsel, and the Executive Deputy Commissioner. (Id., 4). Thus, Directive 2609 provides a constitutionally adequate framework for NYDOCCS to evaluate requests for religious accommodations.

## II. PLAINTIFFS' PROPOSED REWRITE OF DIRECTIVE 2609 EXTENDS FURTHER THAN NECESSARY TO ADDRESS ANY ALLEGED HARM.

Even if they could establish an entitlement to some injunctive relief, Plaintiffs' proposed relief exceeds the scope of a permissible injunction, and the Court should decline to enter it.

### A. PLAINTIFFS' PROPOSED POLICY CHANGES EXCEED THE SCOPE OF PLAINTIFFS' ACTION.

Plaintiffs' action seeks injunctive relief to prevent violations of officers' constitutional rights to wear facial hair based on a sincerely held religious belief. (Doc. 278, 52). As a proposed remedy, Plaintiffs seek to rewrite NYDOCCS's policy for *all* religious accommodation requests

8

for *all* employees, not just requests regarding facial hair. Plaintiffs failed to request relief for accommodations other than those relating to facial hair in their pleading, and they cannot obtain their requested broad injunction on the basis of their narrow claims. "[A]n injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation." Mickalis Pawn Shop, LLC, 645 F.3d at 145; see also Floyd v. City of New York, 2020 WL 3819566, **4-5 (S.D.N.Y. July 7, 2020) (declining to expand previously-issued injunction to encompass different conduct because "it is not within this Court's authority to amplify its prior rulings to encompass a different set of potentially unconstitutional practices"). Here, unlike in Floyd, Plaintiffs fail even to allege (much less produce evidence demonstrating) any constitutional infirmities with respect to religious accommodations other than those regarding facial hair. At a minimum, the Court should limit any injunctive relief to requests to wear facial hair for religious reasons.

### B. PLAINTIFFS' PROPOSED POLICY CHANGES EXCEED CONSTITUTIONAL REQUIREMENTS.

Despite acknowledging NYDOCCS's right to limit religious accommodations to those holding sincere religious beliefs, Plaintiffs attempt to effectively eliminate this right through their proposed revisions to Directive 2609. Plaintiffs would require NYDOCCS to add the following language to Directive 2609:

> DOCCS may not, in assessing religious accommodation requests, attempt to determine whether the applicant's belief or practice is a requirement or a tent of a religion. Instead, **DOCCS may only consider whether the applicant's belief is sincerely held**. Sincerity of belief is different from asking whether a belief or practice is a requirement of a religion. **DOCCS cannot decide whether a particular practice or belief is a religious requirement**.

(Doc. 314, 8) (emphasis added). Further, Plaintiffs would require NYDOCCS to "presume" the sincerity of an applicant's purported religious belief, and NYDOCCS "may only inquire into an

9

applicant's sincerity of belief if there is an objective basis to question the sincerity of an applicant's professed belief." (Id., 8-9). These proposed requirements go far beyond constitutional dictates. It is black-letter law that "beliefs must be sincerely held **and religious in nature** to be accorded first amendment protection." Patrick, 745 F.2d at 157 (emphasis added). Plaintiffs attempt to eliminate the "religious in nature" requirement and force NYDOCCS to grant a "religious" accommodation for any belief that is "sincerely held," whether it constitutes a "religious" belief or not. The First Amendment requires no such accommodation.

Plaintiffs insist on this overbroad language because they claim NYDOCCS "established a practice of using the tenets of a religion, or lack thereof, as a reason for denying a religious accommodation request." (Id.). As set forth in the State's previous briefing on these issues, Plaintiffs' argument in this respect rests solely on stale evidence dating back to 2019. (Doc. 283, 16-17). Moreover, Plaintiffs deliberately mischaracterized even those alleged past practices. Plaintiffs fail to acknowledge that, shortly after issuing Directive 2609, NYDOCCS received a barrage of requests citing either Norse Pagan faiths or Leviticus 19. (Id., 18-19). As the State indicated in its previous briefing, the number and timing of these requests alone provided NYDOCCS with reason to question whether all of these applicants simultaneously developed those particular religious beliefs. NYDOCCS accordingly denied a number of these requests not because it deemed the applicant's beliefs "untrue," but because it concluded that the beliefs constituted "personal preferences" rather than sincere religious beliefs. (Id.).[1] Thus, Plaintiffs

---

[1] Plaintiffs mischaracterize NYDOCCS's counsel's statement to this Court during the March 13, 2023, conference as supporting the inquiry of the tenets of a religion as a type of litmus test for the granting or denying of a religious accommodation request. (Doc. 314, 7). Despite Plaintiffs' protests, NYDOCCS counsel articulated that inquiring into whether an applicant's stated belief serves as a tenet of a religion can provide additional support concerning the applicant's sincerity. For example, counsel suggested it could be relevant to a sincerity analysis if a hypothetical religion required its adherents to remain clean-shaven, but an individual purporting to adhere to that faith

failed to establish even that NYDOCCS's past practices violated the Constitution. Plaintiffs cannot justify re-writing NYDOCCS's policy to eliminate the requirement that a belief be "religious in nature" to warrant an accommodation.

### C. PLAINTIFFS' PROPOSALS REGARDING TRAINING, DOCUMENTATION, AND MONITORING REMAIN UNNECESSARY AND OVERBROAD.

Plaintiffs ask the Court to appoint an expert, at the State's expense, to provide training and order extensive monitoring of NYDOCCS's religious accommodation process for five (5) years. (Doc. 314, 11-19. As set forth above, Plaintiffs cannot demonstrate a current risk of harm to any Plaintiff or putative class member, because Plaintiffs cannot identify a single Plaintiff or putative class member (because none exists) who faced denial of a religious accommodation request for facial hair since November 2021. (Doc. 264-64, 2021).

