**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRIAN SUGHRIM, et al.,

                    Plaintiffs,

      v.

STATE OF NEW YORK, et al.,

                   Defendants.

No. 19-CV-7977 (RA) (SDA)

**STIPULATION, ORDER, AND CONSENT JUDGMENT ON**
**PLAINTIFFS' CLASS CLAIMS**

**WHEREAS**, Plaintiffs filed their Fourth Amended Class Action Complaint in this matter on August 18, 2022, which sought, among other things, injunctive relief on behalf of a putative plaintiff's class (Dkt. 278); and

**WHEREAS**, Defendants the State of New York ("New York"), New York State Department of Corrections and Community Supervision ("NYDOCCS"), Anthony J. Annucci (the "Acting Commissioner"), John A. Shipley, Na-Kia Walton, Stephen Urbanski, Alan Washer, William Lee, Michael Bertone, and Thomas Napoli (collectively, the "State Officials," and, together with New York, NYDOCCS, and the Commissioner, the "State"), filed the State's Answer to Plaintiffs' Fourth Amended Complaint on September 1, 2022 (Dkt. 279); and

**WHEREAS**, on September 5, 2023, the Court entered an Opinion & Order ("the Opinion & Order") granting Plaintiffs' motion for class certification pursuant to Rule 23(b)(2), granting Plaintiffs' motion for partial summary judgment with respect to their class injunctive claim, and permanently enjoining Defendants "from enforcing their practice of denying religious

accommodations based on their own understanding of the tenets of the applicant's faith" (Dkt. 324); and

**WHEREAS**, the Court's Opinion & Order directed the parties to submit their respective positions on the specific injunctive relief that was needed to ensure compliance with the Court's permanent injunction (Dkt. 324 at 60); and

**WHEREAS**, on October 6, 2023, and October 27, 2023, the parties submitted briefs pursuant to the Court's Opinion & Order, setting forth their positions on the specific injunctive relief needed to ensure compliance with the Court's permanent injunction (Dkts. 328, 336); and

**WHEREAS**, on June 21, 2024, the parties advised the Court that they were prepared to conduct settlement negotiations (Dkt. 350); and

**WHEREAS**, on July 9, 2024, the parties advised the Court that they jointly agreed to seek the assistance of Hon. Christian F. Hummel, Magistrate Judge of the Northern District of New York, to mediate their settlement negotiations (Dkt. 352); and

**WHEREAS**, on July 15, 2024, the Court entered Administrative Orders pursuant to 28 U.S.C. § 636(f) designating Judge Hummel to mediate the parties' settlement negotiations (Dkts. 353 & 354); and

**WHEREAS**, after engaging in extensive settlement negotiations with Judge Hummel, the parties reached agreement on the injunctive relief needed to implement the Court's permanent injunction; and

**WHEREAS**, the parties now seek to resolve and conclude Plaintiffs' class claims;

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND ADJUDGED** as follows:

A.    **General Provisions.**

1.    Nothing in this Stipulation and Order shall prevent the Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS" or "the State") from taking any actions necessary to ensure the safety and security of officers, incarcerated persons, and the public concerning the operations of any correctional facility, including, without limitation, responding to any emergency such as a riot or infectious disease requiring clean-shaven correctional staff to properly use personal protective equipment.

2.    This Stipulation and Order, and all obligations pursuant to this Stipulation and Order, solely concern and relate to DOCC's issuance or denial of requests for a religious accommodation to wear facial hair in accordance with a religious belief or practice. Nothing in this Stipulation and Order shall permit Plaintiffs' counsel to monitor, review, investigate, inquire into, or otherwise evaluate any aspect of any other accommodation requests, religious or otherwise, or any other matter. Accordingly, wherever the terms "religious accommodation request" or "accommodation request" are used in this Stipulation and Order, it refers specifically to religious accommodation requests of correctional officers to wear beards.