Plaintiffs cite E.E.O.C. v. United Health Programs of Am., Inc., 350 F.Supp.3d 199 (E.D.N.Y. 2018), in support of both their training request and their five-year monitoring plan. (Doc. 314, 12, 17 n.25). The nature and scope of violations found in that case far exceed Plaintiffs' allegations here. There, "members of defendants' management team directly encouraged, contributed to, and engaged in the Title VII violations by participating in and authorizing the enforcement of religious practices in the workplace," and even wrongfully terminated an employee who refused to participate in religious activities "at a company-sponsored spa weekend." 350 F.Supp.3d at 215-16; see also Floyd v. City of New York, 959 F.Supp.2d 668 (S.D.N.Y. 2013) (relief justified on basis of findings that officers engaged in racial profiling in conducting "stops and frisks"). Plaintiffs failed to demonstrate such harm in this case.

---

sought a religious accommodation to maintain facial hair. In that circumstance, counsel explained, "it's not a validity of the religious belief, it's a matter of what does this person believe? And so how does a person genuinely believe something and have a sincere religious belief when their religion itself says you couldn't do that." (Doc. 314-1, 57:1-4).

Moreover, Plaintiffs, through discovery in this action, already possess information regarding all religious accommodation requests received, granted and denied through September 2022. Further, the evidence establishes that NYDOCCS denied no religious accommodation requests for facial hair since November 2021, and denied only two (2) accommodation requests since October 2020. (Doc. 289-64; Doc. 287). Accordingly, Plaintiffs cannot justify monitoring NYDOCCS's accommodation process for an additional five (5) years.

### III. PLAINTIFFS CANNOT DEMONSTRATE AN ENTITLEMENT TO PRELIMINARY INJUNCTIVE RELIEF FOR PUTATIVE CLASS MEMBERS.

Plaintiffs seek to eliminate NYDOCCS's ability to deny any religious accommodation for facial hair "[p]ending full implementation" of Plaintiffs' proposed revisions to Directive 2609 "and training." (Doc. 314, 19). Contrary to Plaintiffs' suggestion, NYDOCCS need not grant every requested religious accommodation simply because the accommodation would not create an undue burden. Instead, NYDOCCS remains entitled to grant *only* those accommodations motivated by a sincere religious belief. It possesses no obligation to "accommodate" officers' "personal preferences," nor must it grant accommodations to those officers it believes are attempting to "game the system" and obtain an accommodation reserved for officers whose sincere religious beliefs require the accommodations. Plaintiffs' proposed preliminary injunctive relief would require NYDOCCS to grant accommodations not required by the Constitution. See Patrick, 745 F.2d at 157 (belief must be "religious in nature" to qualify for protection under the First Amendment). Accordingly, the Court should deny this relief.

### IV. PLAINTIFFS CANNOT DEMONSTRATE AN ENTITLEMENT TO INJUNCTIVE RELIEF FOR NAMED PLAINTIFFS.

Finally, the Court should deny Plaintiffs' requests for permanent injunctive relief for named Plaintiffs. (Doc. 314, 17). Plaintiffs ask this Court to require NYDOCCS to grant an

accommodation to Sofo, but the State established that a reasonable dispute exists as to the sincerity of Sofo's purported religious belief. (Doc. 283, 15). Thus, injunctive relief on Sofo's claim remains inappropriate at this stage. Patrick, 745 F.2d at 159 ("[W]here subjective issues regarding a litigant's state of mind, motive, sincerity or conscience are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable."). Similarly, factual disputes remain regarding Feliciano's request for a three-inch beard. (Doc. 283, 14). NYDOCCS maintains, based on unrefuted expert testimony, that a beard of that length presents a security risk because an inmate could grab it or an officer could conceal contraband in it. (Id.).

Gleixner and Alshamiri can show no risk of future harm because they possess no evidence that NYDOCCS intends to "revoke or modify" their existing accommodations. Moreover, in the event that Gleixner or Alshamiri seek to work a clean-shaven post in the future, NYDOCCS must retain the right to require them to comply with the clean-shaven requirement of such a post. As such, no injunctive relief should be afforded to Gleixner, Alshamiri, or any other named Plaintiff.

## CONCLUSION

The State respectfully requests that the Court deny Plaintiffs' request for injunctive relief.

Dated:  May 19, 2023.

Respectfully submitted,

*/s/ William R. Lunsford*
William R. Lunsford (*pro hac vice*)
Kenneth S. Steely (*pro hac vice*)
**BUTLER SNOW LLP**
200 West Side Square
Huntsville, AL 35801
Telephone: (256) 936-5650

13

Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
kenneth.steely@butlersnow.com

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by email and/or U.S. Mail on this 19th day of May 2023:

Joshua S. Moskovitz
Calla Ketchens
**HAMILTON CLARKE, LLP**
48 Wall Street, Suite 1100
New York, New York 10005
jm@hamilitonclarklp.com
ck@hamilitonclarklp.com

Ronald E. Cook
1317 Vassar Street
Houston, TX 77006
Rcook.68@att.net

Jonathan Moore
Luna Droubi
Deema Azizi
**BELDOCK LEVINE & HOFFMAN LLP**
99 Park Avenue, Suite PH/26[th] Floor
New York, NY 10016
jmoore@blhny.com
ldroubi@blhny.com
dazizi@blhny.com

*Attorneys for Plaintiffs*

                                            */s/ William R. Lunsford*
                                            *Of Counsel*