B.    **Effective Date.** The effective date of this Stipulation and Order shall be the date the Court enters the Order.

C.    **Injunctive Relief.**

1.    **Religious Accommodations Procedures.**

a.    Subject to Paragraph A.1. above, DOCCS agrees to continue to apply Directives 2609 and 3083 consistent with the revisions submitted to the Court on October 6, 2023 (Dkt. No. 328); provided, however, that DOCCS may amend or modify Directives 2609 and

3083 so long as the practices concerning religious accommodation requests remain consistent with the obligations in this Stipulation and Order.

b.        DOCCS, in accordance with the modifications to Directives 2609 and 3083, agrees to conduct an individualized review of applicant's religious accommodation request.

c.        In addition to any other information kept as part of DOCCS's administration of Directives 2609 and 3083, DOCCS agrees its practice will be to keep track of the following information as part of the officer's accommodation request file for each religious accommodation request to wear a beard that is submitted:

i.        a description of the information that is requested and considered in assessing the accommodation request; and

ii.        an explanation of the reason(s) for denying a request.

d.        DOCCS additionally agrees that its practice shall be that, if the sincerity of an officer's religious belief is questioned, the basis for questioning the officer's sincerity should be recorded in the officer's accommodation request file.

2.        **Training.**

a.        DOCCS agrees to require all DOCCS staff involved in administering the religious accommodation process set forth in Directive 2609 – including Office of Diversity and Inclusion ("ODI") staff and facility Designees for Reasonable Accommodation ("DRA") – to receive additional training as set forth in Exhibit A.

b.        This training will be provided within sixty (60) days of the effective date of this Stipulation and Order.

c.      DOCCS will provide notification to Plaintiffs' counsel within seventy-five (75) days of the effective date of this Stipulation and Order that this training has been completed.

3.      **Reconsideration of Religious Accommodations of Class Members.**

a.      Within thirty (30) days of the effective date of this Stipulation and Order, DOCCS will contact current correctional staff denied a religious accommodation to wear a beard from August 1, 2016 to September 30, 2023, and provide them thirty (30) days to reapply for a religious accommodation to wear a beard consistent with the revised Directives 2609 and 3083, and based upon their assignments to non-clean shaven posts. A draft of the letter that will be sent to these class members is attached hereto as Exhibit B. Plaintiffs' counsel will be copied on all such correspondence.

b.      Within sixty (60) days of the effective date of this Stipulation and Order, DOCCS, utilizing last known email and/or mailing addresses, will contact former officers denied a religious accommodation request to wear a beard from August 1, 2016 to September 30, 2023, offering an opportunity to reapply for employment with DOCCS (if eligible) and to reapply for a religious accommodation request to wear a beard. A draft of the letter that will be sent to these class members is attached hereto as Exhibit C. Plaintiffs' counsel will be copied on all such correspondence.

c.      The Parties agree that individuals granted a religious accommodation to wear facial hair shall not be eligible for assignment to any clean-shaven post.

4.      **Notice to Class Concerning this Stipulation and Order.**

a.      In addition to the notice provided to correction officers on or about September 13, 2023, as provided in the memorandum to superintendents (Doc. No. 328-2), and

through the publication of revised Directives 2609 and 3083, DOCCS agrees to provide notice to correction officers, via announcement by supervisors and any other manner of notice directed by the Court, of the terms of this Stipulation and Order and the revised Directives 2609 and 3083.

       5.    **Reporting and Inspection.** The Parties agree to the following provisions for reporting on compliance with the terms of this Stipulation and Order:

       a.    The Parties agree that all information exchanged pursuant to this sub-paragraph (concerning "Reporting and Inspection") is "confidential" as set forth in the Joint Stipulated Protective Order (Dkt. No. 174).

       b.    A "monitoring period" shall be a calendar month, and the first monitoring period shall begin on the first day of the first month following the effective date of this Stipulation and Order.

       c.    On the fifteenth (15th) day of each Monitoring Period, DOCCS will provide Plaintiffs' counsel a list of religious accommodation requests by correction officers to wear beards pending, granted, and/or denied during the previous Monitoring Period. The list shall include the following information:

       i.    First and last name of the requestor;

       ii.    The facility of the requestor;

       iii.    The date of the accommodation request;

       iv.    The religious affiliation of the requestor;

       v.    The disposition of the request (pending, granted, or denied); and

       vi.    The date of granting or denying of the request.

d.      By the fifteenth (15th) day of each Monitoring Period, DOCCS will provide copies of the files of denied religious accommodation requests of correction officers to wear beards during the previous Monitoring Period.  Accommodation request files will include copies of Forms 2609A, B, C and D; and the information set forth in Paragraph C.1.c; and copies of any communications concerning or explaining the reasons for the denial.

e.      Plaintiffs' counsel's review will be limited to DOCCS's compliance with this Stipulation and Order and Directives 2609 and 3083.

f.      For any religious accommodation request that remains pending in consecutive Monitoring Periods, by the fifteenth (15th) day of the second Monitoring Period that the request remains pending, DOCCS will provide a description of the status of the request and the reason(s) that it is still pending.

g.      If Plaintiffs' counsel need additional information beyond that set forth in paragraphs (c) and (d), they will submit a written request to DOCCS's counsel within fourteen (14) calendar days of receipt of the records set forth in paragraphs (c) and (d).  DOCCS's counsel will respond to the request within fourteen (14) calendar days and, if the additional information is not provided, explain the reason for not providing the requested information.  Any such requests must be reasonable, narrowly tailored, not overly broad or unduly burdensome, and made only in good faith.

h.      If Plaintiffs believe any term of this Stipulation and Order has been violated by DOCCS, Plaintiffs' counsel must submit a written objection to DOCCS's counsel within fifteen (15) calendar days of receiving the perceived violation of the terms of this Stipulation and Order or denial of the accommodation request.  Such written response must include an explanation of any objection.

          i.      DOCCS shall respond to any objection within fourteen (14) calendar days, and the Parties shall seek to informally resolve any alleged objection within thirty (30) calendar days of receipt of DOCCS's written response.

          j.      If the Parties fail to resolve any alleged non-compliance, Plaintiffs' counsel may seek relief from the Court.

          k.      The duties, obligations, and requirements provided for in this Paragraph (C.5) shall cease nine (9) months after the effective date of this Stipulation and Order, unless the Court finds, upon application of the Plaintiffs, that DOCCS is not in substantial compliance with the provisions of this Stipulation and Order.

## D.      Judgment Entered Pursuant to Rule 54(b)

          1.      Because this action presents more than one claim for relief and multiple parties are involved, and because this Stipulation and Order will fully resolve the Plaintiffs' class claims, while Plaintiffs' individual claims remain unresolved and will require a trial, there is no just reason for delay in entering judgment on Plaintiffs' class claims.

          2.      Accordingly, judgment is hereby entered on Plaintiffs' class claims pursuant to Rule 54(b) and on consent of all parties.

## E.      Attorneys' Fees and Costs

          1.      Within 60 days of this Stipulation and Order, if the parties have not reached resolution on the matter, Plaintiffs shall file a petition for their reasonable attorneys' fees, costs, and expenses incurred in connection with the class claims in this case through the Effective Date of this Stipulation and Order.

          2.      Within sixty (60) days of the conclusion of the Reporting and Inspection provisions described above in paragraph C.5, if the parties have not reached a resolution on the

matter, Plaintiffs may file a petition for their reasonable attorneys' fees, costs, and expenses incurred in connection with the Reporting and Inspection obligations set forth in paragraph C.5.

3. Nothing contained in this Stipulation and Order waives, limits, or impairs any argument or objection by the State in responding to a petition filed by Plaintiffs in connection with this Paragraph. The State expressly reserves and preserves all legal, statutory, and equitable arguments in opposition to any petition by Plaintiffs seeking an award of their reasonable attorneys' fees, costs, and expenses in this action.

**ATTACHMENTS:**

Exhibit A: Training

Exhibit B: Letter to Current Correctional Staff Class Members

Exhibit C: Letter to Former Correctional Staff Class Members

Dated: _Nov. 1,_____ 2024

_____
Joshua S. Moskovitz
THE LAW OFFICE OF JOSHUA MOSKOVITZ, P.C.
14 Wall Street, Suite 1603
New York, New York 10005
Josh@MoskovitzLaw.com

*Class Counsel*

_____
Kenneth S. Steely
BUTLER SNOW LLP
200 West Side Square, Suite 100
Huntsville, AL 35801
Kenneth.Steely@butlersnow.com

*On behalf of Defendants*

SO ORDERED AND ADJUGED

_____
HON. RONNIE ABRAMS
U.S. DISTRICT JUDGE
May 28, 2025

9

# PROCESSING RELIGIOUS ACCOMMODATION REQUESTS OF SECURITY STAFF TO WEAR BEARDS

*Brian Sughrim v. State of New York*

&

Directives 2609 and 3083

# Why do we need this training?

- In 2019, corrections officers who had been denied religious accommodations to wear beards filed a class action lawsuit known as *Brian Sughrim v. State of New York.*

- In 2023, the federal court overseeing the case determined that an unconstitutional practice had been used in denying religious accommodations for officers who are covered by the *Sughrim* case.

- Following the Court's order, the Department amended Directives 2609 and 3083 to clarify the requirements for granting or denying religious accommodation requests.

- **This training provides guidance on how to properly evaluate an officer's request to wear a beard based on his religious beliefs.**

# Processing a religious accommodation request to wear a beard

- At any time, an officer may request an accommodation to wear a beard in accordance with his religious beliefs or practices (Dir. 2609).

- To request the accommodation, the officer need only let the Department know that he needs an exemption from the grooming policy (Dir. 3083) for religious purposes.

- When an employee makes a request to his supervisor, the supervisor must direct the employee to the facility DRA (Designee for Reasonable Accommodations).

- When the request is made verbally, the supervisor or DRA must provide the officer with Form #2609A and request the employee to complete the form and return it for processing.

# Processing a religious accommodation request to wear a beard (cont'd)

- If the DRA needs additional information, they must complete Form #2609B indicating no decision has been made and explaining why additional information is needed, and request the employee to complete Form #2609C.

- The DRA will then review the employee's Form #2609A, and #2609C if requested, and any supporting documentation provided by the employee.

- In consultation with facility leadership and consistent with the guidance that follows, the DRA will then determine if any questions remain regarding the sincerity of the employee's religious belief to wear a beard and if granting the accommodation will impose an undue hardship on the facility (as defined in Dir. 2609, Section V.H).

# Processing a religious accommodation request to wear a beard (cont'd)

- If the DRA identifies concerns regarding the employee's sincerity in his religious beliefs or an undue hardship, the DRA will complete Form #2609B, informing the employee that no decision has been made and that his request has been forwarded to the Office of Diversity and Inclusion (ODI).

- The DRA will forward all correspondence and documentation to ODI for further review and evaluation.

- When applicable, the DRA will inform ODI in writing their reason(s) for questioning the sincerity of the officer's beliefs.

# Processing a religious accommodation request to wear a beard (cont'd)

- If the DRA has no reason to question the sincerity of the employee's belief and determine that no undue hardship exits, the DRA will complete Form #2609D notifying the employee of the granted accommodation and obtain the employee's acceptance or rejection of the offered accommodation.

- The DRA will then issue a letter to the employee confirming the accommodation.  The DRA will forward all documents and correspondence related to the employee's request for a reasonable religious accommodation to wear a beard to ODI.

# Processing a religious accommodation request to wear a beard (cont'd)

- For an accommodation request that requires further review, ODI will follow Dir. 2609 and this training to evaluate the request.

- If ODI needs additional information from the employee, they must complete Form #2609B explaining why additional information is needed and request the employee to complete Form #2609C.

- After completing its review, ODI will complete Form #2609D notifying the employee of its determination and the reasons for that determination.

- If ODI has granted the accommodation, the DRA should obtain the employee's acceptance or rejection of the offered accommodation and issue a letter to the employee confirming the accommodation.

# Beliefs that are *religious* in nature

- A belief is a ***religious belief*** is a ***sincere and meaningful belief*** that concerns ***ultimate ideas about life, purpose, and death***.

- A religious belief "occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God," but it is not necessary that it "contemplate an orthodox or traditional God."

- It includes beliefs that may seem illogical or unreasonable to others but are religious in the officer's "own scheme of things."

# What is <u>not</u> required for a belief to be *religious*?

- A religious belief ***does not*** need to be part of an established religion or documented practice.

- A religious belief ***does not*** need to be followed by all adherents of the religion.

- A religious belief ***does not*** need to include a belief in God or divine beings.

# Examples of religious beliefs

- An employee follows a vegetarian diet as part of her practice as a Seventh-day Adventist.  Her vegetarianism *is a religious practice*, even though not all Seventh-day Adventists share this belief or follow this practice, and even though many individuals adhere to a vegetarian diet for purely secular reasons.

- An employee follows spiritual beliefs that are undocumented, including wearing a beard as a part of his religious practice. ***This is a protected religious belief.***

- An employee who identifies as Christian but is not affiliated with a particular sect or denomination and believes that working on his Sabbath is prohibited. ***This is a protected religious belief.***

# Secular vs. religious beliefs and practices

- Social, political, or economic philosophies, and personal preferences, are not protected religious beliefs.

- *However,* a practice may still be "religious" for one person even if another person engages in the same practice for secular reasons. For example, growing a beard.

- *Also,* a practice can be "religious" even if it is not followed by others in the same religious sect, denomination, or congregation.

# The "truth" of a belief is not open for debate

- **The law does not let the Department determine what the teachings or doctrines of a religion require or don't require**.

- In other words, the law protects all aspects of a person's religious practices, *even practices that are not "required" by the religion.*

- Inquiries into "the truth" of an officer's concepts of their religious faith are *not permitted.* This is known as a *verity analysis*, and it is *not allowed.*

# Religious beliefs must be *sincerely held*

- Reasonable accommodations are required only for religious beliefs that are "sincerely held."

- A sincerity analysis seeks to determine an officer's **good faith in the expression of his religious belief**.

- Deciding whether an officer has a good faith belief – a sincerely held belief – is **not the same** as deciding whether a religious belief is true or accurate.

# When is it appropriate to question the sincerity of an officer's belief?

- The sincerity of an officer's religious belief should generally be presumed and is easily established.
- There must be an objective reason for the Department to question the sincerity of an officer's professed.
- Examples of objective reasons would include:

    - if the officer is known to have behaved in a manner markedly inconsistent with his professed belief;
    - if the officer submitted a religious accommodation request shortly after being denied an accommodation on a different basis.

# Questioning the sincerity of an officer's belief

- Whenever the Department has reason to question the sincerity of an officer's religious belief, it must document that reason.

- The Department may *not* and *will not* question the sincerity of only certain groups or types of religious beliefs.

- For example, the mere fact that an officer's beliefs are non-traditional or unorthodox is not an appropriate reason to question the sincerity of his beliefs.

# Questioning the sincerity of an officer's belief (cont'd)

- If you have a question about the sincerity of an officer's belief, you should:

  - inform the officer that their sincerity of belief is being assessed,

  - permit the officer an opportunity to be interviewed about his belief, and

  - allow the officer to submit any additional information or documentation they choose to support their sincerity of belief.

# Assessing the sincerity of an officer's belief (cont'd)

- The fact that an officer does not adhere steadfastly to his beliefs does not mark them as insincere.

- While inconsistent conduct is relevant to the question of sincerity, an officer's beliefs – or degree of adherence – may change over time.

- Therefore, an officer's religious practice may be newly adopted or inconsistently observed and still be sincerely held.

# Assessing the sincerity of an officer's belief (cont'd)

- An officer may have a sincerely held religious belief or practice even if they have forgone the practice or belief during the job application process and not revealed it to the employer until after they were hired or later in employment.

- An officer may have a sincerely held religious belief or practice even if they choose to adhere to a religious custom only at certain times, while others choose to adhere always.

# Assessing the sincerity of an officer's belief (cont'd)

- Whether an officer's particular beliefs or practices deviate from commonly followed religious tenets, or the officer adheres to some common religious practices but not others, is irrelevant to a determination of the officer's sincerity of belief.

- For instance, an officer who maintains a sincere belief in wearing a beard based on his identification with Judaism will not be deemed insincere in his beliefs because he does not also keep a Kosher diet.

# Undue hardship

- An undue hardship is a burden that is substantial in the overall context of an employer's business taking into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer.

- Dir. 2609, Section V.H defines an "undue hardship" as "an accommodation requiring significant expense or difficulty" which "includes significant interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system."

# Undue hardship (cont'd)

- An accommodation also constitutes an undue hardship if it will result in the inability of an employee to perform the essential functions of the position in which he or she is employed.

- In positions that require coverage around the clock or during particular hours, being available even on Sabbath or holy days *may* be an essential function of the job. Also, certain uniform appearance standards *may* be essential to some jobs.

**CURRENT OFFICERS:**

Officer XXXXX,

The State resolved pending litigation concerning religious accommodations to wear facial hair in accordance with Directive 2609 and 3083 in the case of <u>Brian Sughrim, et al. v. State of New York, et. al.</u>, United States District Court for the Southern District of New York, Case No. 1:19-CV-07977-RA-SDA.  As part of the resolution of this matter, the Department agreed to contact all officers whose written request for a religious accommodation to wear facial hair from August 1, 2016 to September 30, 2023, had been denied and to offer them an opportunity to reapply for a religious accommodation.  If you have a current religious accommodation, and you remain in compliance with the accommodation, that accommodation remains valid and there remains no need to reapply.  If you do not have a current religious accommodation, and you desire to reapply, please submit the attached Form 2609A to:

EMAIL ADDRESS

If you want to reapply, please respond within thirty (30) days of the date of the letter. Whether or not you choose to reapply now with regard to this letter, you may request religious accommodations at any time in accordance with Directive 2609.

**FORMER OFFICERS:**

Mr. XXXXX,

The State resolved pending litigation concerning religious accommodations to wear facial hair in accordance with Directive 2609 and 3083 in the case of <u>Brian Sughrim, et al. v. State of New York, et. al.</u>, United States District Court for the Southern District of New York, Case No. 1:19-CV-07977-RA-SDA.  As part of the resolution of this matter, the Department agreed to contact all former certified correction officers whose written request for a religious accommodation to wear facial hair from August 1, 2016 to September 30, 2023, had been denied and to offer an opportunity to reapply to work for the Department and reapply for a religious accommodation.  If you desire to return to employment with the New York State Department of Corrections and Community Supervision, and you otherwise remain eligible for reinstatement, you may reapply.  All candidates for reinstatement must comply with all requirements to be employed as a Correction Officer.  Additionally, upon reinstatement as a Correction Officer with DOCCS, you may request a religious accommodation to wear a beard in accordance with revised Directives 2609 and 3083.  If you desire to apply for reinstatement, please contact XXXXX in Human Resources at:

EMAIL ADDRESS